KURT A. KAPPES – SBN 146384
kappesk@gtlaw.com
MICHAEL D. LANE – SBN 239517
lanemd@gtlaw.com
SEAN A. NEWLAND – SBN 300928
newlands@gtlaw.com
GREENBERG TRAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA 95814-3938
Telephone: (916) 442-1111
Facsimile: (916) 448-1709

Attorneys for Plaintiff
ROADRUNNER INTERMODAL SERVICES, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROADRUNNER INTERMODAL SERVICES, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>T.G.S.TRANSPORTATION, INC., a California corporation, and DOES 1-10,<br><br>Defendant. | **CASE NO.**<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1) **Tortious Interference with Contract;**<br><br>2) **Tortious Interference with Prospective Economic Relationship;**<br><br>3) **Unjust Enrichment/Restitution;**<br><br>4) **Unfair Competition;**<br><br>5) **Conversion; and**<br><br>6) **Request for Preliminary Injunction.**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

Plaintiff Roadrunner Intermodal Services, LLC ("Roadrunner") files this Complaint against Defendant T.G.S. Transportation, Inc. ("TGS"), and Does 1-10, to put a stop to TGS' knowing, continuing, and legally actionable interference with a valid contract between Roadrunner and a former Roadrunner employee, who is now employed by TGS in violation of that contract. Judicial intervention is needed to remedy the injuries brought upon Roadrunner by TGS' interference and prevent further injury from befalling Roadrunner by way of continued solicitation of its customers and employees by both TGS and Roadrunner's former employee, in violation of Roadrunner's contract with its former (and TGS' current) employee.

**JURISDICTION AND VENUE**

1. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because it is between citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. The Court has personal jurisdiction over TGS because it is a California resident.

2. Venue is proper in the Eastern District of California, and in Fresno, California, under 28 U.S.C. §§ 84(c)(2) and 1391(b)(1) and Local Rule of Court 120(d) because TGS is a resident of Fresno, California, in the County of Fresno.

**THE PARTIES**

3. Roadrunner is a Delaware limited liability company with its principal place of business in Peachtree City, Georgia, in the County of Fayette. Roadrunner is authorized to do business in California.

4. Roadrunner is informed and believes TGS is a California corporation with its principal place of business in Fresno, California, in the County of Fresno.

5. The true names and capacities of Defendants sued as DOES 1 through 10 are unknown to Roadrunner. Roadrunner is informed and believes that these persons are responsible for the harms alleged below. Roadrunner will seek leave to amend this Complaint once their true names and capacities are ascertained.

## FACTUAL BACKGROUND

6. Roadrunner has been an industry leader in providing regional and national drayage services to its customers throughout the United States since 1982.

7. Roadrunner's success in the commercial market is highly dependent on its established relationships with customers and employees, utilizing proprietary and confidential information such as customer activity data, preferences and other related data, and pricing information, business and marketing plans, and strategies.

8. TGS is a provider of drayage services as well, including international drayage and domestic intermodal drayage, and directly competes with Roadrunner in the commercial market.

**Non-Compete Provisions of 2012 Stock Purchase Agreement ("SPA")**

9. On November 2, 2012, Roadrunner entered into an SPA with Double C Transportation, a Nevada corporation ("Double C"), Central Cal Transportation, a California corporation ("Central Cal"), David Chidester, and Jeffrey Cox, a true and correct copy of which is attached to this Complaint as **Exhibit "A"**.

10. On execution of the SPA, Roadrunner acquired all of the outstanding capital stock of each of Central Cal and Double C, which, before the execution of the SPA, Mr. Chidester and Mr. Cox collectively owned of record and beneficially.

11. As an inducement for Roadrunner to enter into the SPA, and complete the transaction, a Non-Competition, Non-Solicitation and Non-Disclosure ("non-compete") provision was included in the SPA. The non-compete provision applies to both Mr. Chidester and Mr. Cox, but the allegations herein focus on the conduct of Mr. Cox in connection with his actual or anticipated employment with TGS.

12. Section 7.4(a)(i)(B) of the SPA provides that, from the execution date in 2012 through December 31, 2017 ("Restricted Period"), without Roadrunner's prior written consent, Mr. Cox may not work for or with, in any way, any entity engaged in or planning to engage in any facet of Central Cal and Double C's

businesses, or that competes with or is planning to compete with Roadrunner in any way, within a defined territory, including the territory TGS operates in.

13. Section 7.4(a)(i)(C) of the SPA provides that, without Roadrunner's prior written consent, the SPA's non-compete provision prohibits Mr. Cox from using his knowledge of the businesses of Central Cal and Double C and/or his relationships with customers of Central Cal and/or Double C, or other persons connected to them, to compete with Roadrunner in any facet of Central Cal and Double C's businesses during the Restricted Period.

14. Further, under section 7.4(a)(ii)(B)-(D) of the SPA, without Roadrunner's prior written consent, Mr. Cox may not under the SPA's non-compete provision: (1) contact actual or targeted customers of Central Cal and Double C regarding any facet of their businesses or disclose or use any information that in any way relates to Central Cal and Double C's trade or business relationships with such customers; (2) seek to induce employees or agents of Central Cal or Double C to leave the companies or to otherwise stop performing services for them, Roadrunner, or affiliates thereof, or interfere in any other way with the relationship between Central Cal or Double C and its employees or agents; and/or (3) disparage Roadrunner, Central Cal, Double C, or any of their respective affiliates or otherwise engage in conduct that is injurious to Central Cal or Double C's reputation or interests during the Restricted Period.

15. Finally, under section 7.4(a)(iii) of the SPA, Mr. Cox may not divulge, communicate, use to Central Cal or Double C's detriment (or for the benefit of any other individual, partnership, joint venture, firm, corporation, association, limited liability company, trust or other enterprise, or any governmental entity), or misuse in any manner, any Confidential Information or Trade Secrets (as those terms were defined in the SPA, hereafter, "Company Information") of Central Cal or Double C, or their affiliates. Rather, Mr. Cox must receive and hold Company Information in trust and in strictest confidence under

the SPA, take reasonable steps to protect any such Company Information from disclosure and prevent it from losing its character as Company Information, and not use, disseminate or disclose Company Information, directly or indirectly, to third parties without Roadrunner's prior written consent.

### Mr. Cox's Subsequent Employment with Central Cal and, Later, TGS

16. In or around November 2012, after the SPA was executed, Double C merged into Central Cal and Central Cal hired Mr. Cox as its Vice President. Mr. Cox served as Central Cal's Vice President from November 2012 until in or around January 2017 when he became Central Cal's Director of Sales. Mr. Cox separated from his employment with Central Cal on or around May 31, 2017.

17. On information and belief, in addition to the Company Information Mr. Cox acquired regarding Central Cal before the SPA, in his positions as Central Cal's Vice President and Director of Sales Mr. Cox had access to and acquired a significant amount of Company Information regarding Central Cal and Roadrunner (hereinafter collectively referred to as "Roadrunner," though subsequent references to Roadrunner employees or customers refers to employees or customers of Central Cal and/or Double C as of the date on which the SPA was executed), including, but not limited to, Roadrunner customer activity data, preferences and other related data, and pricing information, business and marketing plans, and strategies.

18. On information and belief, in or around July 2017, Mr. Cox was hired by TGS to serve either as its Vice President or Director of Sales, and in connection with his actual or anticipated employment with TGS, Mr. Cox has violated and is continuing to violate the terms of the non-compete provisions of the SPA.

### Mr. Cox's Violations of the Non-Compete Provisions of the SPA In Connection With His Actual or Anticipated Employment With TGS

19. Mr. Cox is soliciting Roadrunner's employees and contractors and inducing them to leave Roadrunner for TGS. To date, Roadrunner knows of at least one office staff member and approximately twenty contracted drivers that

have left Roadrunner to work for TGS as a result of Mr. Cox's intentional and improper solicitations in violation of the express terms of the SPA, in addition to others that have been solicited but chose to stay with Roadrunner.

20. Roadrunner is informed and believes that Mr. Cox's intentional and improper solicitation has included, but is not limited to, phone conversations with Roadrunner's employees intended to induce them to accept employment with TGS.

21. By way of example, Roadrunner possesses company phone records of two former Roadrunner employees who now work for TGS. The first employee's phone records show that between June 17, 2017 and July 10, 2017, a period of 23 days, the employee spoke with Mr. Cox 23 times. The first employee's final day with Roadrunner was July 17, 2017, seven days after the employee's final known call with Mr. Cox. The second employee's phone records show that between June 12, 2017 and June 29, 2017, a period of 17 days, the employee spoke with Mr. Cox 22 times. The second employee's last day with Roadrunner was July 6, 2017, also seven days after the employee's final known call with Mr. Cox.

22. The foregoing conduct is an example of Mr. Cox's intentional and improper solicitation and is in no way intended to be exhaustive.

23. Further, on information and belief, Mr. Cox has contacted at least 40 of Roadrunner's contracted drivers in an effort to induce them to terminate their contracts with Roadrunner and to accept positions with TGS.

24. On information and belief, Mr. Cox is soliciting or intends to solicit Roadrunner's customers to take their business to TGS, using, in violation of the SPA's non-compete provisions, his knowledge of Roadrunner and its affiliates and facets of their businesses, customer relationships developed during his employment with Roadrunner, and Roadrunner's confidential information and trade secrets.

25. To date, Roadrunner is aware of at least three of its customers that Mr. Cox either is actively soliciting or has successfully solicited for TGS, in violation of the SPA's non-compete provisions.

26. Examples of Mr. Cox's improper conduct include, but are not limited to, using confidential pricing information to undercut load prices, accessing and using private driver contact information to call drivers in an effort to induce them to terminate their contracts with Roadrunner and to accept positions with TGS, using confidential information pertaining to driver truck loans to arrange for substitute financing, using Roadrunner's confidential information in order to offer Roadrunner's contracted drivers compensation exceeding the compensation they receive from Roadrunner in an effort to induce the drivers to accept positions with TGS, and use of the customer activity data, preferences and related data, pricing information, business and marketing plans, and business strategies.

## TGS' Knowledge of and Tortious Interference
## With the SPA's Non-Compete Provisions

27. On July 11, 2017, counsel for Roadrunner sent a letter ("Certification Letter") to Tim and Peter Schneider, President and Vice President, respectively, of TGS. The Certification Letter addressed the non-compete provisions described in the paragraphs above, including, but not limited to, the provision prohibiting Mr. Cox from accepting competing employment during the Restricted Period, which Mr. Cox's employment with TGS was and is in clear violation of; addressed Mr. Cox's various violations of the non-compete provisions; demanded that TGS cease its interference with Roadrunner's contractual relationship with Mr. Cox; and asked TGS to confirm in writing the following information:

> (1) that Mr. Cox will not be an employee of TGS; (2) that TGS will not tortiously interfere with Roadrunner's contractual agreement with Mr. Cox; and (3) whether Mr. Cox disclosed to TGS in advance of TGS's offer of employment that he was bound by the restrictive covenants with Roadrunner, including the non-competition, non-solicitation, and confidential information provisions.

28. A true and correct copy of the Certification Letter is attached to this Complaint as **Exhibit "B"**.

29. The Certification Letter stated that, "[t]o the extent TGS was unaware of Mr. Cox's ongoing obligations to Roadrunner, this letter puts TGS on notice of the existence of these obligations[,]" advised that "TGS will be exposed to liability to any future violations committed by Mr. Cox[,]" and instructed TGS "to preserve all data information, and records, in both electronic and hard copy format, that are in any way related to the engagement of Mr. Cox[,]" among other advisements.

30. Counsel for TGS timely responded to the Certification Letter via letter dated July 17, 2017. Counsel's letter addressed some of the confirmations sought, but notably failed to confirm that Mr. Cox will not be an employee of TGS. Thus, at present Mr. Cox is still an employee of TGS and is continuing to violate the non-compete provisions of the SPA and, therefore, TGS is knowingly and intentionally tortiously interfering with Roadrunner's contractual agreement with Mr. Cox.

31. A true and correct copy of TGS' counsel's July 17, 2017 response to the Certification Letter is attached to this Complaint as **Exhibit "C"**.

32. On information and belief, TGS knew of Mr. Cox's violations before it received the Certification Letter and, in fact, is now and at all relevant times was a joint-venturer with Mr. Cox, conspired with and/or worked in concert with Mr. Cox, or acted as Mr. Cox's agent, and in doing the things alleged was acting within the course and scope of such concerted activity, agency, or related relationship, and aided and abetted in the commission of the acts alleged herein and/or ratified them.

33. As a result of TGS and Mr. Cox's conduct, Roadrunner has incurred and is incurring losses totaling approximately $300,000.00 in revenue each month.

### FIRST CAUSE OF ACTION
### Tortious Interference with Contract

34. Roadrunner repeats, realleges and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

35. Roadrunner alleges that TGS interfered with the SPA entered into by and between Roadrunner and Mr. Cox, specifically, the non-compete provisions.

36. TGS has interfered with the SPA by, among other things, soliciting Roadrunner's customers and employees and, in the process thereof, using confidential pricing information to undercut load prices, accessing and using private driver contact information to call drivers in an effort to induce them to terminate their contracts with Roadrunner and to accept positions with TGS, using confidential information pertaining to driver truck loans to arrange for substitute financing, using Roadrunner's confidential information in order to offer Roadrunner's contracted drivers compensation exceeding the compensation they receive from Roadrunner in an effort to induce the drivers to accept positions with TGS, and use of the customer activity data, preferences and related data, pricing information, business and marketing plans, and business strategies.

37. In interfering with the SPA between Roadrunner and Mr. Cox in the ways and manner alleged, TGS has proximately and directly caused Roadrunner to suffer significant damages that Roadrunner may recover from TGS.

38. TGS acted willfully, intentionally and with malice, oppression and/or fraud as defined in California Civil Code § 3294(c). Thus, TGS is guilty of malice, oppression and/or fraud in conscious disregard of Roadrunner's rights under the SPA, warranting punitive damages in an amount appropriate to punish TGS and deter other prospective violators from engaging in similar misconduct.

## SECOND CAUSE OF ACTION
### Tortious Interference with Prospective Economic Relationship

39. Roadrunner repeats, realleges and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

40. Roadrunner's business relationship with its customers is advantageous to Roadrunner, and there exists a probability of future economic benefit to Roadrunner from its business relationship with its customers.

41. Roadrunner is informed and believes TGS intentionally interfered with the business relationships between Roadrunner and multiple Roadrunner

customers and that TGS' intentional conduct was intended to, and did, disrupt the economic relationships between Roadrunner and at least one of its customers, and as a direct and proximate result thereof, Roadrunner has suffered damages in an amount to be determined at trial.

42. In doing the acts alleged, TGS acted with fraud, malice, oppression, and in conscious disregard of Roadrunner's rights. Thus, Roadrunner is entitled to punitive damages in an amount to be determined according to proof at trial.

### THIRD CAUSE OF ACTION
### Unjust Enrichment/Restitution

43. Roadrunner repeats, realleges and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

44. TGS has been enriched in the form of extremely valuable Company Information and other such confidential information and trade secrets pertaining to detailed facets of Roadrunner's business operations, employees, and customers, which TGS has used to, among other things, solicit Roadrunner's employees and customers. TGS' enrichment occurred at the expense of Roadrunner, which has spent significant sums of money and resources developing the all aforementioned Company Information and other such confidential information and trade secrets.

45. TGS has therefore been unjustly enriched at Roadrunner's expense, and Roadrunner is entitled to restitution in an amount to be established at trial.

### FOURTH CAUSE OF ACTION
### Violation of California's Unfair Competition Law
### (California Business & Professions Code § 17200, *et seq.*)

46. Roadrunner repeats, realleges and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

47. TGS, on information and belief, knowing that the acts complained of constitute unlawful, unfair or fraudulent business practices and unfair competition prohibited pursuant to California Business and Professions Code § 17200 *et seq.*, performed the acts complained of in this Complaint.

48. As a direct and proximate result of TGS' unfair competition, Roadrunner has and will suffer irreparable harm and injury which cannot be compensated by damages (including, but not limited to, harm to its business reputation, good will, and stature, within the business community and with its customers), thereby justifying the award of injunctive relief.

49. Until and unless injunctive relief is granted, Roadrunner will continue to be harmed and TGS will be unjustly enriched; and, thus, should be disgorged under allowable remedies under the Business and Professions Code.

## FIFTH CAUSE OF ACTION
### Conversion

50. Roadrunner repeats, realleges and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

51. As alleged herein, TGS has removed and retained proprietary and confidential information and/or other property belonging to Roadrunner, without authorization or in excess of authorization, for its own economic advantage.

52. As a direct and proximate result of the removal and retention of such proprietary and confidential information and property belonging to Roadrunner, TGS caused Roadrunner to suffer damages in an amount to be proven at trial.

53. Each act of conversion by TGS was willful and malicious, and done with the deliberate intent to injure Roadrunner's business, thereby entitling it to exemplary damages and/or attorneys' fees in an amount to be proven at trial.

## PRAYER

WHEREFORE, Roadrunner prays for judgment as follows:

1. For damages in an amount according to proof at trial;

2. For restitution and disgorgement of all money, profits, compensation or property that TGS acquired or will acquire by any wrongful or unlawful means alleged herein and imposition of a constructive trust on all such money, profits, compensation, and/or property;

3. For an order requiring TGS to show cause, if any causes exist, why they should not be enjoined as stated below during the pendency of this case;

4. For an order granting a permanent injunction against TGS, enjoining the violation of contractual duties owed to Roadrunner and requiring TGS, and those acting in concert with them, as part of a writ of replevin, within 24 hours' notice either to TGS or its counsel of this order, to: (a) terminate its employment relationship with Mr. Cox during the Restricted Period; and (b) discontinue its use and/or disclosure of Roadrunner's Company Information (and other confidential information or trade secrets belonging to Roadrunner that TGS and Mr. Cox have used) in order to solicit Roadrunner's customers and/or employees.

5. For exemplary and punitive damages, in an amount to be determined at trial, as appropriate to punish TGS and deter like conduct;

6. For pre-judgment and post-judgment interest at the maximum legal rate as an element of damages Roadrunner has suffered as a result of the wrongful and illegal acts complained of; and

7. For attorneys' fees, costs, and other expenses incurred in this action, and in any action against Mr. Cox or any other third party necessitated by TGS' tortious interference with the provisions of the SPA.

8. For such other and further relief as the Court may deem just and proper.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**DEMAND FOR JURY TRIAL**

Roadrunner, under Rule 38(b) of the Federal Rules of Civil Procedure, demands trial by jury as to all legal matters contained in the Complaint.

Dated: August 7, 2017    GREENBERG TRAURIG, LLP


By: /s/ Kurt A. Kappes
Kurt A. Kappes
Michael D. Lane
Sean A. Newland
Attorneys for Roadrunner
Intermodal Services, LLC