UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROADRUNNER INTERMODAL SERVICES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>T.G.S. TRANSPORTATION, INC.,<br><br>Defendant. | Case No. 1:17-cv-01056-DAD-BAM<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S RENEWED *EX PARTE* APPLICATION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY<br><br>(ECF No. 9) |

Currently before the Court is Plaintiff's renewed *ex parte* application for leave to conduct expedited discovery. (ECF No. 9.) The Court finds the ex parte application suitable for decision without oral argument, and the matter is deemed submitted. For the reasons outlined below, Plaintiff's renewed *ex parte* application for leave to conduct expedited discovery shall be granted in part and denied in part.

**I.  Background**

Roadrunner Intermodal Services, LLC ("Plaintiff" or "Roadrunner") filed the instant diversity action against Defendant T.G.S. Transportation, Inc. ("Defendant" or "TGS") on August 7, 2017. By its complaint, Roadrunner, a provider of regional and national drayage services, asserts that TGS is knowingly and continuing to interfere with a valid contract between Roadrunner and a former Roadrunner employee, who is now employed by TGS in violation of

1

that contract.

In relevant part, Roadrunner alleges that it entered into a Stock Purchase Agreement ("SPA") on November 2, 2012, with Jeffrey Cox, Double C Transportation ("Double C"), Central Cal Transportation ("Central Cal") and David Chidester. Complaint at ¶ 9. On execution of the SPA, Roadrunner acquired all of the outstanding stock of Double C and Central Cal. Id. at ¶10. A non-competition, non-solicitation and non-disclosure provision was included in the SPA and applies to both Mr. Chidester and Mr. Cox. Id. at ¶ 11. Under the SPA, for restricted period through December 31, 2017, Mr. Cox may not work for any entity that competes with Roadrunner, may not use his knowledge of the Central Cal or Double C businesses or his relationship with customers to compete with Roadrunner, may not contact actual or targeted customers of Central Cal or Double, may not seek to induce employees or agents of Central Cal or Double C to leave the companies or to stop performing services for them or Roadrunner, may not disparage Roadrunner, Central Cal or Double C or engage in conduct that is injurious to Central Cal or Double C's reputation or interests. Id. at ¶¶ 12-14. Finally, under the SPA, Mr. Cox may not divulge, communicate or use any confidential information or trade secrets of Central Cal or Double C to their detriment. Id. at ¶ 15.

After the SPA was executed, Double C merged into Central Cal and hired Mr. Cox as Vice President. He served in that position from November 2012 until January 2017, when he became Central Cal's Director of Sales. He separated from his employment with Central Cal on or around May 31, 2017. Id. at ¶ 16. Roadrunner alleges that in or around July 2017, Mr. Cox was hired by TGS, a provider of international drayage and domestic intermodal drayage and Roadrunner competitor. Id. at ¶¶ 8, 18. Roadrunner further alleges that Mr. Cox is soliciting Roadrunner's employees and contractors and inducing them to leave Roadrunner to TGS. Id. at ¶ 19. Roadrunner also contends that Mr. Cox is soliciting or intends to solicit Roadrunner's customers to take their business to TGS, using his knowledge of Roadrunner and its affiliates. Id. at 24.

On July 11, 2017, Roadrunner's legal counsel sent a letter to Tim and Peter Schneider, President and Vice-President of TGS. The letter addressed the non-compete provisions of the

SPA, and demanded that TGS cease its interference with Roadrunner's contractual relationship with Mr. Cox. The letter also asked TGS to confirm in writing that Mr. Cox would not be an employee of TGS, that TGS would not tortiously interfere with Roadrunner's contractual agreement with Mr. Cox, and asked whether Mr. Cox disclosed to TGS prior to employment that he was bound by the non-competition, non-solicitation and confidential information provisions. Id. at ¶ 27. TGS's counsel responded to letter, but failed to confirm that Mr. Cox would not be an employee of TGS. Id. at ¶ 30. Roadrunner alleges that Mr. Cox is still an employee of TGS and is continuing to violate the non-compete provisions of the SPA, and that TGS is knowingly and intentionally tortiously interfering with Roadrunner's contractual agreement with Mr. Cox. Id. Roadrunner presents claims against TGS for tortious interference with contract, tortious interference with prospective economic relationship, unjust enrichment/restitution, unfair competition and conversion. Id. at pp. 7-10.

An initial scheduling conference is set in this matter for October 26, 2017. (ECF No. 4.) TGS has not yet filed an answer or other responsive pleading to the complaint.

On August 7, 2017, concurrent with the complaint, Roadrunner filed an *ex parte* application for leave to conduct expedited discovery. (ECF No. 2.) On August 8, 2017, the Court denied Roadrunner's *ex parte* application without prejudice because there was no indication that Roadrunner had served the summons and complaint on Defendant TGS, and the Court therefore lacked personal jurisdiction over TGS. (ECF No. 5.)

On August 9, 2017, Roadrunner filed a proof of service of the summons and complaint. On the same date, Roadrunner filed its renewed *ex parte* application for leave to conduct expedited discovery. (ECF Nos. 7, 9.) By the application, Roadrunner asserts that expedited discovery is needed to ascertain the extent of harm caused by TGS and Cox's wrongful solicitation of Roadrunner's employees, contractors, drivers and customers in violation of the non-competition, non-solicitation, and confidential information provisions of the SPA. Roadrunner claims that it is aware that TGS and Cox have solicited and hired dozens of Roadrunner's employees, contractors and drivers, and have solicited hundreds of thousands of dollars in business from Roadrunner's customers, but Roadrunner does not know the full extent of

the information taken and used or the solicitation. Roadrunner therefore argues that expedited discovery is needed to fully consider the necessity of a motion for a temporary restraining order or preliminary injunction. (ECF No. 9 at pp. 2-3.)

Roadrunner therefore requests leave to conduct immediate discovery tailored to: (1) The timing of when Mr. Cox informed TGS that Mr. Cox was bound by restrictive covenants with Roadrunner, including the non-competition, non-solicitation, and confidential information provisions; (2) TGS and Mr. Cox's communications with and solicitation of Roadrunner's employees, contractors, drivers and customers; and (3) Mr. Cox's use and disclosure of Roadrunner's confidential information after Mr. Cox began his employment with TGS. (ECF No. 9 at p. 3.) Roadrunner seeks leave to conduct the following discovery: (1) two depositions—one of TGS and one of Mr. Cox; (2) written discovery in the form of 58 document requests to TGS; (3) written discovery in the form of 54 document requests to Mr. Cox; and (4) written discovery in the form of 7 requests to three Roadrunner/CC/DC customers that went to TGS following Mr. Cox's departure from Roadrunner. (ECF No. 9 at p. 10.) Roadrunner indicates that these requests will be limited to three specific events and limited time periods: (1) TGS and Mr. Cox's communications prior to Mr. Cox's hiring; (2) documents contemporaneous to Mr. Cox's hiring; and (3) documents since Mr. Cox joined TGS relating to breach of the SPA. (Id.)

TGS filed an opposition to the *ex parte* application on August 11, 2017. (ECF No. 14.) TGS argues that Roadrunner has failed to submit any admissible evidence in support of its claims and that Roadrunner left out important facts. For instance, TGS reports that it did not lure Mr. Cox away from Roadrunner to use Roadrunner's confidential information to target Roadrunner's customers. Instead, Roadrunner fired Mr. Cox on May 31, 2017, after he filed a lawsuit against Roadrunner disclosing accounting irregularities and alleging the company had defrauded him regarding payment of the sums due under the SPA. (ECF No. 14-1, Declaration of Ian B. Wieland ("Weiland Decl.") at ¶¶ 3-6.) Mr. Cox's action remains pending and Roadrunner has reportedly stonewalled any attempts by Mr. Cox to conduct discovery in that case. (Id. at ¶ 11.) Next, TGS contends that it does not have, has not used, and does not need any Roadrunner confidential information to solicit Roadrunner customers. (ECF No. 14-4, Declaration of Peter

4

Schneider ("Schneider Decl.") at ¶ 2.) The identity of these customers, and Mr. Cox's termination, are well known in the industry. TGS reports that after learning of Mr. Cox's termination, but long before he was hired, TGS and other trucking companies in the industry reached out to several customers of Roadrunner from which TGS had already been seeking business. Id. Similarly, long before Mr. Cox was hired by TGS, other Roadrunner customers reached out to TGS seeking quotes for services after Mr. Cox's firing. (Id. at ¶ 3.) TGS also reports that prior to hiring Mr. Cox on July 1, 2017, TGS was assured by Mr. Cox and his attorney that the non-compete was not valid or enforceable. (Id. at ¶ 5.) Mr. Cox also filed a second lawsuit against Roadrunner regarding the unenforceability of the non-compete as well as Roadrunner's efforts, after firing him, to preclude him from seeking alternative employment with TGS. (Weiland Decl. at ¶ 10.)

TGS asserts that Roadrunner has failed to submit any admissible evidence that TGS or Mr. Cox has solicited a single customer or employee of Roadrunner, let alone that TGS or Cox did so using Roadrunner's proprietary and confidential information. (Id. at ¶ 4.) In the absence of such evidence, TGS contends that Roadrunner has not established good cause for resolving its request on an *ex parte* basis or for obtaining expedited discovery.

Roadrunner replied on August 14, 2017. (ECF No. 16.) In its reply, Roadrunner contends that TGS has been aggressively using Mr. Cox and Roadrunner's confidential information and goodwill to solicit Roadrunner's employees, contractors and customers. (ECF No. 16-1, Declaration of Ben Kirkland ("Kirkland Decl.") at ¶¶ 13-18.) Roadrunner further contends that over the last few weeks, TGS and Mr. Cox's solicitation has inflicted on Roadrunner millions of dollars in lost revenues (Kirkland Decl., ¶¶17-18), and the departure or threatened departure of key employees and contractors from Roadrunner to TGS (Kirkland Decl. at ¶¶ 13-16.) Roadrunner asserts that the *ex parte* application is critical to arming it with necessary—and otherwise unavailable—discovery to evaluate and pursue a motion for preliminary injunction and put an end to TGS's allegedly tortious interference before Roadrunner has lost everything it acquired in the SPA. (ECF No. 16 at p. 4.) Roadrunner explains that it this is a critical time period because of the almond harvest season.

## II. Legal Standard

Federal Rule of Civil Procedure 26(d) generally provides that a party "may not seek discovery from any source before the parties have conferred as required by Rule 26(f). Fed. R. Civ. P. 26(d)(1); Qwest Commc'ns Int'l. Inc. v. WorldQuest Networks. Inc., 213 F.R.D. 418, 419 (D. Colo. 2003) ("Rule 26(d) of the Federal Rules of Civil Procedure generally provides that formal discovery will not commence until after the parties have conferred as required by Rule 26(f)."). "However, courts may permit expedited discovery before the Rule 26(f) conference upon a showing of good cause." In re Countrywide Fin. Corp. Derivative Litig., 542 F. Supp. 2d 1160, 1179 (C.D. Cal. 2008).

"Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002). In considering whether good cause exists, factors courts may consider include: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." Rovio Entm't Ltd. v. Royal Plush Toys, Inc., 907 F.Supp.2d 1086, 1099 (N.D. Cal. 2012). Good cause for expedited discovery is frequently found in cases involving claims of infringement and unfair competition or in cases where the plaintiff seeks a preliminary injunction. See AF Holdings LLC v. Doe, No. 2:12-CV-2206-JAM-EFB, 2012 WL 5464577, at *2 (E.D. Cal. Nov. 7, 2012), citing Semitool, Inc., 208 F.R.D. at 276.

## III. Discussion

In considering the relevant factors, the Court finds that Roadrunner has demonstrated good cause for expedited discovery. Roadrunner intends to seek a preliminary injunction, the purpose of which is to preserve the status quo. See U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010) ("the very purpose of a preliminary injunction . . . is to preserve the status quo and the rights of the parties until a final judgment issues in the cause"). The burden on the defendant to comply with the requests will not be any greater than the general discovery

burdens contemplated by this action, and the discovery will commence approximately one month before the required 26(f) conference must be completed. As to the breadth of discovery, the Court finds that the proposed discovery is not sufficiently narrowly tailored, and therefore the scope of expedited discovery shall be limited. Accordingly, the Court modifies Roadrunner's requests as follows:

**1. Requests Granted[1]**

Roadrunner shall be permitted to conduct the oral deposition of a TGS designated employee most knowledgeable pursuant to Federal Rule of Civil Procedure 30(b)(6) regarding the following topics as set forth in the proposed Notice of Taking Deposition (ECF No. 9-4, Exhibit 3 to Declaration of Michael D. Lane) and, where indicated, modified by the Court:

> TOPIC NO. 1: The interview and hiring process at TGS including but not limited to, who interviewed and hired Mr. Jeffrey Cox ("Cox").
>
> TOPIC NO. 3: Interview(s) of Mr. Cox.
>
> TOPIC NO. 4: Any review prior to hiring Mr. Cox of his November 2, 2012 Stock- Purchase Agreement.
>
> TOPIC NO. 7: Any contracts between TGS and Mr. Cox.
>
> TOPIC NO. 18: Any review after hiring Mr. Cox of his November 2, 2012 Stock-Purchase Agreement.
>
> TOPIC NO. 20: TGS's efforts, *after employing Mr. Cox*, to solicit Roadrunner Intermodal Services, LLC, Central Cal Transportation's and/or Double C Transportation's former customers and clients.
>
> TOPIC NO. 22: TGS's efforts, *after employing Mr. Cox*, to solicit Central Cal Transportation's and/or Double C Transportation's former employees, contractors, or drivers.
>
> TOPIC NO. 23: TGS's efforts, *after employing Mr. Cox*, to solicit Roadrunner

---

[1] For purposes of these requests, all references to "Central Cal Transportation" are limited to the entity identified in the complaint as "Central Cal Transportation, a California corporation." (ECF No. 1 at ¶ 9.) Although Roadrunner's proposed discovery refers to both "Central Cal Transportation" and "Central Cal Transportation, LLC," the Court will not permit discovery related to "Central Cal Transportation, LLC," because that entity is neither identified in the complaint nor defined in the proposed discovery requests.

Intermodal Services, LLC's employees, contractors, or drivers, including, but not limited to, those that it obtained as part of the Stock Purchase Agreement.

TOPIC NO. 24: Mr. Cox's efforts, *after he was hired by TGS*, to solicit Central Cal Transportation's and/or Double C Transportation's former customers and clients.

TOPIC NO. 25: Mr. Cox's efforts, *after he was hired by TGS,* to solicit Roadrunner Intermodal Services, LLC's customers and clients including, but not limited to, those that it obtained as part of the Stock Purchase Agreement.

TOPIC NO. 26: Mr. Cox's efforts, *after he was hired by TGS*, to solicit Central California Transportation's and/or Double C Transportation's former employees, contractors, or drivers.

(ECF No. 9-4, Ex. 3.)

Roadrunner shall be permitted to serve only the following Requests for Production on TGS as attached to the Notice of Taking Deposition (ECF No. 9-4, Exhibit 3) and as modified by the Court:

REQUEST NO. 4: Any Communications Mr. Cox sent to TGS referring or relating to the November 2, 2012 Stock-Purchase Agreement.

REQUEST NO. 5: Any written representations Mr. Cox made to TGS referring or relating to the November 2, 2012 Stock-Purchase Agreement.

REQUEST NO. 6: All Communications between Mr. Cox and anyone at TGS prior to TGS offering him employment at TGS, referring or relating to Roadrunner Intermodal Services, LLC, Central Cal Transportation and/or Double C Transportation.

REQUEST NO. 7: All documents between Mr. Cox and anyone at TGS prior to TGS offering him employment at TGS, referring or relating to Roadrunner Intermodal Services, LLC, Central Cal Transportation and/or Double C Transportation.

REQUEST NO. 8: Any documents Mr. Cox provided to TGS prior to TGS offering him employment at TGS, referring or relating to Roadrunner Intermodal Services, LLC, Central Cal Transportation and/or Double C Transportation.

REQUEST NO. 12: Any and all internal TGS documents referring or relating to Mr. Cox, dated prior to TGS offering him employment at TGS.

REQUEST NO. 15: Notes of any interviews of Mr. Cox.

REQUEST NO. 18: Any written representations Mr. Cox made prior to TGS offering him employment, referring or relating to Mr. Cox's November 2, 2012 Stock-Purchase Agreement.

REQUEST NO. 19: Any and all offers of employment made to Mr. Cox.

REQUEST NO. 22: Any documents, including but not limited to business plans, that Mr. Cox submitted to TGS after the date TGS offered Mr. Cox employment, that refer or relate to any former Central Cal Transportation, and/or Double C Transportation customer accounts Mr. Cox worked on prior to joining TGS.

REQUEST NO. 23: All Communications, including but not limited to business plans, that Mr. Cox submitted to TGS after the date TGS offered Mr. Cox employment, that refer or relate to any former Central Cal Transportation, and/or Double C Transportation customer accounts Mr. Cox worked on prior to joining TGS.

REQUEST NO. 25: All Communications between Mr. Cox and anyone at TGS after TGS offered Mr. Cox employment, that refer or relate to Roadrunner Intermodal Services, LLC, Central Cal Transportation, and/or Double C Transportation.

REQUEST NO. 26: All documents between Mr. Cox and anyone at TGS after TGS offered Mr. Cox employment, that refer or relate to Roadrunner Intermodal Services, LLC, Central Cal Transportation, and/or Double C Transportation.

REQUEST NO. 35: All Communications Mr. Cox has sent, *after TGS offered him employment,* to anyone who is or was known to be a customer of Roadrunner Intermodal Services, LLC, Central Cal Transportation, and/or Double C Transportation

REQUEST NO. 36: All documents Mr. Cox has sent, *after TGS offered him employment,* to anyone who is or was known to be a customer of Roadrunner Intermodal Services, LLC, Central Cal Transportation, and/or Double C Transportation

REQUEST NO. 37: All Communications TGS has sent a*fter TGS offered Mr. Cox employment* to anyone who is or was known to be a customer of Roadrunner Intermodal Services, LLC, Central Cal Transportation, and/or Double C Transportation *based on information obtained from or provided by Mr. Cox.*

REQUEST NO. 38: All documents TGS has sent *after TGS offered Mr. Cox employment* to anyone who is or was known to be a customer of Roadrunner Intermodal Services, LLC, Central Cal Transportation, and/or Double C Transportation *based on information obtained from or provided by Mr. Cox.*

REQUEST NO. 43: All Communications Mr. Cox sent, *after TGS offered him*

*employment*, to anyone who is or was employed at Roadrunner Intermodal Services, LLC, Central Cal Transportation, and/or Double C Transportation.

REQUEST NO. 44: All documents Mr. Cox sent, *after TGS offered him employment*, to anyone who is or was employed at Roadrunner Intermodal Services, Central Cal Transportation, and/or Double C Transportation.

REQUEST NO. 45: All Communications TGS sent *after TGS offered Mr. Cox employment* to anyone who is or was employed at Roadrunner Intermodal Services, LLC, Central Cal Transportation, and/or Double C Transportation.

REQUEST NO. 46: All documents TGS sent *after TGS offered Mr. Cox employment* to anyone who is or was employed at Roadrunner Intermodal Services, LLC, Central Cal Transportation, and/or Double C Transportation.

(ECF No. 9-4, Ex. 3.)

Roadrunner shall be permitted to subpoena and depose Mr. Jeffrey Cox as contemplated by the proposed subpoena pursuant to Federal Rules of Civil Procedure 30 and 45. (ECF No. 9-5, Ex. 4.) The duration of the deposition shall be limited to one day of 3.5 hours. Fed. R. Civ. P. 30(d)(1). Additionally, the related Requests for Production directed to Mr. Cox (ECF No. 9-5, Ex. 4 at pp. 10-15) shall be limited to the following, as modified by the Court:

REQUEST NO. 4: Any Communications TGS sent to You referring or relating to the November 2, 2012 Stock-Purchase Agreement.

REQUEST NO. 5: Any written representations TGS made to You referring or relating to the November 2, 2012 Stock-Purchase Agreement.

REQUEST NO. 6: All Communications between You and anyone at TGS prior to TGS offering You employment at TGS, referring or relating to Roadrunner Intermodal Services, LLC, Central Cal Transportation and/or Double C Transportation.

REQUEST NO. 7: All documents between You and anyone at TGS prior to TGS offering You employment at TGS, referring or relating to Roadrunner Intermodal Services, LLC, Central Cal Transportation and/or Double C Transportation.

REQUEST NO. 8: Any documents TGS provided to You prior to TGS offering You employment at TGS, referring or relating to Roadrunner Intermodal Services, LLC, Central Cal Transportation and/or Double C Transportation.

REQUEST NO. 12: Any and all applications for employment You submitted to TGS *after your separation from employment with Central Cal Transportation*.

REQUEST NO. 13: Notes of any interviews with TGS *after your separation from employment with Central Cal Transportation*.

REQUEST NO. 16: Any written representations TGS made prior to TGS offering You employment, referring or relating to Your November 2, 2012 Stock-Purchase Agreement

REQUEST NO. 17: Any and all offers of employment made to You by TGS.

REQUEST NO. 20: Any documents, including but not limited to business plans, that You submitted to TGS after the date TGS offered You employment, that refer or relate to any former Central Cal Transportation, and/or Double C Transportation customer accounts You worked on prior to joining TGS.

REQUEST NO. 21: All Communications, including but not limited to business plans, that You submitted to TGS after the date TGS offered You employment, that refer or relate to any former Central Cal Transportation, and/or Double C Transportation customer accounts You worked on prior to joining TGS.

REQUEST NO. 22: All Communications between You and anyone at TGS after TGS offered You employment, that refer or relate to Roadrunner Intermodal Services, LLC, Central Cal Transportation, and/or Double C Transportation.

REQUEST NO. 23: All documents between You and anyone at TGS after TGS offered You employment, that refer or relate to Roadrunner Intermodal Services, LLC, Central Cal Transportation, and/or Double C Transportation.

REQUEST NO. 32: All Communications You have sent, *after TGS offered You employment*, to anyone who is or was known to be a customer of Roadrunner Intermodal Services, LLC, Central Cal Transportation, and/or Double C Transportation.

REQUEST NO. 33: All documents You have sent, *after TGS offered You employment*, to anyone who is or was known to be a customer of Roadrunner Intermodal Services, LLC, Central Cal Transportation, and/or Double C Transportation.

REQUEST NO. 34: All Communications TGS has sent, *after TGS offered You employment*, to anyone who is or was known to be a customer of Roadrunner Intermodal Services, LLC, Central Cal Transportation, and/or Double C Transportation *based on information received from or provided by You*.

REQUEST NO. 35: All documents TGS has sent, *after TGS offered You employment*, to anyone who is or was known to be a customer of Roadrunner Intermodal Services, LLC, Central Cal Transportation, and/or Double C Transportation *based on information received from or provided by You*.

(ECF No. 9-5, Ex. 4.)

**II.      Requests Denied**

Unless otherwise specified above, all other topics of inquiry and requests for production of documents directed to either TGS or Mr. Cox by Roadrunner are denied. Further, Roadrunner's requests for leave to serve subpoenas for the production of documents on Sierra Valley Almonds, LLC, Minturn Nut Co., Inc., and Expeditors International of Washington, Inc., third parties to this action, are denied. (ECF Nos. 9-6, 9-7 and 9-8.)

**IV.     Conclusion and Order**

For the reasons stated, IT IS HEREBY ORDERED as follows:

1. Roadrunner's *ex parte* application for leave to conduct expedited discovery is GRANTED in part and DENIED in part as detailed above;
2. Within ten (10) days from the date of this order, Roadrunner shall serve (1) the Rule 30(b)(6) deposition notice and related requests for production of documents as modified by this Court; and (2) the Rule 45 deposition subpoena and related request for production of documents as modified by this Court.
3. The depositions and production of documents contemplated by this expedited discovery order shall be completed no later than **October 5, 2017**, and the duration of the deposition of Mr. Cox shall be limited to one day of 3.5 hours.

IT IS SO ORDERED.

Dated:    **August 30, 2017**              /s/ *Barbara A. McAuliffe*
                                                            UNITED STATES MAGISTRATE JUDGE