KURT A. KAPPES – SBN 146384
kappesk@gtlaw.com
MICHAEL D. LANE – SBN 239517
lanemd@gtlaw.com
SEAN A. NEWLAND – SBN 300928
newlands@gtlaw.com
GREENBERG TRAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA 95814-3938
Telephone: (916) 442-1111
Facsimile: (916) 448-1709

Attorneys for Plaintiff
ROADRUNNER INTERMODAL SERVICES,
LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROADRUNNER INTERMODAL SERVICES, LLC, a Delaware limited liability company, | CASE NO. 1:17-CV-01056-DAD-BAM |
| Plaintiff, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION** |
| v. | [Filed concurrently with: 1. Supplemental Declaration of Michael D. Lane] |
| T.G.S. TRANSPORTATION, INC., a California corporation, and DOES 1-10, | Hearing: Date: November 7, 2017 Time: 9:30 a.m. |
| Defendants. | Courtroom: Courtroom 5, Seventh Floor |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 7

II.   ROADRUNNER HAS SHOWN IT WILL CONTINUE TO SUFFER
      IRREPARABLE HARM WITHOUT A PRELIMINARY INJUNCTION ....................... 7

      A.    Roadrunner Has Shown It Will Continue to Suffer Irreparable Harm Without a
            Preliminary Injunction .................................................................................. 7

            1.    TGS's and Cox's use of Roadrunner's confidential and trade secret
                  information constitutes irreparable harm ................................................ 8

            2.    TGS's past and continued solicitation of Roadrunner's employees, drivers
                  and customers constitutes irreparable harm ......................................... 10

            3.    Roadrunner's continued loss of goodwill constitutes irreparable harm ....... 11

            4.    Roadrunner's existential threat and the fundamental changes to its ability
                  to continue in business as a result of TGS's wrongful activities constitutes
                  irreparable harm .................................................................................. 12

            5.    Cox agreed under the SPA that a breach of the SPA Non-Competition
                  provisions would cause irreparable harm and damage to Roadrunner ......... 13

III.  ROADRUNNER HAS SHOWN IT WILL LIKELY SUCCEED ON THE
      MERITS OF ITS CLAIMS ................................................................................. 13

      A.    Roadrunner Has Shown It Is Likely To Succeed On The Merits Of Roadrunner's
            Tortious Interference With Contract Claim .................................................. 13

            1.    The SPA Is Valid And Enforceable Under Delaware Law ......................... 13

            2.    Even If California Law Were Applied In This Case, Roadrunner Has
                  Shown That The SPA Is Valid And Enforceable Under California  Law ...... 15

                  a.    TGS does not dispute that the SPA Non-Disclosure provision is
                        valid and enforceable ................................................................. 16

                  b.    The SPA Non-Compete provisions' five year expiration date is
                        reasonable, valid and enforceable ................................................ 16

                  c.    The SPA Non-Compete provisions' geographic scope is
                        reasonable, valid and enforceable because Central Cal engages in
                        international sales ....................................................................... 17

            3.    TGS Concedes It Knew Of the SPA And The Non-Compete And Non-
                  Disclosure Provisions Before TGS Conspired With Cox To Perform Acts
                  Intended To Breach Those Provisions ................................................... 18

            4.    TGS's Claim That TGS's Tortious Interference Has Not Caused
                  Roadrunner Harm Is Meritless .............................................................. 19

      B.    Roadrunner Has Shown It Is Likely To Succeed On The Merits Of Roadrunner's
            Tortious Interference With Prospective Economic Relations Claim .................. 20

      C.    Roadrunner Has Shown It Is Likely To Succeed On The Merits Of Roadrunner's
            Conversion Claim ....................................................................................... 20

IV.    ROADRUNNER DOES NOT SEEK A MANDATORY INJUNCTION......................21
V.     THE PUBLIC INTEREST FAVORS A PRELIMINARY INJUNCTION ...................21
VI.    CONCLUSION ...........................................................................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Abbott Labs. v. Sandoz, Inc.*,
   544 F.3d 1341 (Fed. Cir. 2008)............................................................13

*Alexander & Alexander Ben. Services, Inc. v. Benefit Brokers & Consultants, Inc.*,
   756 F. Supp. 1408 (D. Or. 1991)..........................................................11

*Allied N. Am. Ins. Brokerage Corp. v. Woodruff-Sawyer*,
   2005 U.S. Dist. LEXIS 47388 (N.D. Cal. Feb. 19, 2005)....................11

*Atl. Marine Constr. Co. v. United States Dist. Court*,
   134 S. Ct. 568................................................................................15

*Baiul v. NBC Sports*,
   2016 U.S. Dist. LEXIS 13021 (C.D. Cal. Feb. 2, 2016).....................21

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
   664 F.3d 922 (Fed. Cir. 2012)..............................................................13

*Cenveo Corp. v. Diversapack LLC*,
   2009 U.S. Dist. LEXIS 91535 (S.D.N.Y. Oct. 1, 2009) ....................11

*CHR Holdings, Inc. v. Carroll*,
   2016 WL 6888175 (C.D. Cal. Mar. 15, 2016) ..........................12, 13

*Diamond Blade Warehouse, Inc. v. Paramount Diamond Tools, Inc.*
   420 F. Supp. 2d 866 (N.D. Ill. 2006)....................................................11

*Family Home & Fin. Ctr v. Fed. Home Loan Mortg. Corp.*,
   525 F.3d 822 (9th Cir. 2008) ................................................................19

*Global Switching Inc. v. Kasper*,
   2006 U.S. Dist. LEXIS 44450 (E.D.N.Y. June 29, 2006) ..................11

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*,
   736 F.3d 1239 (9th Cir. 2013) ........................................................12, 13

*International Business Machines Corporation v. Bajorek*,
   191 F.3d 1033 (9th Cir. 1999) ..............................................................15

*Language Line Svcs., Inc. v. Language Svcs. Assocs., LLC*,
   2010 U.S. Dist. LEXIS 140350 (N.D. Cal. Jul. 13, 2010)...................13

*Lifetime Fitness, Inc. v. Wallace*,
   2012 U.S. Dist. LEXIS 59705 (D. Minn. Apr. 30, 2012) ...................13

*Lillge v. Verity*,
   2007 U.S. Dist. LEXIS 73543 (N.D. Cal. Oct. 2, 2007).....................11

*Low v. LinkedIn Corp.*,
   900 F.Supp.2d 1010 (N.D. Cal. 2012) .................................................22

*Marsh USA Inc. v. Karasaki*,
   2008 U.S. Dist. LEXIS 90986 (S.D.N.Y. Oct. 30, 2008) ...................11

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Garcia,*
  127 F. Supp. 2d. 1305 (C.D. Cal. 2000)..................................................................13

*Mixing Equip. Co. v. Philadelphia Gear, Inc.,*
  436 F.2d 1308 (3d Cir. 1971)............................................................................11

*NAC Found, LLC v. Jodoin,*
  2016 U.S. Dist. LEXIS 98126 (D. Nev. Jul. 25, 2016)........................................13

*PolyPortables, LLC v. Endurequest Corp.,*
  2016 U.S. Dist. LEXIS 149986 (E.D. Cal. Oct. 28, 2016) ..................................13

*Pyro Spectaculars North, Inc. v. Souza,*
  861 F.Supp.2d 1079 (E.D. Cal. 2012)................................................................22

*Sanofi-Synthelabo v. Apotex, Inc.,*
  470 F.3d 1368 (Fed. Cir. 2006)..........................................................................13

*Shipley Co., LLC v. Kozlowski,*
  926 F. Supp. 28 (D. Mass. 1996)........................................................................11

*Steele Ins. Agency, Inc.,* 2013 U.S. Dist. LEXIS 70098 (E.D. Cal. May 16, 2013) .................................10

*Stryker Sales Corp. v. Zimmer Biomet, Inc.,*
  231 F. Supp. 3d 606 ...........................................................................................15

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,*
  240 F.3d 832 (9th Cir. 2001) .............................................................................13

*Terex Corp. v. Cubex, Ltd.,*
  2006 U.S. Dist. LEXIS 88863 (N.D. Tex. Dec. 7, 2006) ...................................11

*TMX Funding, Inc. v. Impero Techs., Inc.,*
  2010 U.S. Dist. LEXIS 37064 (N.D. Cal. Mar. 18, 2010)..................................11

*TP Group-CI, Inc. v. Vetecnik,*
  2016 WL 5864030 (D. Del. Oct. 6, 2016) ..........................................................14

*Union Carbide Corp. v. UGI Corp.,*
  731 F.2d 1186 (5th Cir. 1984) ...........................................................................11

*United States Legal Support, Inc. v. Hofioni,*
  2013 U.S. Dist. LEXIS 179282 (E.D. Cal. Dec. 19, 2013) ................................21

*Wyndham Resort Dev. Corp. v. Bingham,*
  2010 U.S. Dist. LEXIS 80608 (E.D. Cal. July 8, 2010) .....................................11

**State Cases**

*Alliant Ins. Svcs., Inc. v. Gaddy,*
  159 Cal.App.4th 1292 (2008) ...............................................................16, 17, 18, 20

*Cirrus Holding Co. v. Cirrus Indus., Inc.,*
  794 A.2d 1191 (Del. Ch. 2001)..........................................................................14

*Hough Associates, Inc. v. Hill et al.,*
  2007 WL 148751 (Del. Ch. Jan. 17, 2007) ........................................................20

*Kan Di Ki, LLC v. Suer*,
   2015 Del. Ch. LEXIS 191 (Ch. July 22, 2015)...................................................16

*In re Marriage of Freaux and Mermin*,
   223 Cal.App.4th 1242 (2014) ...................................................................18

*Monogram Indus., Inc. v. Sar Indus., Inc.*,
   64 Cal. App. 3d 692 696 (1976) ..........................................................17, 18

*Morlife, Inc. v. Perry*,
   56 Cal.App.4th 1514 (1997) ....................................................................10

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
   50 Cal 3d 1118 (1990) ............................................................................19

*Quelimane Co. v. Stewart Title Guaranty Co.*,
   19 Cal.4th 26 (1998) ...............................................................................19

*Reeves v. Hanlon*,
   33 Cal.4th 1140 (2004) ...........................................................................21

*Vacco Industries, Inc. v. Van Den Berg*,
   5 Cal. App. 4th 34 (1992) ........................................................................17

**Statutes**

Cal. Bus. & Prof. Code § 16600 ....................................................................16, 17, 22

Cal. Bus. & Prof. Code § 16601 ..............................................................15, 16, 18, 22

Case No.     1:17-cv-01056-DAD-BAM

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

## I. INTRODUCTION

Roadrunner has established that it is entitled to preliminary relief because:

(1) Roadrunner will succeed on the merits of its tortious interference and conversion claims because (a) TGS *admits* that TGS *knew* of the SPA between Cox and Roadrunner *before* TGS hired Cox, and (b) hiring Cox alone violates the SPA's lawful restriction on Cox's ability to take a competing employment position for a defined period of time. (Of course, hiring Cox was just TGS's opening gambit in its plan to use Cox and Cox's accumulated knowledge of Roadrunner's confidential information to raid Roadrunner's business, employees and drivers.); and

(2) Only preliminary injunctive relief can properly address and protect Roadrunner from the irreparable harm Roadrunner will continue to suffer -- as TGS continues raiding Roadrunner's customers, employees, and drivers, in direct violation of the bargain between Roadrunner and Cox. Roadrunner's plight is particularly acute, as California is in almond harvest season, and the upcoming holiday season is fast approaching.

Conversely, TGS's opposition is built entirely on TGS's self-serving argument that all of the customers, employees, and drivers that TGS raided would have magically switched from Roadrunner to TGS, even if Cox had not violated his obligations under the SPA's Non-Competition, Non-Solicitation, and Non-Disclosure provision. Of course, TGS's argument is not only facially implausible (given that, among other things, TGS did not know anyone at Roadrunner/Central Cal other than Cox), but TGS's knowing violations of Cox's obligations under the SPA demonstrates precisely the opposite—simply put, if Cox's knowledge, relationships and presence as a TGS employee were insignificant, TGS would have waited six months until the Cox's obligations expired before hiring him to exploit Cox's detailed knowledge about Central Cal's customers, employees, and drivers.

Accordingly, Roadrunner requests an order preliminarily enjoining TGS's interference activities to preserve the status quo during the pendency of this case.

## II. ROADRUNNER HAS SHOWN IT WILL CONTINUE TO SUFFER IRREPARABLE HARM WITHOUT A PRELIMINARY INJUNCTION

### A. Roadrunner Has Shown It Will Continue to Suffer Irreparable Harm Without a Preliminary Injunction

Roadrunner has shown the following types of irreparable harm that Roadrunner has suffered and

continues to suffer as a result of TGS's wrongful activities:

    (1)   TGS's acquisition and use of Roadrunner's confidential and trade secret information;

    (2)   TGS's solicitation of Roadrunner's employees and drivers;

    (3)   Roadrunner's loss of goodwill;

    (4)   Roadrunner/Central Cal's existential vulnerability and the fundamental changes to Roadrunner/Central Cal's ability to continue in business as a result of TGS's wrongful activities; and

    (5)   Cox agreed under the SPA that a breach of the SPA Non-Competition provisions would cause irreparable harm and damage to Roadrunner.

As discussed in Roadrunner's Motion and below, none of these substantial and ongoing injuries can be calculated, let alone adequately compensated for by monetary legal remedies.

## 1.    TGS's and Cox's use of Roadrunner's confidential and trade secret information constitutes irreparable harm

TGS and Cox <u>concede</u> that Cox possesses Roadrunner's confidential and trade secret information, and has been providing it to TGS for TGS's use without Roadrunner's consent, thereby causing Roadrunner continuing irreparable harm.

Roadrunner's confidential and trade secret information includes customer and employee lists and contact information that Cox "transferred over" to his personal cellphone from the Central Cal account that Roadrunner provided, and Roadrunner's internal business data (including, but not limited to, the amount of business Roadrunner does for its customers, employee and driver pay rates, customer pricing and load information, rate agreements, driver financial arrangements, and vendor contracts).[1] *See* Lane Decl., Exh. D (Cox Depo.) at 52:17-55:16, 172:13-175:14, Exh. A (TGS Vol. 1) at 61:14-20.

TGS started using Cox to misappropriate Roadrunner's confidential and trade secret information the day after Cox left Roadrunner, when Peter and Tim Schneider immediately met with Cox over lunch and recorded highly detailed information about: (i.) six of Roadrunner's customers (two of which have already left for TGS so far), including the amount of business Roadrunner was doing for each in terms

---

[1] TGS/Cox ignore that, while Roadrunner allowed Cox to keep the physical cell phone, Roadrunner did not consent to Cox retaining the confidential and proprietary information stored on the cellphone, and was not aware that Cox retained it until this litigation ensured. *See* Wieland Decl., Exh. B at 36:19-23; SPA § 7.4(a)(iv) (Cox's obligation to return information).

of monthly revenue and truck loads, and their contact information; and (ii.) two (2) of Roadrunner's employees with key customer relationships (one of whom has left for TGS so far), including salary ranges for each. Lane Decl., Exh. F.

But as the facts reflect, June 1st was just the beginning of the onslaught, as TGS (unbeknownst to Roadrunner) secretly spoke with Cox 40-60 times over the following month before TGS "officially" hired Cox, and has since shown no sign of slowing down TGS's misappropriation of Roadrunner's confidential and trade secret information. Examples abound and include TGS requesting, receiving and using employee contact information for at least seven Roadrunner/Central Cal employees over the last few months: Jose Avalos, Oscar Melendez, Natalie Pierce, Ashley Grijalva, Mark Avila, Chris Rodriguez, Grace Castaneda—*almost half* of the employees at Roadrunner's Central Cal business—and Roadrunner's proprietary rate information and customer contact information for several of Roadrunner's largest customers. TGS Vol. 1 at 110:2-8, 175:1-17, Vol. 2 at 193:15-20, Lane Decl., Exh. E at TGS 242, 244-45, 248-49, 254-55, 259, 303, 314-15, 317-18, 322-323, 351.

Even assuming, as TGS alleges, that each one of these employees and customers verbally asked Cox to forward Roadrunner's accumulated, historical data regarding their contact information, rates, work and salaries to TGS and make an introduction on their behalf to TGS,[2] all of Roadrunner/Central Cal's customer and employee lists and information (and Cox's relationships that Cox drew on to make the introductions) were no longer Cox's to give the moment that Cox signed the SPA.[3]

In *Steele Ins. Agency*, the Eastern District observed that "California courts have presumed irreparable harm when proprietary information is misappropriated, and that "when a plaintiff risks losing established customers to defendants due to the defendants' improper use of the plaintiff's proprietary information, there is obviously a lasting, irreparable harm." *Steele Ins. Agency, Inc.*, 2013 U.S. Dist. LEXIS 70098, at *35-36 (E.D. Cal. May 16, 2013) (internal quotations omitted). Ultimately, the Eastern District decided that because "Plaintiffs have shown that they risk losing established customers

---

[2] Note TGS's and Cox's allegations are factually incorrect, because the June 1st meeting where Schneider took detailed notes about customer revenues and historical data and key employees to target with salary information (Lane Decl., Exh. F), took place days or weeks before TGS and Cox allege that the customers and employees asked Cox to pass on their information. *Cf.* Cox Decl., ¶¶28-29.
[3] It also flies in the face of CCP 3426 to 3426.11. *See Morlife, Inc. v. Perry*, 56 Cal.App.4th 1514, 1523 (1997)(injunctive relief granted where key employee with intimate knowledge of business and customers unlawfully solicited former employer's customers).

to Defendants, due to Defendants' improper use of Plaintiffs' Confidential Policyholder Information, Plaintiffs have successfully shown that they are likely to suffer irreparable harm in the absence of injunctive relief." *Id.*[4]

Likewise, here, Roadrunner has shown—and TGS has not contested—that TGS has acquired Roadrunner's confidential and trade secret information from Cox, and further, that TGS has used that information to take Roadrunner's employees, customers, and drivers and will continue to do so unless enjoined.

## 2. TGS's past and continued solicitation of Roadrunner's employees, drivers and customers constitutes irreparable harm

Roadrunner has also shown that TGS has used, and will continue to use, Cox's relationships to solicit Roadrunner/Central Cal's employees and drivers, thereby causing Roadrunner continuing irreparable harm.[5]

As Mr. Eichmann explains, one of the reasons why employee solicitation constitutes irreparable harm is that the full extent in which that lost capacity has harmed Roadrunner cannot be monetized:

> As an economist and valuation analyst who teaches damages modeling, I would be unable to estimate the impact of that lost capacity of Roadrunner/Central Cal's future business within a reasonable level of certainty, as the inputs one would

---

[4] *See, e.g., Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1191-92 (5th Cir. 1984) ("disclosure of strategic information [to a competitor] would cause … irreparable harm"); *Mixing Equip. Co. v. Philadelphia Gear, Inc.*, 436 F.2d 1308, 1314 (3d Cir. 1971) (preliminary injunction necessary because once trade secret information is revealed, the company loses its competitive edge); *Allied N. Am. Ins. Brokerage Corp. v. Woodruff-Sawyer*, 2005 U.S. Dist. LEXIS 47388, at *42-45 (N.D. Cal. Feb. 19, 2005) ("The Court finds … that Allied will suffer irreparable harm from Defendants' use of confidential information, including any proprietary knowledge Houweling may retain, to solicit and/or compete with Allied."); *Wyndham Resort Dev. Corp. v. Bingham*, 2010 U.S. Dist. LEXIS 80608, *16-18 (E.D. Cal. July 8, 2010) (likelihood of irreparable harm absent preliminary injunctive relief prohibiting disclosure of customer list); *TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 U.S. Dist. LEXIS 37064, at *8 (N.D. Cal. Mar. 18, 2010) ("California courts have presumed irreparable harm when proprietary information is misappropriated"); *Lillge v. Verity*, 2007 U.S. Dist. LEXIS 73543, at *7 (N.D. Cal. Oct. 2, 2007) ("risk of losing established customers to defendants … due to defendants' improper use of plaintiff's proprietary information would obviously create a lasting, irreparable harm"); *Shipley Co., LLC v. Kozlowski*, 926 F. Supp. 28, 29 (D. Mass. 1996) ("There is no way to assess the amount of loss that the plaintiff will sustain due to the dissemination of this highly confidential material"); *Alexander & Alexander Ben. Services, Inc. v. Benefit Brokers & Consultants, Inc.*, 756 F. Supp. 1408, 1415-16 (D. Or. 1991) (finding that the plaintiff would suffer immediate and irreparable harm in the form of valuable and confidential business information absent injunctive relief).

[5] *Global Switching Inc. v. Kasper*, 2006 U.S. Dist. LEXIS 44450, at *37 (E.D.N.Y. June 29, 2006) ("the violation of a non-compete by the solicitation of employees also constitutes irreparable harm"); *see also, e.g., Cenveo Corp. v. Diversapack LLC*, 2009 U.S. Dist. LEXIS 91535, at *27 (S.D.N.Y. Oct. 1, 2009) (the decline in productivity and profitability due to employee departure to a direct competitor can show irreparable harm); *Terex Corp. v. Cubex, Ltd.*, 2006 U.S. Dist. LEXIS 88863, at *34 (N.D. Tex. Dec. 7, 2006) (losing key employee can constitute irreparable harm); *Diamond Blade Warehouse, Inc. v. Paramount Diamond Tools, Inc.* 420 F. Supp. 2d 866, 872 (N.D. Ill. 2006) (defendants cannot pilfer customers and employees, and also injure goodwill, competitive position, and the continuity of business relationships); *Marsh USA Inc. v. Karasaki*, 2008 U.S. Dist. LEXIS 90986, at *42-43 (S.D.N.Y. Oct. 30, 2008) (the loss of an investment in training and developing employees can constitute irreparable harm).

need to include in such a model are impossible to ascertain. Customers may choose to simply not call Roadrunner/Central Cal or return Roadrunner/Central Cal's calls as a result of this lack of capacity. There is no way a damages expert can estimate the level of current customer calls not made that otherwise *would have been* made but for customers' perception of Roadrunner/Central Cal's reduced capacity. While mitigation costs and past lost sales may be estimated (e.g., expenses incurred to hire new drivers, obtain new trucks, etc.) with a reasonable level of certainty, one's ability to estimate future lost sales as a result of this lost capacity cannot.

Eichmann Decl., ¶32.

Here, there is no dispute that TGS used Cox's relationships with Roadrunner/Central Cal's employees and drivers to lure away one-third of Roadrunner/Central Cal's full-time employees and approximately 30 to 45 percent of its drivers. Motion for PI at 7; Eichmann Decl., ¶¶31-32. Roadrunner/Central Cal's lost employees include personnel with key customer relationships, such as Central Cal's customer service manager, Grace Castenada, and Roadrunner still has not yet been able to fully recover. *Id.* Moreover, TGS's continued efforts to use Cox's retained employee information and relationships with Roadrunner/Central Cal's remaining employees and drivers leaves no doubt that TGS will continue its raids unless enjoined from interfering with the SPA's non-solicitation provision. *See* Eichmann Decl., ¶¶31-32; TGS Vol. 1 at 174:17-25; TGS Vol. 2 at 203:23-205:1; TGS 343-5; Kirkland Decl. ¶9, Exh. 4.

### 3. Roadrunner's continued loss of goodwill constitutes irreparable harm

TGS's opposition merely confirms that Roadrunner has and continues to suffer irreparable harm as a result of Roadrunner's "loss of control over business reputation and damage to goodwill" once TGS hired Cox and began raiding Roadrunner's customers, employees, and drivers using the knowledge and relationships Cox acquired at Central Cal. *Herb Reed*, 736 F.3d 1239, 1250 (9th Cir. 2013); *CHR Holdings, Inc. v. Carroll*, 2016 WL 6888175 at *10-11 (C.D. Cal. Mar. 15, 2016).

For example, in *CHR Holdings*, the Central District observed that one symptom of the plaintiff suffering irreparable harm to the company's goodwill is a scenario where the plaintiff's "customers may continue to leave Plaintiff for Defendant … without solicitation solely based on their prior relationship" with the departed employee. *CHR Holdings*, 2016 WL 6888175 at *10-11. Indeed, the Court stated, each "potential client lost" to the departed employee "is a loss to the goodwill of Plaintiff's company." *Id.*

Thus, each and every time TGS alleges that a Roadrunner employee or customer asked Cox to introduce them to TGS, TGS is unwittingly confirming that TGS has damaged Roadrunner/Central Cal's reputation and goodwill by conspiring with and hiring Cox—demonstrating the precise dynamic that the Central District described as irreparable harm due to a loss of goodwill in *CHR Holdings*. *See generally* TGS Opp.; *CHR Holdings*, 2016 WL 6888175 at *10-11. The only difference is that in *CHR Holdings,* the Court speculated about the way in which the plaintiff's damaged goodwill potentially could have manifested, whereas here, TGS openly admits that Roadrunner is actually suffering the harmful effects that the Central District sought to prevent.

    **4.**    <u>**Roadrunner's existential threat and the fundamental changes to its ability to continue in business as a result of TGS's wrongful activities constitutes irreparable harm**</u>

Roadrunner has shown that as a result of TGS and Cox's solicitation of Roadrunner's customers, Roadrunner/Central Cal has suffered fundamental changes to its ability to continue in business, and if the current rate of loss continues, there is no guarantee that Roadrunner's Central Cal business will survive until a mid-2018 trial. Eichmann Decl., ¶¶33-36.[6]

TGS's cavalier dismissal of Roadrunner's devastating and accumulating losses as mere "financial injuries" completely misses the mark. As Mr. Eichmann explains, "the heightened level of uncertainty with regard to future sales resulting in Roadrunner/Central Cal's inability to quantify capital

---

[6] *See, e.g., Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Evidence of loss of control over business reputation and damage to goodwill could constitute <u>irreparable</u> harm."); *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding <u>irreparable</u> harm. … Further, the mere possibility of future monetary damages does not defeat a motion for preliminary injunction."); *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008) (finding losses of market share and revenue from Sandoz's entry into the market during litigation <u>irreparable</u>); *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1382-83 (Fed. Cir. 2006) (evidence of price erosion, loss of good will, the potential reduction in work force, and the discontinuation of clinical trials sufficient to support district court's finding of <u>irreparable</u> harm); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of <u>irreparable</u> harm."); *NAC Found, LLC v. Jodoin*, 2016 U.S. Dist. LEXIS 98126, at *5 (D. Nev. Jul. 25, 2016) (evidence of threatened loss of prospective customers or goodwill supports <u>irreparable</u> harm finding); *Lifetime Fitness, Inc. v. Wallace*, 2012 U.S. Dist. LEXIS 59705, at *5 (D. Minn. Apr. 30, 2012) (<u>irreparable</u> harm inferred where former employee contacts employer's customers in a way that obtains a personal hold on the good will of the business); *Language Line Svcs., Inc. v. Language Svcs. Assocs., LLC*, 2010 U.S. Dist. LEXIS 140350, at *13 (N.D. Cal. Jul. 13, 2010) ("Courts in this district have recognized that a plaintiff can show a possibility of <u>irreparable</u> harm by showing that it is at risk of losing customers and goodwill to a competitor as a result of the theft of the plaintiff's trade secrets."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Garcia*, 127 F. Supp. 2d 1305, 1305-06 (C.D. Cal. 2000) (issuing preliminary injunction where customers were contacted and provided documentation to transfer accounts); *cf. PolyPortables, LLC v. Endurequest Corp.*, 2016 U.S. Dist. LEXIS 149986, at *11-12 (E.D. Cal. Oct. 28, 2016) (no <u>irreparable</u> harm where plaintiff stated its losses would result in substantial financial injury, but did not present evidence that such "loss[es], for instance, would threaten the existence of plaintiff or result in fundamental changes to its ability to continue in business").

expenditure needs has resulted in not only a substantial financial injury to Roadrunner/Central Cal to date, but threatens to shut its doors should it continue." Eichmann Decl., ¶36. Indeed, in an effort to survive following the unexpected loss of dozens of employees and drivers, and potentially millions of dollars in revenue going forward, Roadrunner has already had to alter the roles of existing personnel, hire new personnel and train them and move operations to a new location. Motion for PI at 10; Eichmann Decl., ¶36.

And in fact, TGS and Cox indicated—both during deposition and in their oppositions to Roadrunner's Motion for PI—that they plan to continue to operate as though the SPA Non-Compete provisions are invalid and unenforceable. Supp. Lane Decl., Exhs. B (Cox Depo.) at 43:24-44:5, 131:25-132:5, C (TGS Depos.) at 94:13-25, 96:13-25, 191:9-193:11, 364:25-365:25, 366:19-367:2.

### 5. <u>Cox agreed under the SPA that a breach of the SPA Non-Competition provisions would cause irreparable harm and damage to Roadrunner</u>

Lastly, Cox expressly agreed that his breach of Section 7.4(a) "may cause <u>irreparable</u> harm and damage" to Roadrunner "in a monetary amount that may be virtually impossible to ascertain," and as a result, that Roadrunner "shall be entitled to an injunction from any court of competent jurisdiction enjoining and restraining any breach or violation of any or all of the covenants set forth in Section 7.4(a)." SPA § 7.4(b) (emphasis added).

Under Delaware law, "contractual stipulations as to <u>irreparable</u> harm *alone suffice* to establish that element for the purpose of issuing preliminary injunctive relief." *TP Group-CI, Inc. v. Vetecnik*, 2016 WL 5864030 at *2 (D. Del. Oct. 6, 2016) (quoting *Cirrus Holding Co. v. Cirrus Indus., Inc.*, 794 A.2d 1191, 1209 (Del. Ch. 2001))(emphasis supplied).

## III. <u>ROADRUNNER HAS SHOWN IT WILL LIKELY SUCCEED ON THE MERITS OF ITS CLAIMS</u>

### A. <u>Roadrunner Has Shown It Is Likely To Succeed On The Merits Of Roadrunner's Tortious Interference With Contract Claim</u>

#### 1. <u>The SPA Is Valid And Enforceable Under Delaware Law</u>

TGS declines to substantively address the validity and enforceability of the SPA under Delaware law, likely because it cannot, in good faith, concoct a reasonable argument to that effect. *See* TGS Opp.

at 15-16.  Accordingly, Roadrunner stands on the arguments in its Motion in support of the position that the SPA indeed is valid and enforceable under Delaware law.  *See* Motion for PI at 12-13

TGS instead hitches its hopes to the equally ill-fated argument that choice of law rules dictate the application of California law here, despite Roadrunner and Cox's agreement that the "provisions of th[e] [SPA] and the documents delivered pursuant [t]hereto shall be governed by and construed in accordance with the laws of the state of Delaware…."  *See* SPA, § 9.6.  To the contrary, a contractual choice of law provision controls unless the chosen state's law has no substantial relationship and no reasonable basis for application, or its application would violate a fundamental policy of a state that has a materially great interest, and whose law would apply without the presence of the choice of law provision.  *International Business Machines Corporation v. Bajorek*, 191 F.3d 1033, 1037-38 (9th Cir. 1999).

Here, the parties to the SPA bargained for and chose Delaware law, and further, there is no conflict between California and Delaware law because California expressly recognizes the enforceability of non-competition agreements in the context of the sale of a business.  Cal. Bus. & Prof. Code § 16601.

None of the authority TGS cites supports its position.  First, TGS cites *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568, for a broad pronouncement ("The law of the state in which an action is pending controls the determination of the validity of a restrictive covenant[,]" TGS Opp. at 15) that the Supreme Court neither made nor intended to make.  In fact, the section of the opinion TGS cites does not apply here, as it addresses how a court should handle a motion to transfer filed by a party to an agreement with a forum-selection clause that the plaintiff did not follow in filing the case.  *Id.* at 581-83.  Notably, in finding the district court should transfer the matter, the Court stated that "[when parties have contracted in advance to litigate disputes in a particular forum courts should not unnecessarily disrupt the parties' settled expectations.  … *In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain*."  *Id.* at 583 (emphasis added).

Further, although TGS accurately cites *Stryker Sales Corp. v. Zimmer Biomet, Inc.*, 231 F. Supp. 3d 606 for its position on choice-of-law provisions in contravention of California's public policy against non-competition clauses (*see* TGS Opp. at 15), TGS fails to acknowledge the key distinction rendering *Stryker* inapplicable.  *Stryker* compared Michigan's law on non-competition agreement enforceability to

California Business and Professions Code section *16600—not* the 16601 sale of goodwill exception that applies to the instant facts. Accordingly, *Stryker* does not compel the application of California law here.

*Kan Di Ki, LLC v. Suer*, 2015 Del. Ch. LEXIS 191 (Ch. July 22, 2015), is instructive. There, the defendant executed two contracts with plaintiff, each containing "a provision in which the parties agreed to be bound by Delaware law." *Id*. at \*60; *see also Sensus USA, Inc. v. Franklin*, 2016 WL 1466488 (D. Del. Apr. 14, 2016) (reasonable to bar former employee from area in which former employer conducts business). Defendant, like TGS, argued adherence to the "contractual choice-of-law provisions would undermine California public policy and run afoul of interstate comity" because plaintiff sought "to enforce non-competition provisions, which are disfavored under California law[.]" *Id*. at \*62. The court rejected defendant's argument, however, and applied Delaware law, noting **"California law generally does enforce non-competition agreements that were executed in connection with the sale of the goodwill of a business."** *Id*. (citing Cal. Bus. & Prof. Code § 16601).

Thus, the SPA must be governed by and construed in accordance with the laws of Delaware and under Delaware law the SPA is valid and enforceable.

**2.**     **Even If California Law Were Applied In This Case, Roadrunner Has Shown That The SPA Is Valid And Enforceable Under California Law**

The SPA Non-Compete provisions are valid and enforceable under California law because Cox and Roadrunner agreed to the terms in connection with Roadrunner's purchase of the Central Cal and Double C business from Cox. Cal. Bus. & Prof. Code § 16601; *Alliant Ins. Svcs., Inc. v. Gaddy*, 159 Cal.App.4th 1292, 1300-01 (2008).

Indeed, the reason for Section 16601 is precisely "to prevent the seller [Cox] from depriving the buyer [Roadrunner] of the full value of its acquisition, including the sold company's goodwill. *Alliant*, 159 Cal.App.4th at 1301.

In addition, a "covenant for an employee not to solicit the employer's clients upon termination of the employment may be valid if necessary to protect the employer's trade secrets." *Alliant*, 159 Cal.App.4th at 1306. For example, in *Alliant,* the California appellate court upheld a non-solicitation covenant both to protect the goodwill that the plaintiff purchased, as well as the trade secrets and

confidential information that the defendant acquired as a result of his association with the sold business both before and after the purchase.

Here, there are two categories of non-compete provisions at issue in section 7.4 of the SPA: (1.) the non-disclosure provision at SPA, § 7.4(a)(iii) (the "Non-Disclosure provision"), and (2.) the non-solicitation and non-compete provisions at SPA, §§ 7.4(a)(i)-(ii) (the "Non-Compete provisions"). Both are valid and enforceable because they protect Roadrunner/Central Cal's acquired goodwill and confidential and trade secret information.

### a. *TGS does not dispute that the SPA Non-Disclosure provision is valid and enforceable*

TGS does not dispute that the Non-Disclosure provision at SPA, § 7.4(a)(iii) is valid and enforceable. *See generally* TGS Opp. TGS's concession here is critical, because TGS also does not dispute that TGS acquired Roadrunner's confidential and trade secret information from Cox beginning as early as June 1, the day after Cox left Roadrunner—and thus, there is no question that Roadrunner is likely to succeed on the merits of its claim that TGS tortiously interfered with Cox's obligations under the Non-Disclosure provision. *See* Section II.A, *supra.*

### b. *The SPA Non-Compete provisions' five year expiration date is reasonable, valid and enforceable*

With respect to the SPA Non-Compete provisions, California courts have repeatedly and consistently found that five-year limitations on restrictive agreements are valid and reasonable. *See Alliant*, 159 Cal. App. 4th 1292, 1296, 1301-07, 1312 (2008) (finding covenants imposing restrictions for five-year period valid; affirming order granting preliminary injunction); *Vacco Industries, Inc. v. Van Den Berg*, 5 Cal. App. 4th 34, 47-49 (1992) (finding a noncompetition agreement with five-year covenant not to compete "not prohibited by Business and Professions Code section 16600 and … fully enforceable in spite of [plaintiff's] prior wrongful termination of [defendant]"); *Monogram Indus., Inc. v. Sar Indus., Inc.*, 64 Cal. App. 3d 692 696 (1976) (affirming preliminary injunction as to agreement with five-year term).

TGS does not provide any explanation why the five-year limitation on the SPA Non-Compete provisions in this case should—contrary to all of the authority referenced above and in Roadrunner's

Motion for PI—be held unreasonable. Nor does TGS explain why it could not just wait six months, until the five-year period expired, before TGS hired Cox. In fact, the only authority TGS cited does not comment on the reasonability of the temporal limitation, and does not pertain to Section 16601. *Cf. In re Marriage of Freaux and Mermin*, 223 Cal.App.4th 1242, 1255 (2014).

Accordingly, Roadrunner has demonstrated that the five year limitation on the SPA Non-Compete provisions will likely be upheld as reasonable and valid.

### c. *The SPA Non-Compete provisions' geographic scope is reasonable, valid and enforceable because Central Cal engages in international sales*

The SPA's Non-Compete provisions' geographic scope is reasonable, valid and enforceable because Roadrunner, Central Cal, and TGS all engage in "international trucking"—i.e., they sell and market services to international and domestic customers across the United States. Kirkland Decl., ¶ 3, Exh. 1; TGS Vol. 3 at 393:22-394:2; *Monogram Industries*, 64 Cal. App. 3d at 702; *Alliant*, 159 Cal. App. 4th at 1302.

Under Section 16601, "the area where a business is 'carried on' is not limited to the locations of its buildings, plants and warehouses, nor the area in which it actually made sales[, but rather t]he territorial limits are coextensive with the entire area in which the parties conducted all phases of their business including production, promotional and marketing activities as well as sales." *Monogram Industries*, 64 Cal. App. 3d at 702.

Thus, it simply does not matter whether or not TGS and Cox's allegations are true that the physical location of Central Cal's facilities and trucks are limited to California, Nevada, and Oregon— what matters is the entire scope in which Central Cal conducted "all phases of their business including production, promotional and marketing activities as well as sales." *Cf.* TGS Opp. at 16.

And here, TGS and Cox concede that TGS competed with Central Cal in international trucking when the SPA was signed; Central Cal marketed its ability to serve domestic and international intermodal shippers at that time (*see* TGS Vol. 3 at 393:22-394:2); and Central Cal's customers included business entities with national and even global operations, including Expeditors International, National Raisin, and Hub Group, just to name a few. Motion for PI at 15.

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Accordingly, the SPA Non-Compete provisions appropriately extend throughout the United States.

### 3. TGS Concedes It Knew Of the SPA And The Non-Compete And Non-Disclosure Provisions Before TGS Conspired With Cox To Perform Acts Intended To Breach Those Provisions

TGS admits it knew about the SPA and the Non-Compete and Non-Disclosure provisions as early as June 1st, the day after Cox left Roadrunner. Motion for PI at 15; TGS Vol. 2 at 189:19-191:8; *see also* TGS Opp. TGS's knowledge of the SPA, and subsequent "business decision" to (1) acquire detailed, specific confidential and trade secret information from Cox regarding Roadrunner's customers, employees, and drivers, (2) use Cox's relationships to solicit Roadrunners customers, employees, and drivers, and (3) ultimately hire Cox is sufficient to establish the knowledge and "intentional acts" elements of tortious interference with contract. *Quelimane Co. v. Stewart Title Guaranty Co.,* 19 Cal.4th 26, 55 (1998) ("[w]rongfulness independent of the inducement to breach the contract is not an element of the tort of intentional interference with *existing* contractual relations") (emphasis in original); Motion for PI at 15; TGS Vol. 2 at 189:19-191:8; Lane Decl., Exhs. E at TGS 241, F.

TGS's argument that Roadrunner must also show that TGS subjectively believed that the SPA was valid and enforceable, or that TGS was malicious—is contrary to and completely unsupported by legal authority and should be rejected. Indeed, TGS's argument is only made possible through a gross misstatement of legal authority. TGS mist-cites *Family Home & Fin. Ctr v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822 (9th Cir. 2008) in setting out the tortious interference with contract standard and states that the second prong requires Roadrunner "to present evidence that … TGS knew there was a valid and enforceable SPA before it hired Mr. Cox[.]" TGS Opp. at 14. *Family Home*, by contrast, states that "[u]nder California law, a claim for intentional interference with contract requires … (2) defendant's knowledge of the contract[.]" *Family Home & Fin. Ctr.*, 525 F.3d at 825 (citing *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal 3d 1118 (1990)).

Lastly, TGS's alleged subjective belief as to the SPA's validity is contradicted by the fact that, before TGS hired Cox, TGS knew Cox had acknowledged the validity and enforceability of the Non-Compete at the time Cox signed the SPA, and further, that the SPA included—as Exhibit A—an opinion letter from Cox's attorney at the time of the transaction, stating that the SPA is a "legal, valid and

binding obligation[]" of Roadrunner and Cox that is "enforceable against [them]."  SPA at §7.4(c) and Exhibit A.

### 4. TGS's Claim That TGS's Tortious Interference Has Not Caused Roadrunner Harm Is Meritless

TGS does not dispute that Roadrunner has been grievously harmed after losing one-third of its employees, over one third of its drivers, and customers representing a substantial portion of Roadrunner's yearly revenue to TGS.  *See* Motion for PI at 15-17; *see also* Section II, *supra*.

Instead, TGS has the temerity to claim that TGS was not responsible for any of Roadrunner's losses because all of Roadrunner's lost employees, drivers, and customers would have left Roadrunner regardless of what TGS did or did not do.  TGS Opp. at 15-16.

As the Court stated in *Hough Associates*, "that self-serving argument rankles."  *Hough Associates, Inc. v. Hill et al.*, 2007 WL 148751 at *17 (Del. Ch. Jan. 17, 2007); *see also Alliant*, 159 Cal. App. 4th at 1309.  If it was so clear that TGS was capable of providing better employment and drayage opportunities than Roadrunner, even if Cox's SPA Non-Competition and Non-Disclosure provisions were honored, then TGS would have acted differently:  TGS would have stayed away from Cox once TGS knew Cox had a non-compete because it would have been unimportant to hire him; TGS would not have worked in secret with Cox for more than a month, repeatedly mining Cox for customer and employee contact, rate and salary information, and using Cox to make introductions to Roadrunner/Central Cal's employees, drivers, and customers; and TGS certainly would have waited a mere six months for the SPA Non-Competition provisions to expire before hiring Cox and inviting this litigation.  As the Court in *Hough* asked, "[w]hy do all of this if it really did not matter?"  *Hough Associates, Inc.*, 2007 WL 148751 at *17.

The California appellate court rejected a similar argument in *Alliant*, where the defendant alleged that all of the plaintiffs' solicited clients were friends that contacted the defendant first, and that the defendant "told them to stay with plaintiffs." *Alliant*, 159 Cal. App. 4th at 1309.  Here, neither TGS nor Cox even so much pretend that Cox told Roadrunner/Central Cal's to stay with Roadrunner/Central Cal—rather, TGS and Cox freely admit that Cox recommended TGS to each one of them.  *See generally* TGS Opp. at 5.

In fact, TGS and Cox's claim that Cox did not provide any assistance whatsoever in convincing one-third of Roadrunner/Central Cal's employees and at least two of Roadrunner's customers to leave Roadrunner and come to TGS instead loses all credibility given that (among other things):

(1.) Peter Schneider testified that "I don't know anybody at Roadrunner besides Jeff"; and

(2.) Susan Vizcarro from Minturn Nut testified that Minturn had <u>never</u> done business with TGS prior to Cox leaving Roadrunner and recommending TGS to Minturn.

TGS Vol. 1 at 88:25-89:1; Newland Decl., Exh. A (Vizcarro Rough) at 46:3-5.

Accordingly, TGS's argument that Roadrunner "has not suffered any damages as a result of any breach or disruption of the SPA by TGS" should be rejected.

**B.**  **<u>Roadrunner Has Shown It Is Likely To Succeed On The Merits Of Roadrunner's Tortious Interference With Prospective Economic Relations Claim</u>**

Roadrunner's Motion for PI established that Roadrunner is likely to succeed on the merits of Roadrunner's claim for tortious interference with prospective economic relations, because TGS's and Cox's own admissions and communications establish that TGS misappropriated Roadrunner's confidential and proprietary customer information to pilfer Roadrunner's customers.  Motion for PI at 18; *see, e.g., Reeves v. Hanlon,* 33 Cal.4th 1140, 1152 (2004).

TGS's only argument in opposition is the same self-serving argument that Roadrunner's customers would have left Roadrunner without TGS's interference, and should be rejected for the same reasons as discussed above, namely, if the TGS's acquisition and use of Roadrunner's confidential information to secretly solicit Roadrunner/Central Cal's customers did not make any difference whatsoever in TGS taking those customers away from Roadrunner, then TGS would not have asked for and used the information again and again, and again.

**C.**  **<u>Roadrunner Has Shown It Is Likely To Succeed On The Merits Of Roadrunner's Conversion Claim</u>**

Roadrunner has demonstrated that its claim for TGS's wrongful conversion of Roadrunner's intangible interest in Roadrunner/Central Cal's confidential and trade secret information is likely to succeed.  Motion for PI at 18-19; *Baiul v. NBC Sports,* 2016 U.S. Dist. LEXIS 13021, at *4 (C.D. Cal.

Feb. 2, 2016); *United States Legal Support, Inc. v. Hofioni*, 2013 U.S. Dist. LEXIS 179282, at 35-36 (E.D. Cal. Dec. 19, 2013).

TGS's argument that California does not recognize a property interest in "customer lists, employee and customer contact information, driver pay and financial arrangements, customer pricing information, vendor contracts, and rate agreements" is incorrect and completely unsupported by California law. Indeed, California has long protected such confidential and proprietary information.[7] *See, e.g., Pyro Spectaculars North, Inc. v. Souza*, 861 F.Supp.2d 1079, 1087 (E.D. Cal. 2012)

## IV.  ROADRUNNER DOES NOT SEEK A MANDATORY INJUNCTION

Roadrunner has not and does not seek, as TGS argues, a mandatory injunction.

To the contrary, Roadrunner only seeks to prevent TGS from engaging in any communications with Roadrunner's customers, employees, or affiliated drivers—which, by definition, does not include customers, employees or drivers that have already left. *See* Proposed Order re Motion for PI.

## V.  THE PUBLIC INTEREST FAVORS A PRELIMINARY INJUNCTION

As discussed in Roadrunner's Motion for PI, no critical public interest will be frustrated by preliminary injunctive relief here, which will only serve to protect Roadrunner and preserve the status quo contemplated in the SPA. Similarly, the public has a fundamental interest in ensuring such contracts are enforced. Motion for PI at 24.

TGS's argument that the Court should consider "employee mobility," as well, is meritless, because in reality, Cox is a seller of a business under Section 16601, not a mere "employee." Indeed, Roadrunner is simply requesting that TGS be precluded from further interfering with the restrictions Cox agreed to when Cox sold his Central Cal business to Roadrunner, and be held to account for the harm it has already caused. Accordingly, any California authority relating to employee mobility and Section 16600 is not applicable in any way to this action or to Roadrunner's requested relief. Further, Section 16600 does not insulate TGS or Cox from misappropriating Roadrunner's confidential information.

---

[7] TGS's purportedly supporting authority, *Low v. LinkedIn Corp.*, is inapposite. *Low*, 900 F.Supp.2d 1010 (N.D. Cal. 2012). *Low* considered a class of plaintiffs that were attempting to claim a property interest in the plaintiffs' own identifying personal information that the plaintiffs provided to a third party—and does not contemplate confidential customer and employee lists and information such as that at issue here. *Id.* at 1030.

## VI.   CONCLUSION

For the foregoing reasons and those set forth in Roadrunner's Motion for PI, Roadrunner respectfully requests that this Court issue a preliminary injunction in the form of the proposed order submitted therewith.

Dated:  October 31, 2017

GREENBERG TRAURIG, LLP

By: /s/ Kurt A. Kappes
    Kurt A. Kappes
    Michael D. Lane
    Sean A. Newland
    Attorneys for Plaintiffs, ROADRUNNER
    INTERMODAL SERVICES, LLC