UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROADRUNNER INTERMODAL SERVICES, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>T.G.S. TRANSPORTATION, INC., a California corporation, and DOES 1-10,<br><br>Defendants. | No.: 1:17-cv-01207-DAD-BAM, 1:17-cv-01056-DAD-BAM (consolidated)<br><br><u>ORDER DENYING PLAINTIFF AND COUNTER-DEFENDANT JEFFREY COX'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u><br><br>(Doc. No. 113) |
| JEFFREY COX,<br><br>Plaintiff,<br><br>v.<br><br>ROADRUNNER INTERMODAL SERVICES, LLC, a Delaware limited liability company, CENTRAL CAL TRANSPORTATION, LLC, a Delaware limited liability company, and DOES 1 through 50,<br><br>Defendants. | |

1

| | |
|---|---|
| 1 | |
| 2 | ROADRUNNER INTERMODAL SERVICES, LLC, a Delaware limited liability company, |
| 3 | |
| 4 | Counter-Plaintiff and Defendant, |
| 5 | v. |
| 6 | JEFFREY COX, |
| 7 | Counter-Defendant and Plaintiff. |
| 8 | |

The matter is before the court on plaintiff and counter-defendant Jeffrey Cox's ("Cox") motion for partial summary judgment. (Doc. No. 113-1.) Cox moves for summary judgment in his favor on his ninth cause of action, which seeks a declaratory judgment regarding the legality of the non-competition provisions of the parties' stock purchase agreement ("SPA"). (*Id.*) A hearing on this motion was held on September 18, 2018. Attorney James Nelson appeared telephonically on behalf of defendants Roadrunner Intermodal Services, LLC ("Roadrunner") and Central Cal Transportation ("Central Cal"). Attorney Howard Sagaser appeared on behalf of Cox. Having reviewed the parties' briefing and heard oral argument, and for the reasons that follow, Cox's motion for partial summary judgment will be denied.

## BACKGROUND

The facts relevant for resolution of the pending motion for summary judgment are largely undisputed and were discussed in the court's prior order denying Roadrunner's motion for a preliminary injunction. (*See* Doc. No. 90 at 2–4.) In summary, Roadrunner, Central Cal, and Cox, among other parties, entered into the SPA on November 2, 2012, in which Roadrunner purchased all of the stock and assets of Central Cal and Double C Transportation, another trucking company, for approximately $3.8 million.[1] (*Id.*) The SPA also included an earn-out

---

[1] Roadrunner is an industry leader in providing regional and national drayage services throughout the United States. (Doc. No. 22 at 3.) Central Cal is a smaller, regional trucking company that operates trucking routes within California, Nevada, and Oregon for clients throughout the country. (*See* Doc. No. 98 at ¶¶ 5–6.)

2

payment to Cox if certain parameters were met. (*Id.* at 3.)

The SPA included several provisions that are at issue in this action. (*See* Doc. No. 113-2 at 5–8 ("SPA").) First, the non-competition provisions of the agreement state that Cox is not permitted to acquire or work for or with any entity that engages in any facet of Central Cal's businesses, or that competes with Roadrunner's business. (SPA at § 7.4 (a)(i)(B).) Cox is also not permitted to use his special knowledge of Central Cal's business to compete with Roadrunner in any aspect of Central Cal's business. (*Id.* at § 7.4 (a)(i)(C).) The non-solicitation provision of the agreement prevents Cox from contacting Central Cal customers or inducing Central Cal employees from leaving the company. (*Id.* at § 7.4(a)(ii)(B)-(D).) The non-disclosure provision prohibits Cox from disclosing Central Cal's confidential or trade secret information. (*Id.* at § 7.4(a)(iii).) All of these provisions limit Cox's conduct from the date of the closing until December 31, 2017 throughout the entire United States. (*See id.* at § 7.4(a)(i).)

The SPA includes a savings provision that permits substitution of a different duration, scope, or area, if a court finds that any of the restrictions imposed by the agreement are unreasonable. (*Id.* at § 7.4(c).) Additionally, the SPA acknowledged that the protective covenants are "necessary to protect the legitimate, protectable interests of [Central Cal] . . . [and] the goodwill of the business of [Central Cal] and [Roadrunner] . . . ." (*Id.*) Attached to the SPA was a legal opinion from Cox's own counsel, stating that the SPA was "legal, valid and binding" and enforceable against the sellers, including Cox. (Doc. No. 121-1 at 55.)

Cox began working for Central Cal after it was sold to Roadrunner. While there, in February 17, 2017, Cox and another individual initiated a suit against Roadrunner over issues related to the earn-out payment, which was not resolved through a mediation. (*See* Doc. No. 113-1 at 5–6.) Central Cal terminated Cox on May 31, 2017. (*Id.* at 6.) On July 25, 2017, Cox filed a complaint in Fresno County Superior Court asserting causes of action related to his allegedly wrongful termination. (*Id.*) Cox accepted employment with T.G.S. Transportation, Inc. ("T.G.S.") beginning in July 2017. (Doc. No. 90 at 3.)

Previously in this litigation, the undersigned denied Roadrunner's motion for a preliminary injunction, granted T.G.S.'s motion to consolidate this case with *Cox v. Roadrunner*

*Intermodal Services, LLC, et al.,* No. 1:17-cv-01207-DAD-BAM (E.D. Cal.), and granted Cox's motion to intervene. (Doc. No. 90.) This action, which was filed on March 5, 2018, now proceeds on Cox's first amended complaint ("FAC") against Roadrunner, Central Cal, and unidentified Doe defendants. (Doc. No. 98.) On May 10, 2018, both Roadrunner and Central Cal filed answers to Cox's FAC, and Roadrunner also filed a counterclaim. (Doc. Nos. 107, 108.) On July 18, 2018, Cox filed a motion for partial summary judgment as to his claims against Roadrunner. (Doc. No. 113.) On September 4, 2018, Roadrunner filed an opposition to that motion. (Doc. No. 121.) On September 11, 2018, Cox filed a reply in support of his motion for partial summary judgment. (Doc. No. 124.)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, as plaintiff does here, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party, *see Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See*

*Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## REQUEST FOR JUDICIAL NOTICE

Cox requests judicial notice of four documents that appear on the public docket in this case: (1) Roadrunner's complaint against T.G.S., filed August 7, 2017 (Doc. No. 1); (2) Cox's opposition to the motion for preliminary injunction, filed October 24, 2017 (Doc. No. 50); (3) this court's order issued February 6, 2018 (Doc. No. 90); (4) Cox's FAC, filed March 5, 2018 (Doc. No. 98). (Doc. No. 113-4 at 2.) Additionally, Cox requests judicial notice of the indictment returned in *United States v. Naggs, et al.*, 2:18-cr-00130-LA-NJ (E.D. Wis.) on June 12, 2018. (*Id.* at 2.)

Pursuant to the Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records are properly the subject of judicial notice because the contents of such documents contain facts that are not subject to reasonable dispute, and the facts therein "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.*; *see also Intri-Plex Techs. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

Here, the first four documents for which Cox requests judicial notice are all documents that have been filed in this case. "It is well established that a court may take judicial notice of its own records." *United States v. Author Servs., Inc.*, 804 F.2d 1520, 1523 (9th Cir. 1986), *amended*, 811 F.2d 1264 (9th Cir. 1987), *overruled on other grounds by United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997) (citing *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 157 (1969)). Though the court will grant Cox's unopposed request for judicial notice, the parties are, however, "advised for future reference that [they] need not seek judicial notice of documents filed

in the same case." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (citing *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 960 (N.D. Cal. 2014)).

However, the court declines to take judicial notice of the indictment brought against Bret Naggs and Mark Wogsland in the Eastern District of Wisconsin, without prejudice to its renewal. Roadrunner argues that judicial notice of this document should be denied because it is irrelevant to Cox's motion for partial summary judgment. (Doc. No. 121-3 at 2.) The court agrees. The indictment is not discussed in either Cox's motion or reply, and its relevance to the pending motion is certainly not apparent to the court. *See Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1410 n.2 (9th Cir. 1990) (declining to take judicial notice of a document that is irrelevant to deciding the matter at issue).[2]

**DISCUSSION**

**A.     Choice of Law**

As noted above, Cox seeks summary judgment on his ninth cause of action which seeks declaratory judgment regarding the legality of the non-competition provisions of the SPA. (Doc. No. 113-1.) At the outset, the parties dispute whether this court should apply the Delaware choice of law provision contained in the SPA. Cox argues that the SPA should be evaluated under California law, despite its choice of law provision stating that Delaware law will apply and, alternatively, argues that the SPA is unenforceable under Delaware law. (Doc. No. 113-1 at 7–13.) Roadrunner argues that the parties' Delaware choice of law provision is valid and should apply, but that the SPA is enforceable even under California law. (Doc. No. 121 at 9–15.)

Ordinarily, a federal court exercising diversity jurisdiction must apply the substantive law of the state in which the court sits, except in matters governed by the U.S. Constitution or federal statutes. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, this court must apply California law in determining whether Delaware's or California's doctrine on non-competition agreements is appropriately applied here. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S.

---

[2] If the indictment were relevant, the court could take judicial notice of it without taking judicial notice of the truth of the factual allegations contained therein. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (although the court can take judicial notice of undisputed matters of public record, the court cannot take judicial notice of disputed facts stated in public records).

7

487, 496 (1941) (finding that "[t]he conflict of laws rules to be applied by the federal court in Delaware [sitting in diversity] must conform to those prevailing in Delaware's state courts."); *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) ("When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law.") (citing *Klaxon*, 313 U.S. at 496); *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir. 1993) ("As a federal court exercising its diversity jurisdiction, the Illinois district court would have applied the substantive law of Illinois, including Illinois' choice-of-law rules and its statutes of limitation.").

When a contract includes a choice of law provision, California courts—adopting the principles set forth in § 187(2) of the Restatement (Second) of Conflicts of Laws—apply the substantive law designated by the contract unless (a) the designated state has no substantial relationship to the parties or the transaction, or (b) application of the law of the designated state would be contrary to a fundamental policy of the forum state. *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 896 (1998) (citing *S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981)); *see also Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464–66, 467 n.5 (1992) (reaffirming this approach). When application of a choice of law provision would result in the contravention of California's public policy, the contract provision can be ignored to the extent necessary to preserve public policy. Restatement (Second) of Conflicts of Laws § 187(2)(b); s*ee also S. A. Empresa*, 641 F.2d at 749–50 (citing *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal. App. 3d 668, 673 (1971)); *Ruiz v. Affinity Logistics Corporation*, 667 F.3d 1318, 1323 (9th Cir. 2012).

Here, Cox argues that the court cannot apply Delaware law as designated by the choice of law provision of the agreement because the parties have no relationship to Delaware and applying a Delaware choice of law provision in this instance would enforce a non-competition provision that contravenes California public policy. (Doc. No. 113-1 at 8–9.) Roadrunner counters that the SPA falls under California Business and Professions Code § 16601, which is an exception to California's general prohibition against non-competition agreements. (Doc. No. 121 at 10.)

8

In this case Delaware has a substantial relationship to the contract parties and transactions at issue, because Central Cal and Roadrunner are both Delaware limited liability companies. *See Hatfield v. Halifax PLC*, 564 F.3d 1177, 1183 (9th Cir. 2009) ("The fact that Halifax is a United Kingdom company is sufficient to establish a substantial relationship between England and the parties, such that there is a reasonable basis for applying the English choice of law provision."); *Am. Boat Racing Ass'n v. Richards*, No. 2:14-CV-1909-KJM-KJN, 2015 WL 1320956, at *4 (E.D. Cal. Mar. 24, 2015), *report and recommendation adopted*, 2015 WL 13158314 (E.D. Cal. June 30, 2015) (finding a reasonable basis for a Washington choice of law provision because it was plaintiff's state of incorporation and principal place of business).

Therefore, the court must evaluate whether adhering to the Delaware choice of law provision in the SPA would be contrary to a fundamental policy of California. Moreover, if it is determined that the application of a choice of law provision is contrary to the fundamental policy of the forum state, in this instance California,

> a court can decline to enforce the parties' contractual choice-of-law provision only if the interests of the forum state are "materially greater" than those of the chosen state, *and* the forum state's interests would be more seriously impaired by enforcement of the parties' contractual choice-of-law provision than would the interests of the chosen state by application of the law of the forum state.

*Application Grp.*, 61 Cal. App. 4th at 898–99 (emphasis in original).

1. <u>Whether Delaware Law Is Contrary to a Fundamental Policy in California</u>

At least implicitly, the parties appear to acknowledge that there is a conflict between Delaware and California law regarding the enforceability of the non-competition clause of the SPA. Under Delaware law, the validity and enforceability of a non-competition agreement turns on its reasonableness. *See, e.g., Cont'l Warranty, Inc. v. Warner*, 108 F. Supp. 3d 256, 259 n.2 (D. Del. 2015) ("To be enforceable, a covenant not to compete must (1) meet general contract law requirements, (2) be reasonable in scope and duration, both geographically and temporally, (3) advance a legitimate economic interest of the party enforcing the covenant, and (4) survive a balance of the equities.") (citing *All Pro Maids, Inc. v. Layton*, 2004 WL 1878784, at *5 (Del. Ch. Aug. 9, 2004) *aff'd*, 880 A.2d 1047 (Del. 2005)); *Kan-Di-Ki, LLC v. Suer*, No. CV 7937-VCP,

2015 WL 4503210, at *19 (Del. Ch. July 22, 2015); *Tristate Courier & Carriage, Inc. v. Berryman*, 2004 WL 835886, at *10 (Del. Ch. Apr. 15, 2004). In contrast, California law generally prohibits contractual provisions "by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind." Cal. Bus. & Prof. Code § 16600. This California rule is intended to protect an individual's right to engage in employment and businesses of their choosing. *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008) (citing *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 859 (1994) and *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1520 (1997)); *see also Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal. 4th 697, 706 (2002) ("California has a strong interest in protecting its employees from noncompetition agreements under section 16600.").

Moreover, there has been a long developing trend among California courts of finding that § 16600 represents a fundamental public policy interest in California that overrides contractual choice of law provisions, at least with respect to such restrictive covenants. *See Stryker Sales Corp. v. Zimmer Biomet*, Inc., 231 F. Supp. 3d 606, 621 (E.D. Cal. 2017) (concluding that Michigan law is "contrary to a fundamental policy of California, with respect to . . . the non-solicitation and non-competition provisions . . . , to the extent such provisions restrain an individual from pursuing employment or businesses of his choosing."); *Arthur J. Gallagher & Co. v. Lang*, No. C 14-0909 CW, 2014 WL 2195062, at *3 (N.D. Cal. May 23, 2014) ("Applying Illinois law to the parties' contract would contravene California's fundamental public policy against the enforcement of non-competition and non-solicitation agreements."); *Latona v. Aetna U.S. Healthcare Inc.*, 82 F. Supp. 2d 1089, 1093 (C.D. Cal. 1999) ("[P]rotection against restraint of employment qualifies as a strong public policy in California."); *Scott v. Snelling & Snelling, Inc.*, 732 F. Supp. 1034, 1041 (N.D. Cal. 1990) (applying California law to the question of enforceability of covenants restricting competition in franchise agreements despite a choice of law provision electing Pennsylvania law as controlling interpretation of the agreements); *Application Grp.,* 61 Cal. App. 4th at 900 ("[S]ection 16600 reflects a "strong public policy" of the State of California."); *see also Gatsinaris v. ART Corp. Sols. Inc.*, No. SA CV 15-0741-DOC, 2015 WL 4208595, at *12 (C.D. Cal. July 10, 2015) ("California public policy dictates that §

16600 applies" to a contract despite the presence of a Colorado choice-of-law provision); *Frame*, 20 Cal. App. 3d at 673 ("We conclude from the California Supreme Court's treatment of the problem that section 16600 does represent a 'strong public policy' of this state. Therefore, the agreement for application of New York law must not be allowed to defeat that policy."). In light of these decisions reflecting this trend, this court concludes that application of Delaware law as called for in the choice of law provision of the SPA would be contrary to a fundamental policy of California.

2. <u>Whether California's Interests Are Materially Greater Than Those of Delaware and Would Be More Seriously Impaired If Its Laws Were Not Applied</u>

The court next turns to the relative interests of the two states to determine whether California's interests are materially greater than those of Delaware, and whether California would be more seriously impaired if its laws were not applied here. It does not appear that Delaware has any connection to this action aside from being the state where Roadrunner and Central Cal were incorporated. Further, Cox is not a resident of Delaware, nor did Central Cal conduct any business there. Though Roadrunner, as a national company, may potentially conduct business in Delaware, that consideration has not been discussed by the parties as a reason to apply Delaware law.

By contrast, California's interests appear materially greater than that of Delaware's in the context of this case. In its complaint Roadrunner alleges that nearly all the events giving rise to both Roadrunner's and Cox's causes of action occurred in California. Moreover, Roadrunner conducts business in California and acquired Central Cal, which primarily operates trucking routes in California. (*See* Doc. No. 22 at ¶¶ 3–4; 9–10.) This suit centers upon Cox's employment in California, first at Central Cal and then at another California trucking corporation, T.G.S. At all times relevant to this action, Cox has been a resident of California. In light of these facts, California would have a materially greater interest in ensuring that California employees are not unlawfully restricted from freely pursuing their professions. *See Application Grp.*, 61 Cal. App. 4th at 900 ("The interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor

his new employer has committed any illegal act accompanying the employment change.") (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 255 (1968)); *see also id.* at 901 (noting that § 16600 represents "a statement of California public policy which ensures that California employers will be able to compete effectively for the most talented, skilled employees in their industries, wherever they may reside.").

The court concludes that in this case, California's interests are materially greater than those of Delaware and that California would be more seriously impaired if its laws were not applied. Accordingly, the court will disregard the Delaware choice of law provision in analyzing the enforceability of the non-competition provisions of the SPA and will instead apply California law.

**B.     California Law**

California law generally prohibits contractual provisions "by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind." Cal. Bus. & Prof. Code § 16600. This law defaults to protecting an individual's right to engage in the employment and businesses of his or her choosing. *Edwards*, 44 Cal. 4th at 946 (citing *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 859 (1994) and *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1520 (1997)); *see also Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal. 4th 697, 706 (2002) ("California has a strong interest in protecting its employees from noncompetition agreements under section 16600.").

Roadrunner argues that the SPA is enforceable under an exception to California's rule against non-competition agreements because the sale of the Central Cal included goodwill. (Doc. No. 121 at 7.) Section 16601 of the California Business and Professions Code provides:

> Any person who sells the goodwill of a business, or any owner of a business entity selling or otherwise disposing of all of his or her ownership interest in the business entity . . . may agree with the buyer to refrain from carrying on a similar business within a specified geographic area in which the business so sold, or that of the business entity, division, or subsidiary has been carried on, so long as the buyer, or any person deriving title to the goodwill or ownership interest from the buyer, carries on a like business therein.

Courts have found § 16601 to be a narrow exception to California's rule against non-competition

agreements which reflects the notion that it is unfair for a seller to engage in competition that would decrease the value of the asset sold, if sale of the business included the goodwill. *Hill Med. Corp. v. Wycoff*, 86 Cal. App. 4th 895, 902 (2001); *see also CB Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009) (broad covenants not to compete are invalid unless narrow exceptions apply, such as when the goodwill of a business is sold); *Edwards*, 44 Cal. 4th at 955 ("Noncompetition agreements are invalid under section 16600 in California, even if narrowly drawn, unless they fall within the applicable statutory exceptions of sections 16601, 16602, or 16602.5."); *Monogram Indus., Inc. v. Sar Indus., Inc.*, 64 Cal. App. 3d 692, 698 (1976) ("In the case of the sale of the goodwill of a business it is 'unfair' for the seller to engage in competition which diminishes the value of the asset he sold.").

Roadrunner points to the plain language of the SPA, which indicates that the sale of Central Cal included its goodwill. (*See* SPA at § 7.4(c), stating that "the Protective Covenants are being entered into by [Cox] in connection with the sale by such Seller of the goodwill of the business of the Entities pursuant to this Agreement.") Cox counters this argument by contending that "[t]here is a question whether Cox ever sold goodwill to Roadrunner . . ." but fails to direct the court to any evidence supporting this contention. (Doc. No. 113-1 at 9.) At the hearing on the pending motion, Cox's counsel argued that Roadrunner "paid 100,000 [dollars] for all the assets of the corporation . . ." and concluded that because goodwill was not allocated a specific amount of that sale price, it was not included in the sale. (Doc. No. 129 at 12:12–19.)

Courts are to evaluate "all aspects of the sales arrangement" in determining if the "parties had intended goodwill to be a part of the consideration in the sale of stock . . . ." *Hill Med. Corp.*, 86 Cal. App. 4th at 904. It is possible for courts to recognize a sale of goodwill in "situations in which the parties have not allocated a specific portion of the purchase price to goodwill, and yet the parties recognized that goodwill was part and parcel of the transaction involving a substantial corporate interest." *Id.* Specifically, "[w]here a covenant not to compete is executed as an adjunct of a sale of a business there is an inference that the business had a 'goodwill' and that it was transferred." *Monogram*, 64 Cal. App. 3d at 701 (citing *NewLife Scis., LLC v. Weinstock*, 197 Cal. App. 4th 676, 688 (2011)).

Here, the SPA cannot reasonably be interpreted as anything less than the sale of a substantial corporate interest of Central Cal to Roadrunner. Though it does not allocate a specific price to goodwill, the SPA clearly states that Roadrunner thereby acquired all of Central Cal and Double C's debts, outstanding shares, and cash on hand, if any, for $3,850,000. (*See* Doc. No. 121-1 at 10.) Further, the SPA's failure to allocate a specific dollar amount to the purchase price of goodwill appears to be of no significance given that the agreement does not allocate a specific dollar amount to any other asset acquired as part of the transaction. (*See* Doc. Nos. 129 at 15, 21:25.) Finally, the SPA states that it included non-competition provisions in connection with the sale of goodwill. (*See* SPA at § 7.4(c).) Because the non-competition agreement was executed as an adjunct to the sale of a substantial corporate interest, the court infers that the sale included goodwill. *See Monogram*, 64 Cal. App. 3d at 701. Therefore, the court interprets the parties' SPA as one falling within the limited statutory exception of § 16601, which permits non-competition agreements when the sale of a business includes goodwill. *See* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.").

Nonetheless, a non-competition agreement falling within the statutory exception of § 16601 is only enforceable "to the extent that it is reasonable and necessary in terms of time, activity and territory to protect the buyer's interest." *Campbell v. Bd. of Trs. of Leland Stanford Junior Univ.*, 817 F.2d 499, 502 (9th Cir. 1987) (quoting *Monogram*, 64 Cal. App. 3d at 698).

> Section 16601's exception serves an important commercial purpose by protecting the value of the business acquired by the buyer. In the case of the sale of the goodwill of a business it is 'unfair' for the seller to engage in competition which diminishes the value of the asset he sold. Thus, [t]he thrust of . . . section 16601 is to permit the purchaser of a business to protect himself or itself against competition from the seller which competition would have the effect of reducing the value of the property right that was acquired.

*Strategix, Ltd. v. Infocrossing W., Inc.*, 142 Cal. App. 4th 1068, 1072–73 (2006) (internal quotation marks and citations omitted)*; see also Alliant Ins. Servs., Inc. v. Gaddy*, 159 Cal. App. 4th 1292, 1301 (2008) (section 16601 exists to "prevent the seller from depriving the buyer of the full value of its acquisition, including the sold company's goodwill"); *Kaplan v. Nalpak Corp.*,

158 Cal. App. 2d 197, 201 (1958) ("The policy implicit in section 16601 . . . seems more nearly consistent with the common law rule under which the territorial limits for permissible operation of covenants in restraint of competition were co-extensive with the area in which the good will of the business in question had been established.").

1.  Territorial Limitations

To determine whether this non-competition provision contravenes California law, the court must therefore evaluate whether it is reasonable and necessary to protect the value of Central Cal when it was transferred to Roadrunner. The non-competition provisions of the SPA prohibit Cox from owning, being employed by, or advising a business that engages in trucking services anywhere within the United States until December 31, 2017. (*See* SPA at § 7.4(a)(i)(B).) In short, under the agreement Cox is prohibited from working within the trucking industry anywhere in the United States, except as an employee of Roadrunner or Central Cal. Roadrunner argues that Central Cal's customers spanned the entire United States,[3] and therefore, a national restriction in the non-competition provision "was and is necessary to protect the legitimate interests of Roadrunner . . . against Cox." (Doc. No. 121 at 12.) In the court's view Roadrunner's argument in this regard misses the mark.

Here, the territorial scope of the non-competition provisions of the SPA go well beyond what is necessary to protect the value of Roadrunner's acquisition, including Central Cal's goodwill. This is because Central Cal cannot accurately be characterized as "carrying on" its business nationwide simply due to the location of its customers, when Central Cal exclusively provided transportation services in California, Nevada, and Oregon. Though Cox likely had relationships with clients located throughout the United States, the evidence before the court establishes that Central Cal business was built upon its ability to operate trucking routes exclusively within three states. (*See* Doc. No. 124 at 5.) Therefore, any goodwill established by Central Cal necessarily related to its ability to provide quality services in California, Nevada, and

---

[3] Roadrunner cites to Cox's deposition, at which he testified: "We had customers in Chicago. We had customers in New Jersey. We had customers in New York. We had customers in Kansas City. I mean, everywhere." (*See* Doc. No. 121-1 at 62.)

15

Oregon. If Central Cal intended to expand its trucking routes beyond those three states, it would have to develop routes, infrastructure, and a reputation for providing quality transportation services in other locations. Therefore, preventing Cox from operating trucking routes outside of California, Nevada, and Oregon was much more restrictive than what was necessary to protect Central Cal's goodwill.

California courts do not adhere to the view that a company conducts business wherever its customers are located, regardless of whether its actual business activities take place there. *See Swenson v. File*, 3 Cal. 3d 389, 397 (1970) ("Nor do we think that defendant carried on business in Pasadena merely by performing occasional services in that city for a single client whose plant was moved from Arcadia to Pasadena after it had retained defendant."); *Alliant*, 159 Cal. App. 4th at 1303 ("[I]n using the words 'carry on a similar business,' the [California] Legislature had in mind the direct or indirect transaction or solicitation of substantial business activities in competition with the covenantee . . . rather than the occurrence of isolated, occasional transactions not substantially affecting the covenantee's competition position.") (citing *Swenson*, 3 Cal. 3d at 389). Here, there is no evidence before the court on summary judgment that Central Cal conducted any substantive business activities outside of California, Nevada, and Oregon. All of Central Cal's trucking services were provided within those three states, even though clients who contracted for those services were located throughout the country.

The undersigned acknowledges that courts have rejected especially narrow interpretations of where a business is "carried on," holding that the scope of protection is "not necessarily limited to those [locations] in which it has maintained plants, warehouses, stores or other physical structures." *Kaplan*, 158 Cal. App. 2d at 200; *see also Monogram*, 64 Cal. App. 3d at 702 ("We hold that in . . . section 16601 the area where a business is 'carried on' is not limited to the locations of its buildings, plants and warehouses, nor the area in which it actually made sales. The territorial limits are coextensive with the entire area in which the parties conducted all phases of their business including production, promotional and marketing activities as well as sales.") Such decisions appear to caution against concluding that a company does not do business in an area simply because it does not have physical structures in that area.

16

However, such concerns do not warrant a finding that Central Cal conducted business throughout the country. In *Monogram*, the court found that a defendant was "doing business" nationwide when it manufactured products in California, promoted the products at trade shows and to federal agencies, and received orders from and sold products to clients located in California, New Mexico, Virginia, Michigan, Georgia, Illinois, Wisconsin, and Puerto Rico. 64 Cal. App. 3d at 699. The court in *Monogram* rejected the defendant's argument that the territorial extent of its goodwill was limited to the place of manufacture, despite other significant business activities engaged in throughout the country. Here, in contrast, Central Cal's business was solely based on its abilities to provide intermodal services in California, Nevada, and Oregon. Moreover, there is no evidence before the court that any significant business activities—including production, promotion, marketing, and sales—occurred outside of these three states. Roadrunner has not explained how Cox poses a threat of "depriving the buyer of the full value of its acquisition, including the sold company's goodwill . . ." if he were permitted to seek employment in the trucking industry outside of the three states in which Central Cal operated. *See Alliant*, 159 Cal. App. 4th at 1301 (citing *Strategix*, 142 Cal. App. 4th at 1073). Upholding a non-competition provision of nationwide breadth would bar Cox from "engaging in [his] business in places where [he] poses little threat of undercutting the company [he] sold to the buyer." *Strategix*, 142 Cal. App. 4th at 1073.[4] California law does not permit such all-encompassing non-competition provisions under these circumstances.

      2.    <u>Temporal Limitations</u>

Cox also argues that the sixty-two-month length of the non-competition provision of the SPA is over broad. (Doc. No. 113-1 at 11.) The court disagrees. California courts have found temporal restrictions of five years to be valid. *See Alliant*, 159 Cal. App. 4th at 1296 (finding

---

[4] The court interprets Cox's motion for partial summary judgment merely as challenging the legality of the non-competition provisions of the SPA, rather than that of the non-solicitation provisions. The parties have also not specifically advanced arguments addressing the enforceability of the non-solicitation provisions of the SPA. Finally, courts have normally addressed non-competition and non-solicitation provisions separately. *See Alliant*, 159 Cal. App. 4th at 1306 (citing *Strategix*, 142 Cal. App. 4th at 1068). Therefore, the court concludes that the enforceability of the non-solicitation provision of the SPA is not before it for determination by way of the pending motion.

non-competition and non-solicitation covenants imposing restrictions up to five years to be valid); *Vacco Indus., Inc. v. Van Den Berg*, 5 Cal. App. 4th 34, 49 (1992) (non-competition agreement of five years was fully enforceable); *Monogram*, 64 Cal. App. 3d at 696 (upholding a five-year non-competition covenant). Even if the court would be inclined to limit the restrictions strictly to five years, Cox does not dispute that he engaged in competitive behavior during that period. Accordingly, the court finds that the temporal limitation of the non-competition provisions in this case is not overbroad.

**C.     Contract Reformation**

Although the court has concluded that enforcing the non-competition provisions as written in the SPA would contravene California law, it does not follow that the non-competition provisions are void in their entirety. Under appropriate circumstances, courts in California are empowered to modify contract provisions through reformation. Plaintiff argues that the court should decline to modify the contract and instead, find it to be unenforceable in its entirety. (Doc. No. 124 at 8.) Defendant contends only that the non-competition provisions are enforceable under California law and has not argued for the reforming of the contract. (Doc. No. 121 at 13–15.)

In general, "courts will not strike a new bargain for the parties 'for the purposes of saving an illegal contract.'" *Strategix*, 142 Cal. App. 4th at 1074 (quoting *Kolani v. Gluska*, 64 Cal. App. 4th 402, 407 (1998)). However, this rule is not without exceptions. For instance, and relevant here, California courts have reformed contracts and narrowly construed non-competition agreements if they appeared in the context of the sale of goodwill. *See Hill Med. Corp.*, 86 Cal. App. 4th at 908 (indicating that it is appropriate to "save the covenant not to compete by restructuring it . . . [if] an otherwise valid covenant covers an unreasonably large geographical area or is unreasonably long in duration."); *Kolani*, 64 Cal. App. 4th at 408 ("Several decisions 'saved' covenants not to compete by narrowly construing them, but these covenants were contained in agreements to sell goodwill, where such covenants are permitted under Business and Professions Code section 16601."); *Gen. Paint Corp. v. Seymour*, 124 Cal. App. 611, 614 (1932) (affirming a trial court's decision to limit the non-competition covenant only to Los Angeles

County, despite the original contract's prohibition on competitive activity throughout California)); *see also Swenson*, 3 Cal. 3d at 395 (modifying a covenant is permissible because "the rule of severability may be invoked to uphold defendant's covenant to the extent that it falls within the limits permitted by section 16602").

While the undersigned recognizes that courts should generally be hesitant to reform the parties' contract, the narrowing of the geographical scope of the non-competition provision is appropriate in this case. The court has already found that this non-competition provision was part of an agreement to sell a company and its goodwill and thus falls within one of the few exceptions to California's general policy against non-competition agreements. *See* Cal. Bus. & Prof. Code § 16601. Although the court has concluded that this non-competition provision is impermissibly broad as written, a provision that would prevent Cox from competing with Roadrunner only in areas where Central Cal carried on business and had established goodwill would not be invalid. Moreover, the SPA includes a savings provision, which provides that the parties will agree to the maximum duration, scope, or area covered, should a court find that the original restrictions agreed to by the parties are unreasonable. (*See* Doc. No. 113-2 at 7; SPA § 7.4(c).)

Consequently, the court will narrowly construe the non-competition provisions of the SPA and enforce it only in areas where Central Cal carried on business and/or had established goodwill. The parties do not dispute that Cox has been employed by T.G.S. since July 2017. Neither do the parties dispute that T.G.S. operates as a competitor to Central Cal and Roadrunner.[5] These actions by Cox were still prohibited by a narrower and legally enforceable version of the parties' non-competition provisions.

/////
/////
/////
/////

---

[5] In his reply Cox appears to concede that his role at T.G.S. was in competition with Roadrunner. (*See* Doc. No. 124 at 7 n.5.)

19

CONCLUSION

For the reasons explained above, defendant and cross-complainant Cox's partial motion for summary judgment (Doc. No. 175) is denied.

IT IS SO ORDERED.

Dated: __**March 27, 2019**__   _____
UNITED STATES DISTRICT JUDGE