| | |
|---|---|
| ROADRUNNER INTERMODAL SERVICES, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>T.G.S. TRANSPORTATION, INC., a California corporation, and DOES 1-10,<br><br>Defendants. | No.: 1:17-cv-01207-DAD-BAM, 1:17-cv-01056-DAD-BAM (consolidated)<br><br><u>ORDER DENYING PLAINTIFF AND COUNTER-DEFENDANT JEFFREY COX'S MOTION FOR RECONSIDERATION</u><br><br>(Doc. No. 202) |
| JEFFREY COX,<br><br>Plaintiff,<br><br>v.<br><br>ROADRUNNER INTERMODAL SERVICES, LLC, a Delaware limited liability company, CENTRAL CAL TRANSPORTATION, LLC, a Delaware limited liability company, and DOES 1 through 50,<br><br>Defendants. | |

1

| | |
|---|---|
| ROADRUNNER INTERMODAL SERVICES, LLC, a Delaware limited liability company, | |
| Counter-Plaintiff and Defendant, | |
| v. | |
| JEFFREY COX, | |
| Counter-Defendant and Plaintiff. | |

This matter is before the court on Jeffrey Cox's motion for reconsideration of the court's March 27, 2019 order denying Cox's motion for partial summary judgment. (Doc. No. 202-1.) A hearing on this motion for reconsideration was held on May 21, 2019. Attorney Kurt Kappes appeared telephonically on behalf of defendants Roadrunner Intermodal Services, LLC ("Roadrunner") and Central Cal Transportation ("Central Cal"). Attorney Howard Sagaser appeared on behalf of Jeffrey Cox ("Cox"). Having reviewed the parties' briefing and heard oral argument, and for the reasons that follow, Cox's motion for reconsideration will be denied.

## FACTUAL BACKGROUND

The factual background of this case has been discussed in this court's prior orders denying Roadrunner's motion for a preliminary injunction and denying Cox's partial motion for summary judgment. (See Doc. Nos. 90 at 2–4; 199 at 2–4.) That background will not be repeated here in its entirety. In summary, Roadrunner, Central Cal, and Cox, among other parties, entered into a stock purchase agreement ("SPA") on November 2, 2012, pursuant to which Roadrunner purchased all the stock and assets of Central Cal and Double C Transportation, another trucking company, for approximately $3.8 million.[1] (*Id.*) The SPA also included an earn-out payment to

/////

/////

---

[1] Roadrunner is an industry leader in providing regional and national drayage services throughout the United States. (Doc. No. 22 at 3.) Central Cal is a smaller, regional trucking company that operates trucking routes within California, Nevada, and Oregon for clients throughout the country. (*See* Doc. No. 98 at ¶¶ 5–6.)

2

Cox if certain parameters regarding Central Cal's earnings before interest, taxes, depreciation, and amortization ("EBITDA") were met. (*Id.* at 3.)[2]

Cox continued working for Central Cal after it was sold to Roadrunner. While working for Central Cal, Cox noticed irregularities in Roadrunner and Central Cal's accounting, which affected the way the company's EBITDA was being calculated. Cox was concerned that the accounting irregularities were due to intentional fraud in violation of federal securities laws and by September of 2016, communicated these concerns to executives at Roadrunner. (*See* Doc. No. 98 at ¶¶ 22–28.)

On or about January 30, 2017, Roadrunner publicly stated that it had become aware of various accounting discrepancies within the company, and that the public should not rely on various financial statements and associated reports previously filed by Roadrunner with the SEC. (*Id.* at ¶ 37.) In January 2017, Cox's role was changed from the Vice-President of Operations at Central Cal to a sales role at Roadrunner. (*Id.* at ¶ 39.) In February 17, 2017, Cox and David Chidester, another prior owner of Central Cal, initiated a suit against Roadrunner over issues related to the earn-out payment, which was not resolved through a mediation. (*See* Doc. No. 113-1 at 5–6.) Roadrunner terminated Cox on May 31, 2017. (*Id.* at 6.) On July 25, 2017, Cox filed

---

[2] The SPA included several provisions that are at issue in this action. (*See* Doc. No. 113-2 at 5–8 ("SPA").) First, the non-competition provisions of the agreement stated that Cox was not permitted to acquire or work for or with any entity that engages in any facet of Central Cal's businesses, or that competes with Roadrunner's business. (SPA at § 7.4 (a)(i)(B).) Cox was also not permitted to use his special knowledge of Central Cal's business to compete with Roadrunner in any aspect of Central Cal's business. (*Id.* at § 7.4 (a)(i)(C).) The non-solicitation provision of the agreement prevented Cox from contacting Central Cal customers or inducing Central Cal employees from leaving the company. (*Id.* at § 7.4(a)(ii)(B)-(D).) The non-disclosure provision also prohibited Cox from disclosing Central Cal's confidential or trade secret information. (*Id.* at § 7.4(a)(iii).) All of these provisions limited Cox's conduct from the date of the closing until December 31, 2017 throughout the entire United States. (*See id.* at § 7.4(a)(i).) In addition, the SPA included a savings provision that permitted substitution of a different duration, scope, or area, if a court found that any of the restrictions imposed by the agreement were unreasonable. (*Id.* at § 7.4(c).) Additionally, the SPA acknowledged that the protective covenants were "necessary to protect the legitimate, protectable interests of [Central Cal] . . . [and] the goodwill of the business of [Central Cal] and [Roadrunner] . . .." (*Id.*) Attached to the SPA was a legal opinion from Cox's own counsel, opining that the SPA was "legal, valid and binding" and enforceable against the sellers, including Cox. (Doc. No. 121-1 at 55.)

a complaint in Fresno County Superior Court asserting causes of action relating to his termination which he alleged was wrongful. (*Id.*) Cox accepted employment with T.G.S. Transportation, Inc. ("T.G.S.") beginning in July 2017. (Doc. No. 90 at 3.) Roadrunner filed its action against T.G.S. in this court on August 7, 2017.

On February 7, 2018, the undersigned denied Roadrunner's motion for a preliminary injunction, granted T.G.S.'s motion to consolidate this case with *Cox v. Roadrunner Intermodal Services, LLC, et al.,* No. 1:17-cv-01207-DAD-BAM (E.D. Cal.), and granted Cox's motion to intervene. (Doc. No. 90.) On March 28, 2019, the court issued an order denying Cox's motion for partial summary judgment, which had sought a declaratory judgment that the non-competition provisions of the parties' SPA were unlawful and unenforceable. (Doc. No. 199.) The court held that the non-competition provisions were properly analyzed under California law; that the non-competition provisions were permitted under California Labor Code § 16601 because they were executed as an adjunct to the sale of goodwill; and that the non-competition provisions of the SPA could be narrowly construed so as to be enforced only in areas where Central Cal carried on business and/or had established goodwill. (*Id.*)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 60(b)(1) provides that "[o]n motion and upon such terms as are just, the court may relieve a party. . . from a final judgment, order, or proceeding" for "mistake, inadvertence, surprise, or excusable neglect," or "any other reason justifying relief from the operation of judgment." Relief under Rule 60 "is to be used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances" exist. *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008) (internal quotations marks and citation omitted) (addressing reconsideration under Rule 60(b)(1)–(5)). The moving party "must demonstrate both injury and circumstances beyond his control." *Id.* (internal quotation marks and citation omitted). Further, Local Rule 230(j) requires, in relevant part, that in moving for reconsideration of an order denying or granting a prior motion, a party must show "what new or different facts or circumstances are claimed to exist which did not exist or were not shown" previously, "what other grounds exist for the motion," and "why the facts or circumstances were

1 not shown" at the time the substance of the order which is objected to was considered.

"A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law," and it "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (internal quotations marks and citations omitted); *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

**DISCUSSION**

Cox moves for reconsideration pursuant to Federal Rule of Civil Procedure 60(b) and Local Rule 230(j), arguing that the court erred in reforming the SPA; that newly discovered evidence necessitates a different holding; and that, because reformation is inappropriate, the court should grant Cox's motion for partial summary judgment. (*See* Doc. No. 202-1 at 10.)

**A.     Whether Reconsideration Should Be Granted Based on New Evidence**

As noted, Cox argues that the court should reconsider its decision to reform the SPA's non-competition clause due to newly discovered evidence. (Doc. No. 202-1 at 11.) The "newly discovered evidence" that Cox points to is the result of an arbitration involving the earn-out provisions of the SPA, in which an arbitrator, mutually appointed by the parties, determined that "Roadrunner is obligated to pay . . . Cox and Chidester an earn-out payment pursuant to Section 1.5 of the SPA in the amount of $2,100,086." (*Id.* at 12.) The arbitration occurred in the context of a separate lawsuit, in which Cox and Chidester sued Roadrunner and Central Cal for breach of contract claims related to the earn-out payments provided for in the SPA. (*See id.* at 11.)[3]

---

[3] On June 11, 2019, Cox filed with this court a request for judicial notice of the order from the Los Angeles Superior Court confirming this arbitration award. (Doc. No. 219.) Pursuant to Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records are properly the subject of judicial notice because the contents of such documents contain facts that are not subject to reasonable dispute, and the facts therein "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.*; *see also Intri-Plex Techs. v. Crest Grp.,*

5

Assuming *arguendo* that the order confirming an arbitration award to Cox is evidence,[4] the court is not persuaded that this evidence is either new or could not have been presented prior to the order of which reconsideration is now sought. The arbitrator's decision was issued on March 5, 2019, while the court did not issue its order denying Cox's motion for summary judgment until March 28, 2019. (*See* Doc. No. 199.) In the interim, Cox did not submit notice of the arbitrator's decision to this court to supplement his motion for partial summary judgment. Cox argues, however, that "the relevance of the arbitrator's decision to the Court's decision . . . did not become apparent until after the court decided, on its own initiative, to reform the contract." (Doc. No. 209 at 6.)

For several reasons, the court is skeptical that Cox was blindsided by the court's decision to reform the non-competition provisions by limiting its scope. First, Cox's motion for partial summary judgment included a summary of the earn-out matter that was the subject of the arbitration award as part of the factual background of the case. (*See* Doc. No. 113-1 at 5–6.) If Cox thought the earn-out matter was relevant to his motion, it would have been reasonable to update the court upon issuance of the arbitrator's decision. Second, Cox's own reply in support of his motion for partial summary judgment requested that the court partially enforce[5] the non-

---

*Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979). Here, Cox requests judicial notice of a state court order confirming an arbitration award, which is relevant to his motion for reconsideration. (*See* Doc. No. 219.) Accordingly, Cox's request for judicial notice is granted.

[4] Roadrunner contests that the arbitrator's March 5, 2019 finding is a legal conclusion rather than a finding of fact but provides no legal authority in support of this assertion. (*See* Doc. No. 206 at 6–7.)

[5] The undersigned acknowledges that it may have imprecise in its prior order in referring to the court's "reforming" of the contract, since that word choice could be construed as the court having greater discretion in defining the contract than it actually exercised. (*See* Doc. No. 199 at 18–19.) It may well have been more accurate to state that the court was merely enforcing the contract to the extent permitted by law as directed by its savings provision. Nonetheless, to limit any confusion, the court will continue to refer to its "reformation" of the non-competition provisions of the SPA.

competition provisions.  (*See* Doc. No. 124 at 8.)  In this regard, Cox himself argued that the court should "refuse to modify the illegal agreement" or alternatively, "if instead the court modifies the non-compete provisions" (i.e., reform the contract), "it is respectfully requested the court modify it to be at or less than 55 months . . .."  (*Id.*)  Despite himself requesting that the court consider limiting the non-competition provision while enforcing the contract, Cox failed to present the equitable arguments in support of his motion for partial summary judgment that he now advances for the first time in his motion for reconsideration.  *See Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) ("A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.")

Third, in its moving for a preliminary injunction, Roadrunner specifically argued that the savings clause, found at section 7.4(c) of the parties' SPA, was valid under California law.[6]  (*See* Doc. No. 63 at 6–8.)  Roadrunner's argument in this regard certainly put Cox on notice that reformation of the contract pursuant to the savings provision was a possibility.  Finally, in briefing the motion for partial summary judgment, the parties both cited to the decision in *Strategix, Ltd.*, 142 Cal. App. 4th at 1074, in which that court discussed how "[c]ourts have 'blue penciled' noncompetition covenants with overbroad or omitted geographic and time restrictions to include reasonable limitations."  (*See* Doc. Nos. 113-1 at 10; 121 at 10.)  For all of these reasons, Cox was on notice that the court could potentially narrow the non-competition provisions of the SPA and partially enforce it.

Nonetheless, the court is somewhat sympathetic to Cox's contention that it ruled in a manner that the parties did not fully anticipate and on legal grounds that were not fully briefed by the parties in connection with his motion for partial summary judgment.  Therefore, in the interests of justice, the court will consider Cox's new arguments as to why the non-competition provision of the SPA should not be reformed, as well as the evidence upon which those arguments are based.

---

[6] For reasons that are not clear to the court, Roadrunner did not advance that argument in its opposition to Cox's motion for partial summary judgment.

7

**B.     The Court Did Not Err in Reforming the SPA**

Cox argues that reformation of the non-competition provisions is inappropriate. Below, the court will explain why it disagrees with this contention without repeating the analysis set forth in its March 28, 2019 order which is incorporated herein.[7]

     1.     <u>Reformation Is Appropriate Pursuant to the Savings Provision</u>

As a preliminary matter, the court finds that section 7.4(c) of the SPA explicitly contemplates contract reformation and states:

> <u>Savings Provisions.</u> If at the time of enforcement of any of the covenants contained in <u>Section 7.4(a)</u> above (the "<u>Protective Covenants</u>"), a court shall hold that the duration, scope or area restrictions stated therein are unreasonable under circumstances then existing, the parties agree that the maximum duration, scope or area reasonable under such circumstances shall be substituted for the stated duration, scope or area and *that the court shall be allowed and directed to revise the restrictions contained herein to cover the maximum period, scope and area permitted by law*.

(Doc. No. 113-2 at 7–8) (italics indicate emphasis added). The parties' SPA, which was attached to Cox's motion for partial summary judgment, directs the court to do exactly what it did: narrow the geographic scope of the non-competition provision to make it enforceable under California law. Roadrunner did not direct the court to the savings provision in its opposition to Cox's motion for partial summary judgment but had previously discussed that provision in moving for a preliminary injunction. (*See* Doc. No. 63 at 6–8.) In ruling on Cox's motion for partial summary judgment seeking declaratory relief, the court reviewed the entire SPA, including the savings provision.

"Reformation is an equitable remedy the essential purpose of which is to ensure the contract, as reformed, reflects the parties' mutual intention." *Komorsky v. Farmers Ins. Exch.*, 33

---

[7] For example, Cox urges the court to take the approach set forward in *Strategix, Ltd. v. Infocrossing West, Inc.*, 142 Cal. App. 4th 1068, 1074 (2006) to find that an overbroad non-competition provision is illegal. (*See* Doc. No. 202-1 at 26–27.) The court cited and considered *Strategix* in its prior order, but found the reasoning of cases such as *Hill Med. Corp. v. Wycoff*, 86 Cal. App. 4th 895, 902 (2001) (stating that a non-competition provision may be restructured in "a situation in which an otherwise valid covenant covers an unreasonably large geographical area or is unreasonably long in duration.") to be more persuasive. (*See* Doc. No. 199 at 18.) The court will not reiterate its already provided reasoning as to why the non-competition provisions of the parties SPA are not illegal as written. (*See id.* at 12–20.)

Cal. App. 5th 960, 974, *as modified on denial of reh'g* (Mar. 29, 2019), *review denied* (June 19, 2019). By including the savings provision in their SPA, the parties demonstrated their intent to be bound by non-competition provisions for the "maximum period, scope and area permitted by law." (*See* Doc. No. 113-2 at 8.) "Reformation may be had for a mutual mistake or for the mistake of one party which the other knew or suspected, but in either situation the purpose of the remedy is to make the written contract truly express the intention of the parties." *Komorsky*, 33 Cal. App. 5th at 974 (citing *Lemoge Electric v. County of San Mateo*, 46 Cal.2d 659, 663 (1956)). Here, the parties were mistaken regarding the enforceability of certain non-competition provisions of their agreement. Both Cox and Roadrunner were sophisticated parties and consulted independent counsel, who advised them that the non-competition provisions were enforceable under California law. Cox cannot seriously dispute that, at the time of contract formation, the parties intended to ensure that Cox would not compete with Roadrunner by joining a competitor in California, such as T.G.S. *See also Lemoge Elec. v. San Mateo Cty.*, 46 Cal. 2d 659, 663 (1956); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 123–24 (2000) ("Two reasons for severing or restricting illegal terms rather than voiding the entire contract appear implicit in case law. The first is to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement — particularly when there has been full or partial performance of the contract."). Therefore, in light of the savings provision in the parties' SPA, the manner in which the court reformed the contract reflected the intent of the parties to be bound by a non-competition provision that was enforceable under California law.

2. <u>Reformation Is Appropriate Pursuant to California Civil Code § 3399</u>

Cox next argues that in reforming the contract, the court omitted any reference to California Civil Code § 3399, which does not permit *sua sponte* reformation. (Doc. No. 202-1 at 20.) California Civil Code § 3399 states:

> When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that

9

> intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.

However, § 3399 does not indicate that it provides the exclusive basis for reformation. Rather, "[i]t is well settled that the remedy of reformation is equitable in nature and not restricted to the exact situations stated in section 3399." *Jones v. First Am. Title Ins. Co.*, 107 Cal. App. 4th 381, 388 (2003), *as modified on denial of reh'g* (Apr. 23, 2003) (citing *Demetris v. Demetris*, 125 Cal. App. 2d 440, 443 (1954)). Therefore, an equitable remedy such as reformation is not limited to circumstances explicitly outlined in § 3399, especially here, where the contract at issue includes a specific savings provision and contemplates the reformation of the contract to cover the maximum period, scope, and area permitted by law.

The court is not aware of, and Cox has not cited, any cases standing for the proposition that the court may narrow a non-competition agreement pursuant to § 16601 only at the request of one party. In the order denying Cox's motion for partial summary judgment, the court noted that "California courts have reformed contracts and narrowly construed non-competition agreements if they appeared in the context of the sale of goodwill." (Doc. No. 199 at 18.) "Several decisions 'saved' covenants not to compete by narrowly construing them, but these covenants were contained in agreements to sell goodwill, where such covenants are permitted under Business and Professions Code section 16601." *Kolani v. Gluska*, 64 Cal. App. 4th 402, 406 (1998) (making no mention that courts that narrowly construed covenants not to compete could only at the request of a party). Cox has failed to offer clear authority suggesting that the March 28, 2019 order was erroneous as a matter of law. Having reconsidered the legal basis for that order, the court adopts it once again.

**C.     Even Considering Cox's New Evidence, Reformation Was Appropriate**

Cox argues that the court should not have reformed the non-competition provisions of the SPA due to the arbitrator's finding, which was later confirmed by the state court, that Roadrunner owes Cox and Chidester earn-out payments $2,100,086.00. (*See* Doc. Nos. 202-1 at 11–13; 209 at 9; 219 at 9.)

/////

10

### 1. Material Breach

In opposition to the pending motion for reconsideration, Roadrunner argues that the breach of one covenant in the SPA does not prevent its enforcement of the non-competition provisions, nor does it excuse Cox from performing in accordance with those provisions. (Doc. No. 206 at 10–11.) Cox argues that, even if the court stands by its decision to reform the non-competition provisions of the parties' SPA, he should be excused from complying with those provisions due to Roadrunner's failure to pay him the earn-out payments in breach of the SPA. (*See* Doc. No. 209 at 8–12.)

"When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract." *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011) (citing 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, §§ 813, 814, p. 906 (Witkin)). "Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact." *Brown*, 192 Cal. App. 4th at 277 (citing cases); *see also Crowley v. Epicept Corp.*, 883 F.3d 739, 750 (9th Cir. 2018) ("The jury thus asked the court to resolve a factual issue—whether the [party's] breach was material—that the jury was charged with deciding.").

Here, there is evidence supporting the position of both parties to the SPA on the question of whether Roadrunner's failure to pay the earn-out payment constituted a material breach of that agreement. In the arbitration proceeding, the arbitrator was not asked to determine if either party breached the earn-out provision, but rather merely concluded that Roadrunner owed Cox and Chidester $2,100,086.00. (*See* Doc. No. 219 at 9.) On one hand, the arbitrator found that Cox should have received approximately $1,050,000.00 in earn-out payments from Roadrunner–a sizable sum compared to the approximately $130,946.00 cash payment that Cox states that he received from the SPA. (*See* Doc. No. 209 at 10–11.) On the other hand, however, the SPA by its terms actually provided that Roadrunner would buy all of Cox's shares of Central Cal and Double C Transportation for $3,850,000, after absorbing an unknown amount of the debt amassed by those two companies. (*See* Doc. No. 219 at 5.)

/////

Based on the evidence before it in connection with Cox's motion for partial summary judgment and now on his motion for reconsideration of the court's order denying that motion, the court cannot conclude that Roadrunner materially breached the SPA because based upon that evidence, a reasonable jury could reach a different conclusion. Therefore, upon reconsideration, the court will not alter its prior order denying Cox's motion for partial summary judgment. Of course, at the trial of this action, Cox will be allowed to present evidence and argue that Roadrunner's breach was "a material breach [that] excuses further performance by the innocent party." *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1602 (2012).

### 2. Unclean Hands

Cox also argues that reformation of the non-competition provisions of the parties' SPA is barred by the doctrine of unclean hands because, as found by the arbitrator, Roadrunner has refused to pay him contractually designated earn-out payments. (Doc. No. 202-1 at 13–17.) Roadrunner responds that Cox has not established that it has unclean hands and that such a contention involves disputed issues of fact to be determined by a trier of fact. (Doc. No. 206 at 11–12.)

"The doctrine [of unclean hands] demands that a [party] act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." *Kendall-Jackson Winery, Ltd. v. Super. Ct.*, 76 Cal. App. 4th 970, 978 (1999), *as modified on denial of reh'g* (Jan. 3, 2000) (citing cases). "Under California law regarding the applicability of the unclean hands defense, '[t]he focus is the equities of the relationship between the parties, and specifically whether the unclean hands affected the transaction at issue.'" *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 667 (9th Cir. 2012) (quoting *Jaramillo v. County of Orange*, 200 Cal. App. 4th 811, 820 (2011)). Generally, the question of whether a party has unclean hands is a question of fact. *See Kendall-Jackson Winery,* 76 Cal. App. 4th at 978 (citing *CrossTalk Prod., Inc. v. Jacobson,* 65 Cal. App. 4th 631, 639 (1998)); *see also Andresen v. Int'l Paper Co.*, No. 2:13-cv-02079-CAS-AJW, 2014 WL 12587049, at *10 (C.D. Cal. Oct. 28, 2014) (citing cases).

/////

The court's reasoning with respect to Cox's argument that his motion for partial summary judgment should have been granted based upon his unclean hands defense is similar to its reasoning with respect to his argument that Roadrunner's actions constituted a material breach of the SPA—thereby entitling him to partial summary judgment. Though the arbitrator determined the amount of earn-out payments that Roadrunner owed Cox, the arbitrator did not find as a matter of law that Roadrunner breached the SPA. (*See* Doc. No. 202-3 at 154–155.) At arbitration, Cox complained of Roadrunner's failure to make the proper earn-out payments and the arbitrator decided the amount owed. Cox has not presented any authority in his pending motion which persuades the court that this determination by the arbitrator, as a matter of law, excuses his performance under the parties' non-competition provisions. Rather, at most, Cox has established an issue of triable fact for a jury to resolve in this regard.

3. <u>Laches</u>

Cox next argues that the court's March 28, 2019 order was issued in error because previously, Roadrunner merely sought to enforce the overbroad clauses of the non-competition provisions as written and should now be prohibited from requesting their reformation. (Doc. No. 202-1 at 18.) Roadrunner responds that it did not delay in requesting reformation, and further, that Cox suffered no prejudice as a result of any potential delay in its doing so. (Doc. No. 206 at 12–14.)

"The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." *Conti v. Bd. of Civil Serv. Commissioners*, 1 Cal. 3d 351, 359 (1969). "If because of his delay in seeking his remedy, without offering a satisfactory explanation for the delay, a prejudice results to his adversary, he will be precluded from enforcing his demand." *Brown v. State Pers. Bd.*, 43 Cal. App. 2d 70, 79 (1941).

Cox's laches arguments are unconvincing, given the court's reasoning that contract reformation pursuant to the very specific savings provision of the SPA's non-competition agreement was appropriate. Cox agreed to the SPA and was on clear notice from the start that the non-competition provisions could be narrowed by a court. Further, even if the court were to

13

1 | accept the notion that Roadrunner in some way delayed in requesting reformation, Cox has failed to establish that he has been prejudiced by any such a delay. In a declaration Cox has stated that he

> believed that Roadrunner could not enforce the non-competition provision against me because it was overbroad. Had I known that Roadrunner would have sought to modify the non-competition provisions so to fix the geographical scope issue, I likely would have sought additional legal opinions and possibly ceased working in the transportation industry until after the expiration of the non-competition provision (December 31, 2017) or looked for a job in another state where the non-competition agreement could not be enforced against me under any proposed modification.

(Doc. No. 202-2 at 3–4, ¶ 12.) Cox is equivocal at best in this declaration. His after–the–fact attempt to explain what he would have done under certain circumstances fails to persuade the court that he was prejudiced by Roadrunner's actions.[8] Based on the evidence submitted in connection with Cox's motion for partial summary judgment and the pending motion for reconsideration, the court cannot conclude that the defense of laches precludes reformation of the parties' agreement.

    4.    <u>Reformation Does Not Prejudice T.G.S.</u>

Finally, Cox argues that even if Roadrunner could demonstrate fraud or a reformable mistake, reformation of the non-competition clause is inappropriate because it prejudices the rights acquired by T.G.S. (Doc. No. 202-1 at 23–25.)

Cox's argument is based on the conclusion that T.G.S. acquired an interest in invalidating the non-competition agreement for value when the company hired Cox following his termination from Roadrunner. *See* Cal. Civil Code § 3399 (reformation is permitted "so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."); *Lin v. Coronado*, 232 Cal. App. 4th 696, 705 (finding that the plaintiff could not avail herself of reformation because a third party would be prejudiced). Even if the court were not skeptical of this creative theory, Cox has failed to submit any evidence in support of an argument that T.G.S. relied on future invalidation of the non-competition provision when they hired Cox. Absent such

---

[8] Whether Cox, as he apparently suggests in his declaration, relied upon inaccurate or incomplete advice from his counsel to his detriment is a question not before the court.

14

evidence, the court will not reconsider its prior order based on this argument.

**CONCLUSION**

Accordingly, Cox's motion for reconsideration (Doc. No. 202) of the court's March 27, 2019 order is denied.

IT IS SO ORDERED.

Dated: **August 21, 2019**

*/s/ Dale A. Drozd*
UNITED STATES DISTRICT JUDGE