UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ROADRUNNER INTERMODAL SERVICES, LLC, a Delaware limited liability company,<br><br>            Plaintiff,<br><br>    v.<br><br>T.G.S. TRANSPORTATION, INC., a California corporation, and DOES 1-10,<br><br>           Defendants. | No.:  1:17-cv-01207-DAD-BAM, 1:17-cv-01056-DAD-BAM (consolidated)<br><br>ORDER GRANTING IN PART AND DENYING IN PART ROADRUNNER'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF JEFFREY COX'S CLAIMS<br><br>(Doc. No. 175) |

JEFFREY COX,

           Plaintiff,

    v.

ROADRUNNER INTERMODAL SERVICES, LLC, a Delaware limited liability company, CENTRAL CAL TRANSPORTATION, LLC, a Delaware limited liability company, and DOES 1 through 50,

           Defendants.

| | |
|---|---|
| 1 | ROADRUNNER INTERMODAL SERVICES, LLC, a Delaware limited liability company, |
| 2 | |
| 3 | Counter-Plaintiff and Defendant, |
| 4 | |
| 5 | v. |
| 6 | JEFFREY COX, |
| 7 | Counter-Defendant and Plaintiff. |

8

9    Before the court is Roadrunner's motion for summary judgment as to Jeffrey Cox's

10   claims. (Doc. No. 175.)  A hearing on this motion was held on April 2, 2019.  Attorney Michelle

11   DuCharme appeared at the hearing on behalf of defendant and counter-plaintiff Roadrunner

12   Intermodal Services, LLC ("Roadrunner") and defendant Central Cal Transportation ("Central

13   Cal") (hereinafter collectively referred to as "Roadrunner").  Attorneys Howard Sagaser and Ian

14   Wieland appeared on behalf of plaintiff and counter-defendant Jeffrey Cox ("Cox").  Having

15   reviewed the parties' briefing and heard oral argument, and for the reasons that follow,

16   Roadrunner's motion for summary judgment will be granted in part and denied in part.

17                                    **FACTUAL BACKGROUND**

18   The factual background of this case has been discussed in this court's prior orders denying

19   Roadrunner's motion for a preliminary injunction and denying Cox's partial motion for summary

20   judgment.  (*See* Doc. Nos. 90 at 2–4; 199 at 2–4.)  That background will not be repeated here in

21   its entirety.  Only those facts relevant to the disposition of the pending motion for summary

22   judgment will be discussed below.[1]

23   Roadrunner is an industry leader in providing regional and national drayage services

24   throughout the United States.  (Doc. No. 22 at 3.)  Central Cal is a smaller, regional trucking

25   company that operates trucking routes within California, Nevada, and Oregon for clients

26   throughout the country.  (*See* Doc. No. 98 at ¶¶ 5–6.)  Cox was previously a co-owner of Central

27   ───────────────────
     [1]  This factual background is derived from the following sources:  Cox's first amended complaint

28   ("FAC") (Doc. No. 98); Roadrunner's motion for summary judgment (Doc. No. 175); Cox's
     opposition to the motion (Doc. No. 181); and Roadrunner's reply to the motion (Doc. No. 197).

Cal, along with David Chidester ("Chidester"). (*See* Doc. No. 175 at 7.) On November 2, 2012, Roadrunner, Central Cal, Cox, and Chidester entered into a stock purchase agreement ("SPA") in which Roadrunner purchased all of the stock and assets of Central Cal and Double C Transportation, another trucking company, for approximately $3.8 million. (*See* Doc. No. 90 at 2–4.) The SPA included a provision calling for an earn-out payment to Cox if certain parameters regarding the companies' earnings were met. (*Id.* at 3.) Additionally, the SPA included non-competition, non-solicitation, and non-disclosure provisions that limited Cox's conduct in the future, at least through December 31, 2017. (*See* Doc. No. 199 at 3.)

Cox began working for Central Cal after it was sold to Roadrunner and retained his role as Vice President of Operations. (Doc. No. 181 at 8.) While employed at Central Cal, Cox believed that he did not receive the earn-out payments that he was due under the SPA and began both questioning company executives and conducting a personal investigation into the matter. (*Id.* at 8.) Cox's complaints regarding accounting irregularities began in 2013. (*See* Doc. No. 175 at 9.)

On September 20, 2016, Cox sent an email to three Roadrunner executives (Judy Vijums, Peter Armbruster, and Ben Kirkland) detailing perceived inaccuracies in the accounting and financial information for Central Cal that Cox had received from Roadrunner. (*See* Doc. No. 181-2 at 6–7.) The email stated that Cox's former partner, Chidester, had received accounting and financial information that was contradictory to what Cox had received. (*Id.* at 6.) The email also stated that, from Cox's perspective, Roadrunner was violating the SPA and had provided false or inaccurate information in its filings with the Securities and Exchange Commission ("SEC"). (*Id.* at 6–7.) Finally, the email demanded complete and accurate accounting and financial information from Roadrunner for the fiscal years of 2012 through 2016. (*Id.* at 7.)

By November 10, 2016, Cox had retained counsel, who sent a demand letter to the aforementioned Roadrunner executives. (*See* Doc. No. 181-2 at 9–11, hereinafter referred to as the "Wieland demand letter.") The Wieland demand letter repeated many of the concerns and allegations set forth in Cox's September 20, 2016 email and demanded explanations for the earn-out payments and other information, including accounting and financial documentation. (*Id.* at 9.) The Wieland demand letter also stated that Cox had been informed by credible sources that

Roadrunner falsely reported profits during the fiscal years at issue, thus calling into question the accuracy of Roadrunner's audits and SEC filings. (*Id.* at 10.)

In December 2016, Cox was removed from his role as Vice President of Operations at Central Cal and moved to a position on the sales team at Roadrunner; however, the parties dispute the exact title change and whether it constituted a demotion. (*See* Doc. Nos. 175 at 10; 181 at 9.) Though Cox's compensation remained the same, Cox alleges that the position change stripped him of his operational authority and denied him access to accounting and financial records. (*Id.*)

In the first quarter of 2017, Central Cal's revenue was below expectations. (*See* Doc. No. 175-1 at 4.) On or about January 30, 2017, Roadrunner publicly admitted that it had become aware of various accounting discrepancies within the company, and that the public should not rely on various financial statements and associated reports previously filed with the SEC. (*See* Doc. No. 181 at 9.) On February 17, 2017, Cox and another individual initiated a suit against Roadrunner over issues related to the earn-out payments. (*Id.*) In April 2017, Roadrunner began implementing cutbacks and lay-offs as a response to Central Cal's revenue reports. (*See* Doc. No. 175-1 at 4.) On May 9, 2017, the parties to this action unsuccessfully attempted to resolve the suit in a voluntary mediation. (*See* Doc. No. 181 at 9.) In a mediation brief, Cox stated his belief that Roadrunner violated the law by failing to pay the earn-out payments and contended that Roadrunner had reported fraudulent financial information to the SEC. (*See* Doc. No. 98 at 13.)

On May 31, 2017, Cox was terminated from Central Cal. (*Id.* at 9.) Cox states that he performed work on May 31, 2017 prior to being terminated and was not paid for that work. (*Id.* at 24–25.) Additionally, Cox's final itemized wage statement reflected alleged inaccuracies and/or typographical errors. (*Id.* at 26–27.) Cox also alleges that on or about July 7, 2017, following his termination, certain Roadrunner employees made defamatory statements about him. (*Id.* at 22.)

Cox accepted employment with T.G.S. Transportation, Inc. ("T.G.S.") beginning in July 2017. (*See* Doc. No. 90 at 3.) On July 11, 2017, Roadrunner authorized attorney Nicole Goodwin to send correspondence to T.G.S. regarding Cox's employment with the company. (*See* Doc. No. 175-11, hereinafter referred to as the "Goodwin demand letter.") The Goodwin demand

letter stated that Cox was contractually prohibited from attempting to employ Roadrunner's employees, inducing any of Roadrunner's employees to leave Roadrunner, and/or soliciting any of Roadrunner's customers until December 31, 2017. (*Id.*; *see also* Doc. No. 175 at 11.)

On July 25, 2017, Cox filed a complaint in Fresno County Superior Court asserting causes of action related to his allegedly wrongful termination. (*See* Doc. No. 90 at 3.) Roadrunner filed its action against T.G.S. in this court on August 7, 2017. On February 7, 2018, the undersigned denied Roadrunner's motion for a preliminary injunction, granted T.G.S.'s motion to consolidate this case with *Cox v. Roadrunner Intermodal Services, LLC, et al.,* No. 1:17-cv-01207-DAD-BAM (E.D. Cal.), and granted Cox's motion to intervene. (*See* Doc. No. 90.) Additionally, on March 28, 2019, the court denied Cox's motion for partial summary judgment on his ninth cause of action, which sought a declaratory judgment regarding the legality of the non-competition provisions of the parties' SPA. (*See* Doc. No. 199.)[2]

This action now proceeds on Cox's first amended complaint ("FAC") against Roadrunner, Central Cal, and unidentified Doe defendants. (Doc. No. 98.) On May 10, 2018, both Roadrunner and Central Cal filed answers to Cox's FAC, and Roadrunner also filed a counterclaim. (Doc. Nos. 107, 108.) Roadrunner filed a motion for summary judgment as to Cox's claims against it on February 19, 2019. (Doc. No. 175.)[3] Cox filed an opposition on

---

[2] On April 9, 2019, Cox filed a motion for reconsideration of that order, which is currently under submission awaiting decision by this court. (*See* Doc. No. 202.)

[3] There has been unnecessary confusion and inefficiency in this case, largely stemming from a lack of cooperation between the parties regarding various motions to seal and/or requests to file redacted documents. Specifically, on February 19, 2019, Roadrunner filed a request to file documents under seal in conjunction with its motion for summary judgment. (Doc. No. 176.) The request sought to file redacted documents but, rather than providing reasons as to why, merely referenced the stipulated protective order in this case. (*Id.* at 2–3.) On February 22, 2019, the undersigned issued an order requiring further briefing from Roadrunner explaining why the material should not be publicly disclosed. (Doc. No. 177.) On March 5, 2019, Cox filed his opposition to the motion for summary judgment (Doc. No. 181) and with it, a notice of request to seal documents (Doc. No. 182). Cox's request to seal also did not include an explanation of reasons why the documents in question should be sealed and also merely referenced the parties' stipulated protective order. (*Id.*) On March 7, 2019, the undersigned acknowledged that Roadrunner may be better equipped to explain why the documents should be filed under seal and issued an order requiring further briefing addressing why the material should not be publicly disclosed. (Doc. No. 183.) On March 8, 2019, Cox filed a response to the court's order, stating

5

March 5, 2019.  (Doc. No. 181.)  Roadrunner filed a reply on March 26, 2019.  (Doc. No. 197.)[4]

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at

---

that he was complying with the stipulated protective order but did not feel that the documents filed in conjunction with his opposition should be sealed.  (Doc. No. 185.)  On March 8, 2019, Roadrunner filed a response to the court's February 22, 2019 order, in which it requested that redacted versions of exhibits J, K, and L to its motion for summary judgment be filed on the docket, as it believed that those documents contained confidential and proprietary client information.  (Doc. No. 186 at 3.)  Roadrunner also conceded that exhibits P and D to its motion for summary judgment do not contain proprietary information (*see* Doc. No. 186 at 2) and accordingly filed unredacted versions of those exhibits.  (*See* Doc. No. 187.)  On March 21, 2019, Roadrunner filed a response to the court's March 7, 2019 order.  (Doc. No. 196.)  In its response, Roadrunner conceded that there are no compelling reasons to seal certain exhibits but requested that confidential information be redacted from others.  (*Id.*)  The court concludes that the parties have provided sufficiently compelling reasons to justify filing redacted exhibits, as discussed above.  However, because of the numerous requests, the docket in this case has become nearly impossible to navigate.  The court has provided the parties the legal standard applicable to sealing and redaction requests on many occasions.  The parties are therefore instructed to meet and confer about any future requests to seal and/or redact well in advance of filing such requests.  A failure to do so may result in the striking of documents and/or the imposition of sanctions by the court.

[4]  On June 7, 2019, T.G.S. filed a motion for summary judgment, for which a motion hearing was held on July 16, 2019 and the motion was taken under submission for decision following the filing of post-hearing resubmissions.  (Doc. Nos. 218, 236.)  The pretrial conference and trial dates were subsequently vacated by the court to be reset, if necessary, following rulings on all submitted motions.  (*See* Doc. No. 242.)

trial, as plaintiff does here, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party, *see Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

**DISCUSSION**

**A.      Retaliation Claims**

Cox has brought two claims against Roadrunner under the whistleblower protection provision of California Labor Code § 1102.5, arguing that: (1) in December 2016, he was demoted from his role as Vice President of Operations of Central Cal to an unnamed sales position at Roadrunner; and (2) on May 31, 2017, he was terminated from his sales position at Roadrunner after engaging in various instances of protected activity. (Doc. No. 98 at 15–20.) Roadrunner argues that summary judgment should be granted in its favor as to these claims because it had legitimate and nonretaliatory reasons underlying both decisions. (Doc. No. 175 at 12.)

Generally, California courts apply the same burden-shifting test adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), thereby requiring a plaintiff to show the following in order to set out a *prima facie* case of retaliation under § 1102.5: (1) that the employee engaged in protected activity; (2) that he was thereafter subjected to an adverse employment action by his employer; and (3) that there was a causal link between the employee's protected activity and the adverse employment action. *See Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 287-88 (2006); *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 62, 69 (2000) (citing to *McDonnell*

8

*Douglas Corp.*, 411 U.S. at 792); *United States v. Heath*, Case No. 13-cv-01924-SI, 2016 WL 3540954, at *13 (N.D. Cal. June 29, 2016). "The requisite degree of proof necessary to establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence . . .." *Ferretti v. Pfizer Inc.*, No. 11-CV-04486, 2013 WL 140088, at *10 (N.D. Cal. Jan. 10, 2013) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994), *as amended on denial of reh'g* (July 14, 1994)); *see also Weinstein v. HBE Corp.*, No. 2:13-CV-04643-CAS, 2014 WL 5602510, at *7 (C.D. Cal. Nov. 3, 2014) (on summary judgment, finding that plaintiff had presented the "minimal" amount of proof to establish engagement in a protected activity).

Once the employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to offer a legitimate, nonretaliatory reason for the adverse employment action taken. *Morgan*, 88 Cal. App. 4th at 68 (citing *McDonnell Douglas*, 411 U.S. at 792). "The employer's burden at this stage is to go forward with additional evidence; it does not take on a burden of persuasion." *Id.* (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000)). If the court finds that the employer has presented such a reason, the burden shifts back to the employee to prove intentional retaliation, i.e., that the proffered reason for the adverse employment action is pretextual. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 792)*; Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1384 (2005).

    1.    <u>*Prima Facie* Case of Retaliation</u>

Roadrunner argues that Cox has not established a *prima facie* case of retaliation for two reasons: 1) Cox's alleged whistleblowing email and letter do not constitute protected activity because Cox did not identify specific statutes, rules, or regulations that he believed Roadrunner violated (Doc. No. 175 at 13–15); and 2) with regard to Cox's first cause of action, the change in Cox's position of employment did not constitute an adverse employment action because he was transferred to a comparable position (*id.* at 15–16).

    *a.*    *Protected Activity*

Roadrunner first argues that Cox's whistleblowing email sent on September 20, 2016 and the Wieland demand letter sent on his behalf on November 10, 2016 both fail to articulate a

specific statute, rule, or regulation that Cox believed Roadrunner violated and therefore cannot

constitute protected activity.  (*Id.* at 13–15.)

An employee engages in protected activity under Labor Code § 1102.5(b) when he

discloses perceived violations of the law "to a person with authority over the employee or another

employee who has the authority to investigate, discover, or correct the violation or

noncompliance. . .."[5]  To constitute protected activity, the disclosures must be "reasonably based

suspicions of illegal activity."  *Mokler v. Cty. of Orange*, 157 Cal. App. 4th 121, 138 (2007)

(internal quotations omitted) (in the context of whistleblowing activity directed to the

government).  Labor Code § 1102.5(b) provides only that the employee needs to have "reasonable

cause to believe that the information discloses a violation of state or federal statute" and does not

state that a specific violation needs to be identified at the time of the protected activity.

Roadrunner argues that Cox's retaliation claim fails because he "did not cite to any

statute, rule, or regulation that may have been violated by the disclosed conduct in the

complaint."  (Doc. No. 197 at 7; *see also* Doc. No. 175 at 14.)  In his opposition to the pending

motion, however, Cox argues that defendants' conduct violated various statutes and regulations

which he now identifies.  (*See* Doc. No. 181 at 12.)  It has been held that a plaintiff fails to show

reasonable cause for his suspicion of a violation of law when he "does not cite any statute, rule, or

---

[5]  Previously, Labor Code § 1102.5(b) protected only whistleblowers who disclosed suspicions of illegal activity to a government or law enforcement agency.  *See Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 77 (1998) ("Section 1102.5, subdivision (b), concerns employees who report to public agencies.  It does not protect plaintiff, who reported his suspicions directly to his employer.")  However,

> [i]n 2013, the California Legislature amended section 1102.5(b), effective January 1, 2014, to add the current language protecting disclosure "to a person with authority over the employee or to another employee who has authority to investigate, discover, or correct the violation or noncompliance" and the language providing that an employer shall not retaliate "because an employer believes the employee disclosed or may disclose information."

*Smiley v. Hologic, Inc.*, No. 16cv158-WQH-MDD, 2017 WL 1354787, at *10 (S.D. Cal. Apr. 12, 2017) (quoting Stats. 2013, Ch. 781 (S.B. 496), § 4.1).  Therefore, cases analyzing Labor Code § 1102.5(b) prior to 2014 recognized only government whistleblowers as engaging in protected activity.  Nonetheless, those decisions are still informative in assessing the other aspects of the *prima facie* case and in applying the burden-shifting analysis.

regulation that may have been violated by the disclosed conduct" and "argues simply that he reasonably believed that the activity violated some unnamed statute, rule, or regulation." *Love v. Motion Indus., Inc.*, 309 F. Supp. 2d 1128, 1135 (N.D. Cal. 2004) (granting summary judgment in favor of defendants, concluding that the plaintiff lacked a reasonable basis for his suspicion because he was "unable to state any statutory or regulatory basis for his claim" more than three years after discovering an alleged safety issue). Roadrunner states in conclusory fashion that Cox is precluded from presenting a reasonable cause for his suspicion at this stage in the litigation. (Doc. No. 197 at 9.) However, Roadrunner cites no applicable authority in support of this position.[6] The court will therefore consider the potential violations of various statutes and regulations that Cox has identified in his opposition to the pending motion in determining whether he has established a *prima facie* case of retaliation.

Roadrunner also argues that the evidence on summary judgment establishes that there is no basis for concluding that Cox's actions constitute protected activity. (Doc. No. 197 at 8–9.) The court disagrees. In the September 20, 2016 email to three Roadrunner executives, Cox stated that he observed inaccuracies in the financial and accounting information for Central Cal and voiced concerns about whether "Roadrunner is violating its contract with [him] and whether Roadrunner is failing to comply with SEC rules and regulations." (Doc. No. 181-2 at 7.) On November 10, 2016, Cox's counsel sent a letter to Roadrunner executives, demanding earn-out payments that Cox believed he was owed as well as "accurate accounting and financials for Central Cal Transportation . . . ." (*Id.* at 9–11.) Though the purpose of the November 10, 2016 letter was clearly to pursue receipt of the earn-out payments, the letter also notified Roadrunner executives that "Cox has been informed by credible sources that the company falsely reported profits during the fiscal years at issue, which calls into question Roadrunner's audits and SEC filings." (*Id.* at 10.) Roadrunner does not dispute that Cox's email and the Wieland letter were

---

[6] Roadrunner does cite the decision in *Fitzgerald v. El Dorado Cty.*, 94 F. Supp. 3d 1155, 1172 (E.D. Cal. 2015), but that case does not stand for the proposition that a plaintiff is prohibited from articulating a reasonably based suspicion of illegal activity in opposition to a motion for summary judgment. In *Fitzgerald*, the court found that plaintiff did not engage in protected activity because he reported working conditions that were merely unsafe, rather than unlawful. *Id.*

sent to its executives, who Cox either believed had violated the law or who had both authority

over Cox and the ability to control and correct the potential violations of law that Cox had raised.

*See* CAL. LAB. CODE § 1102.5(b); *see also Smiley v. Hologic, Inc.*, No. 16cv158-WQH-MDD,

2017 WL 1354787, at *10 (S.D. Cal. Apr. 12, 2017) ("Section 1102.5(b) protects employees

where they face retaliation arising out of their employers' concerns about future disclosures.");

*Thomas v. Starz Entm't LLC*, No. 2:15-cv-09239-CAS(AFMx), 2016 WL 5421992, at *8 (C.D.

Cal. Sept. 26, 2016) (concluding that plaintiff adequately alleged that he engaged in a protected

activity because he made a disclosure to a person with authority to investigate the violation).

Accordingly, the court concludes that there is sufficient evidence before it on summary

judgment to support a finding that Cox engaged in protected activity within the meaning of §

1102.5(b) for the purposes of establishing a *prima facie* case of retaliation.  The court also

concludes that Cox has presented sufficient evidence on summary judgment indicating that he had

reasonable cause for believing that defendants' conduct relating to the purchase or sale of

securities violated the law.  (*See* Doc. No. 181 at 13–15.)

> *b.*     *Adverse Employment Action*

Roadrunner next argues that the change in Cox's position of employment did not

constitute an adverse employment action because Cox was transferred to a comparable position.

(Doc. No. 175 at 15–16.)  To establish an adverse employment action, courts apply the

"materiality" test, which looks to "the entire spectrum of employment actions that are reasonably

likely to adversely and materially affect an employee's job performance or opportunity for

advancement in his or her career . . .."  *Patten*, 134 Cal. App. 4th at 1389 (applying the definition

of "adverse employment action" for a Fair Employment and Housing Act ("FEHA") retaliation

action as established in *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1054 (2005) to a

retaliation claim brought under Labor Code § 1102.5(b)).  However, a transfer into a comparable

position does not constitute an adverse employment action.  *Akers v. County of San Diego*, 95

Cal. App. 4th 1441, 1457 (2002).

Roadrunner argues that Cox's transfer from his role as Vice President of Operations at

Central Cal to the Director of Sales at Roadrunner was a transfer into a comparable position

1   because Cox's salary did not change.  (Doc. No. 197 at 10.)  In his declaration, Cox presents an

2   alternative account:  he was demoted from Vice President of Operations to an untitled sales

3   position at Roadrunner, in which he was stripped of all operational obligations, denied access to

4   financial documents (specifically, the ones that he had requested access to), and received far less

5   responsibility than he held as Vice President of Operations.  (Doc. No. 181-2 at 3.)

6       Cox's declaration is a sufficient basis upon which a reasonable finder of fact could

7   conclude that, based on the materiality test, his change in position from Vice President of

8   Operations at Central Cal to a sales position at Roadrunner constituted an adverse employment

9   action.  *See Wallis*, 26 F.3d at 889 (on summary judgment, minimal evidence is required to

10  establish a *prima facie* case and an inference of discrimination).  Moreover, the parties do not

11  dispute that Cox was terminated on May 31, 2017.  *See Ferretti*, 2013 WL 140088, at *10 (stating

12  that terminations are considered an adverse employment event).  Therefore, the court concludes

13  that Cox has presented sufficient evidence that he experienced two separate adverse employment

14  actions for the purposes of establishing a *prima facie* case of retaliation.

15          *c.     Causal Link*

16      Roadrunner also argues that there is no causal connection between Cox's alleged

17  protected activities and his subsequent change in title and eventual termination.  (Doc. No. 197 at

18  10.)  Cox counters that the timeline of the events at issue establish the requisite causal link.  (Doc.

19  No. 181 at 16–18.)

20      "A causal link may be established by an inference derived from circumstantial evidence,

21  such as the employer's knowledge that the [employee] engaged in protected activities and the

22  proximity in time between the protected action and allegedly retaliatory [adverse] employment

23  decision."  *Ferretti*, 2013 WL 140088, at *10 (internal quotations omitted) (quoting *Morgan*, 88

24  Cal. App. 4th at 69).  In other contexts, courts have found that "[t]he requisite 'causal link' may

25  be shown by the temporal relationship between the protected activity and the adverse employment

26  action."  *Light v. Dep't of Parks & Recr.*, 14 Cal. App. 5th 75, 91 (Ct. App. 2017) (discussing a

27  *prima facie* case of retaliation under FEHA).

28  /////

Roadrunner attempts to recast Cox's claim with respect to the protected activity he engaged in but does not contest that after his September email and the Wieland demand letter the alleged adverse employment action took place.[7] (*See* Doc. No. 175 at 16.) Plaintiff has established the following chronology of events. Cox wrote an email to Roadrunner executives detailing his concerns of securities fraud on September 20, 2016. (Doc. No. 181 at 17.) On November 10, 2016, Cox's counsel reaffirmed plaintiff's concerns in the Wieland demand letter. (*Id.*) A month later, Cox experienced a title change, as discussed above. (*See* Doc. Nos. 175 at 15–16; 181 at 17.) In February 2017, Cox filed a lawsuit that asserted violations of law directly related to his earlier complaints. (Doc. No. 181 at 17.) On May 31, 2017, Cox was terminated by Roadrunner. (*Id.*) Roadrunner provides no evidence on summary judgment indicating that this timeline is inaccurate.

Based on the close temporal relationship between the protected activity and the adverse employment actions, the court finds that Cox has established a causal connection between the two and has therefore stated a *prima facie* case of retaliation for purposes of summary judgment.

### 2. Roadrunner's Non-Retaliatory Reason for Terminating Cox

Once the plaintiff has established a *prima facie* case of retaliation, the burden shifts to the defendant to "provide a legitimate, nonretaliatory explanation for its acts . . .." *Patten*, 134 Cal. App. 4th at 1384 (discussing § 1102.5(b) retaliation claims). "The employer's burden at this stage is to go forward with additional evidence; it does not take on a burden of persuasion." *Morgan*, 88 Cal. App. 4th at 68 (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000)).

/////

---

[7] Roadrunner argues that there was no causal connection between Cox's complaints of irregularities in financial documentation, which started as early as 2013, and his title change or termination. (Doc. No. 197 at 10.) This misconstrues Cox's argument, which is that there was a causal connection between his engagement in protected activity (i.e., the September 20, 2016 email and the Wieland demand letter) and the adverse employment actions. Cox does not allege that his complaints about irregularities in Central Cal's financial documentation made prior to his September 20, 2016 email constituted protected activity. It is possible that his prior complaints were not taken seriously until Cox communicated them to Roadrunner executives in writing and retained counsel to send a demand letter.

Roadrunner has met this burden by presenting evidence on summary judgment of legitimate and nonretaliatory reasons for transferring Cox to a sales role at Roadrunner and for his termination on May 31, 2017. (Doc. No. 175 at 16–17.) In this regard, it is uncontested that Central Cal reported revenue numbers that did not meet expectations in the first quarter of 2017. Roadrunner has presented deposition testimony from Cox, who acknowledged that, at an annual salary of $250,000, he was the highest compensated Central Cal employee, and that other Roadrunner employees objected to his high salary. (Doc. No. 175-9 at 13.) Roadrunner argues that moving Cox to a sales role at Roadrunner served to ease personnel tensions caused by that high salary. (Doc. No. 175 at 16.) Further, Ben Kirkland, president of Roadrunner, testified at his deposition that Cox was later terminated due to major cost savings required of Central Cal at the time. (Doc. No. 175-9 at 6–9.) Kirkland testified that Roadrunner made the choice to fire Cox due to his high salary, and that if Cox would not have been fired, Central Cal would have had to fire two or three employees in his place. (*Id.*) Finally, Kirkland stated that Cox's termination was purely for business reasons unrelated to Cox's inquiry into potential securities law violations. (*Id.*)

Based on this evidence, Roadrunner has provided a legitimate, nonretaliatory explanation for transferring Cox to his sales role and for his subsequent termination on May 31, 2017.

### 3. Whether There is Sufficient Evidence That Roadrunner's Non-Retaliatory Reason is Pretextual

After an employer produces a legitimate, nonretaliatory explanation for its actions, "the burden then shifts back to the plaintiff to prove the employer's proffered reasons for termination are pretextual." *Mokler*, 157 Cal. App. 4th at 140 (citing *Morgan*, 88 Cal. App. 4th at 68). "[T]he plaintiff may establish pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Morgan*, 88 Cal. App. 4th at 68 (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998), *as amended* (Aug. 11, 1998)). "The plaintiff is required to produce 'very little' direct evidence of the employer's discriminatory intent to move past summary judgment." *Morgan*, 88 Cal. App. 4th at 69 (quoting *Chuang v. Univ. of Cal.*, 225

F.3d 1115, 1127 (9th Cir. 2000)).  However, "[c]ircumstantial evidence of pretense must be specific and substantial in order to create a triable issue with respect to whether the employer intended to discriminate on an improper basis." *Id.*

Here, Cox does not offer direct evidence of pretext or attempt to convince the court that a retaliatory reason more likely motivated Roadrunner in first transferring him to a different position and then later terminating him from the company.  (*See* Doc. No. 181 at 18.)  Instead, Cox argues that Roadrunner's proffered reasons lack credibility.  (*See* Doc. No. 181 at 18–19.)  First, Cox disputes the truth of Roadrunner's proffered reasons for why he was transferred and later terminated.  (Doc. No. 181 at 18.)  Cox argues that he was one of the top salespeople at Roadrunner, having generated at least six million dollars in revenue, and that other Roadrunner employees stated that his termination would be harmful to the company.  (*Id.* at 19.)  Further, Cox points out that he was never subject to any disciplinary actions while he was employed at Roadrunner and that Roadrunner did not undertake a cost-benefit analysis prior to his termination, which points towards a retaliatory animus.  (*Id.*)  Finally, Cox argues that the timing of the adverse actions clearly supports an inference of retaliation.  (*Id.*)  *See Light*, 14 Cal. App. 5th at 94 ("Although a temporal relationship alone is insufficient, other circumstantial evidence of retaliatory intent may be enough to avoid summary judgment.").  This circumstantial evidence presented by Cox is sufficiently "specific" and "substantial" to create a triable issue regarding whether Roadrunner intended to retaliate against him on an improper basis.  *See Morgan*, 88 Cal. App. 4th at 69.

Based on the evidence presented on summary judgment, the court concludes that there are disputed issues of material fact regarding why Cox was first transferred to a different position within Roadrunner and later terminated.  Therefore, Roadrunner's motion for summary judgment will be denied as to Cox's two claims of retaliation.

**B.**     **Termination in Violation of Public Policy**

Roadrunner next moves for summary judgment on Cox's third claim for wrongful termination in violation of public policy.  (Doc. No. 175 at 17.)

/////

As a matter of California common law, "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 170 (1980); *see also Freund v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003). To prevail on a claim for wrongful discharge, a plaintiff must show that: (1) an employer-employee relationship existed; (2) plaintiff's employment was terminated; (3) the violation of public policy was a motivating factor for the termination; and (4) the termination was the cause of plaintiff's damages. *Haney v. Aramark Unif. Servs., Inc.*, 121 Cal. App. 4th 623, 641 (2004); *Nosal-Tabor v. Sharp Chula Vista Med. Ctr.*, 239 Cal. App. 4th 1224, 1234–35 (2015).

Here, it appears to be undisputed that the first, second, and fourth elements outlined above are met. The crux of the parties' dispute with respect to Cox's wrongful termination claim is limited to the third element—that is, whether the violation of the public policy was a motivating factor for his termination. Cox maintains that his termination violated three fundamental public policies: 1) protecting whistleblowers as stated in Labor Code § 1102.5; 2) requiring the prompt payment of wages pursuant to Labor Code §§ 201–203; and 3) discouraging fraud, pursuant to various statutes, including California Civil Code §§ 1572, 1573, 1709, 1710, 3294. (Doc. No. 181 at 20–23.)

Roadrunner does not address the three public policy interests separately and instead, makes two main arguments in response to all of them. Roadrunner first argues that Cox's whistleblowing was motivated by concerns about his earn-out payments, which are not an issue of public policy. (Doc. No. 197 at 12.) However, as discussed above, the court has already concluded that Cox's email and the Wieland demand letter were not only about his earn-out payments and thus qualify as protected activity. Second, Roadrunner argues that Cox was terminated for a nonretaliatory reason, giving the same explanation as discussed above with respect to Cox's retaliation claims. (Doc. No. 175 at 19.) For the reasons already explained, the court has concluded that there is a genuine dispute of material fact precluding summary judgment in favor of Roadrunner as to Cox's retaliation claims. Below, the court addresses Roadrunner's arguments as they relate to the specific public policy interests raised by Cox's actions.

### 1. Fundamental Public Policy of Protecting Whistleblowers

First, Roadrunner argues that Cox's claim that his termination violated the fundamental public policy of protecting whistleblowers is insufficiently based in a public policy. (Doc. No. 197 at 11.) Under California law, the public policy implicated must be: "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *Freund*, 347 F.3d at 758 (quoting *City of Moorpark v. Super. Ct.*, 18 Cal. 4th 1143, 1159 (1998)).

Here, Cox explicitly bases his claim of wrongful termination in violation of public policy upon a statutory provision, which the court finds to be sufficient. (*See* Doc. No. 181 at 20) ("Section 1102.5 sets forth a fundamental public policy in California, unequivocally prohibiting retaliation against whistleblowers.") California courts have recognized that there is a public policy interest in protecting whistleblowers from retribution. *See Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 77 (1998) ("[Section 1102.5] reflects the broad public policy interest in encouraging workplace whistle blowers to report unlawful acts without fearing retaliation."); *Diego v. Pilgrim United Church of Christ*, 231 Cal. App. 4th 913, 927 (2014) ("Since the . . . original enactment [of § 1102.5] in 1984, employers . . . have been on notice that California public policy is to encourage workplace whistleblowers to report unlawful acts without fearing retaliation.").

Therefore, Roadrunner's motion for summary judgment on Cox's claim for wrongful termination in violation of public policy, pursuant to Labor Code § 1102.5, will be denied.

### 2. Fundamental Public Policy of Requiring the Prompt Payment of Wages

Cox also argues that his termination violated the fundamental public policy of requiring the prompt payment of wages because he was terminated after he complained to Roadrunner

/////
/////
/////
/////
/////

about their failure to pay the earn-out payments, which constitute wages under Labor Code § 200(a).[8]  (Doc. No. 181 at 22–23.)

Again, Roadrunner contends that Cox's claim fails because it is not tethered to a constitutional provision or statute.  (Doc. No. 175 at 17.)  In response, Cox identifies several California statutes that provide protection for employees who request payment of wages following their termination, such as Labor Code §§ 201–203 (requiring employers to pay wages following discharge or resignation and penalties associated); § 216 (employer's refusal to pay wages constitutes misdemeanor criminal offense); and § 98.6 (employers prohibited from taking adverse action against employees who complain of unpaid wages).  (Doc. No. 181 at 22.)

California courts have recognized that "the prompt payment of wages due an employee is a fundamental public policy of this state."  *Gould v. Md. Sound Indus., Inc.*, 31 Cal. App. 4th 1137, 1147 (1995), *as modified* (Feb. 9, 1995); *see also Wood v. iGATE Techs., Inc.*, No. C 15-00799 JSW, 2016 WL 3548410, at *4 (N.D. Cal. June 30, 2016) ("California Labor Code sections 200 *et seq.* express a public policy in favor of full payment of wages."); *McCollum v. XCare.net, Inc.*, 212 F. Supp. 2d 1142, 1154 (N.D. Cal. 2002) ("*Gould* unequivocally holds that a discharge motivated by a desire to avoid payment of accrued commissions and wages violates public policy.").  Therefore, the court concludes that Cox's claim, based on the fundamental public policy of requiring the prompt payment of wages, is sufficiently tethered to a public policy established by a statutory provision.

Roadrunner also argues that the undisputed facts on summary judgment establish a nonretaliatory reason for Cox's termination apart from his request for the earn-out payments.  (*See* Doc. No. 175 at 17–19.)  However, as discussed above, the court has concluded that there are material issues of fact in dispute regarding why Cox was terminated.  One potential explanation, suggested by the evidence before the court, is that Cox was terminated at least in part

---

[8]  Cox also argues that he was terminated because he requested "unpaid salary corresponding with his final day of work."  (Doc. No. 181 at 22.)  Cox's argument in this regard is unpersuasive and the court rejects it.  In short, the evidence on summary judgment establishes that by the time Cox requested his salary for his final day of work, he had already been terminated from his position.  Therefore, Cox could not have been terminated for requesting the wages from his last day, because by then he had already been fired.

19

because of the September 10, 2016 email and the Wieland demand letter, both of which included a demand for the earn-out payments. As such, there are genuine disputes of material fact about whether Roadrunner's desire to avoid paying the earn-out payments provided a motivation for Cox's termination. *See McCollum v. XCare.net, Inc.*, 212 F. Supp. 2d 1142, 1154 (N.D. Cal. 2002) (denying summary judgment in favor of defendant for wrongful termination in violation of public policy claim because of "a material dispute over Defendant's motivation for taking that action").

Therefore, Roadrunner's motion for summary judgment as to Cox's claim for wrongful termination in violation of public policy requiring the prompt payment of wages will be denied as well.

### 3. Fundamental Public Policy of Discouraging Fraud

Finally, Cox argues that his termination violated the fundamental public policy of discouraging fraud, because he was terminated soon after his September 10, 2016 email and the Wieland demand letter, both of which complained of potentially fraudulent accounting practices within Roadrunner. (Doc. No. 181 at 23.)

Again, Roadrunner disputes whether Cox's claim is tethered to a constitutional provision or statute. (Doc. No. 175 at 17.) However, Cox has identified numerous California statutes that he contends demonstrate a public policy of discouraging fraud, including: Civil Code §§ 1572, 1573 (definitions of actual fraud and constructive fraud); § 1710 (definition of deceit); § 3294 (when plaintiff may recover exemplary damages); Penal Code §§ 484, 487 (definition of larceny and grand theft); Business & Professions Code §§ 17200 *et seq.* (California Unfair Competition Law); Corporate Code §§ 25400 *et seq.* (securities fraud). (Doc. No. 181 at 23.) Roadrunner does not argue that these statutory provisions are insufficient or an improper basis upon which to base such a claim. Therefore, the court finds that Cox's claim is sufficiently tethered to a statute.

Next, Roadrunner argues that concerns about the earn-out payments are a "private dispute over what Cox was owed" and therefore cannot serve as a basis of this claim. (Doc. No. 197 at 12.) California courts, however, have found that public policy concerns are at issue when an employee complains to his employer of fraudulent conduct that harms third-parties. *See Yau v.*

*Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 159 (2014) (allegations that plaintiff was terminated because "he complained to his superiors that his supervisor and coworkers were submitting fraudulent warranty claims to [a third-party]" implicated statutes proscribing theft, such as Penal Code §§ 484, 487, and fraud, such as Civil Code §§ 1572, 1709); *Casella v. SouthWest Dealer Servs., Inc.*, 157 Cal. App. 4th 1127, 1141 (2007) (wrongful termination in violation of public policy claim, based on an employee who was unwilling to aid his employer in facilitating an illegal payment-packing scheme, was sufficiently tied to Penal Code § 487, which proscribed theft and fraudulent activities); *Haney v. Aramark Unif. Servs., Inc.*, 121 Cal. App. 4th 623, 643 (2004) ("[Plaintiff's] allegations that he was terminated for complaining about and refusing to engage in fraudulent billing practices are sufficient to state a claim for retaliatory discharge in violation of a public policy.").

Here, Cox points to his September 10, 2016 email and the Wieland demand letter, which both complain of potentially fraudulent accounting practices within Roadrunner, and argues that he was terminated in part because of the identified statements made in those communications. (Doc. No. 181 at 23.)  The court finds that there are material facts in dispute regarding why Cox was terminated, and that a reasonable finder of fact could find that his complaints regarding Roadrunner's allegedly inaccurate accounting and financial statements, which could harm third-parties, was at least one reason for his termination.  Accordingly, Roadrunner's motion for summary judgment as to Cox's claim for wrongful termination based on a public policy of discouraging fraud will also be denied.

**C.     Defamation**

The FAC includes separate defamation claims based on the Goodwin Demand Letter (*see* Doc. No. 175-11), which Cox argues constitutes libel, and oral statements made by defendants' employees, which Cox argues constitute slander.  (Doc. No. 98 at 20–24.)  Roadrunner moves for summary judgment on both claims.  (Doc. No. 175 at 19.)

1.     Libel

California Civil Code § 45 defines libel as a "false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any

person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cox alleges that the Goodwin Demand Letter, sent by Roadrunner's litigation counsel to the president and vice-president of T.G.S., constitutes libel. (Doc. No. 98 at 20–21.) In this regard, Cox argues that the Goodwin Demand Letter was an "extortionate negotiating tactic by Defendants, designed to prevent litigation in its entirety by scaring T.G.S. into firing Plaintiff so to undercut Plaintiff's ability to finance his lawsuit." (Doc. No. 181 at 24.) Roadrunner argues that the Goodwin Demand Letter is protected by both the litigation privilege, as defined by California Civil Code § 47(b), and the privilege of common interests, as defined by California Civil Code § 47(c). (Doc. No. 175 at 20.)

*a.    Litigation Privilege*

The court will first address whether the Goodwin Demand Letter is protected by the litigation privilege. California Civil Code § 47(b)(2) states, in relevant part, that "[a] privileged publication or broadcast is one made . . . in any judicial proceeding." The litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990), *as modified* (Mar. 12, 1990).

Litigation counsel to Roadrunner sent the Goodwin demand letter to the President and Vice-President of T.G.S. on July 11, 2017. (*See* Doc. No. 175-11.) The letter informed T.G.S. that Cox was a party to a non-competition agreement with Roadrunner, which Roadrunner claimed prohibited Cox from being employed with T.G.S., soliciting any of Roadrunner's prior customers, or soliciting any of Roadrunner's employees to accept employment with T.G.S. (*Id.* at 2–3.) The letter requested that T.G.S. send a response, stating (among other things) that it would not employ Cox or "tortuously interfere with Roadrunner's contractual agreement" with him. (*Id.* at 3.) Further, the letter stated that T.G.S. may be liable for Cox's future violations of the non-competition agreement, and that Roadrunner's investigation of the matter was ongoing. (*Id.*)

It is undisputed that the Goodwin demand letter was sent before any litigation initiated between Cox, Roadrunner, and T.G.S. "A prelitigation communication is privileged only when it

relates to litigation that is contemplated in good faith and under serious consideration." *Action Apartmt. Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1251 (2007). Cox disputes whether the Goodwin demand letter is protected by the litigation privilege, arguing that there is a factual dispute as to whether Roadrunner, in sending the letter, contemplated litigation seriously and in good faith. (Doc. No. 181 at 24–26.) *See Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1381 (1999) (reversing the trial court's grant of summary judgment based on the litigation privilege because whether imminent litigation was "seriously proposed and actually contemplated in good faith" remained a triable issue of fact). More specifically, Cox argues that the letter was sent to improve Roadrunner's negotiation position, thereby attempting to coerce him into acquiescing to their demands and avoiding litigation. (*Id.* at 24.)

Here, Cox does not point to any evidence before the court on summary judgment suggesting that the Goodwin demand letter was not made in good faith contemplation of future litigation, other than identifying that the letter does not explicitly threaten to initiate litigation against T.G.S. (Doc. No. 181 at 24–25.) However, "[w]hile not dispositive, whether a lawsuit was ultimately brought is relevant to the determination of whether one was contemplated in good faith at the time of the demand letter." *Dickinson v. Cosby*, 17 Cal. App. 5th 655, 683 (2017), *review denied* (Mar. 14, 2018), *cert. denied*, ___U.S.___, 139 S. Ct. 236 (2018). Indeed, not even a month after sending the letter, Roadrunner filed a lawsuit against T.G.S. in this court. (*See* Doc. No. 1.) Despite not explicitly threatening litigation, the letter on its face appears to have been sent "in good faith for the purpose of resolving a dispute" and was not merely a "tactical play to negotiate a bargain." *See Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 36 (1997) (concluding that the trial court erred in applying the litigation privilege because there was "no substantial evidence that, at the time respondents made the alleged misrepresentations, imminent litigation was seriously proposed and actually contemplated in good faith as a means of resolving the parties' dispute"). Finding otherwise based upon the evidence before this court on summary judgment, or the lack thereof, would obstruct litigants from issuing demand letters prior to initiating litigation and from having "the utmost freedom of access to the courts without fear of

/////

being harassed subsequently by derivative tort actions." *Silberg v. Anderson*, 50 Cal. 3d 205 at 213.

Because the Goodwin demand letter is protected by the litigation privilege, the court will grant summary judgment in favor of Roadrunner as to Cox's libel claim in connection with the Goodwin demand letter. In light of this conclusion, the court need not address whether the letter is separately protected by the common interest privilege, as codified in Civil Code § 47(c).

2.  Slander

California Civil Code § 46 provides, in relevant part that "[s]lander is a false and unprivileged publication, orally uttered," which "[t]ends directly to injure him in respect to his office, profession, trade or business." Further, "[a] false and unprivileged oral communication attributing to a person specific misdeeds or certain unfavorable characteristics or qualities, or uttering certain other derogatory statements regarding a person, constitutes slander." *Rangel v. Am. Med. Response W.*, No. 1:09-CV-01467-AWI, 2013 WL 1785911, at *6 (E.D. Cal. Apr. 25, 2013) (citing *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003)).

Cox contends that he was slandered by Roadrunner on two occasions. First, on or about July 7, 2017, Roadrunner's Vice President of Operations made statements to Roadrunner employees Grace Castaneda and Ashley Grijalva that Roadrunner was planning to initiate litigation against T.G.S. and Cox. (Doc. No. 98 at 22.) Roadrunner's Vice President of Operations stated that T.G.S. and Cox would have to spend a lot of money defending the lawsuit, which would cause T.G.S. to be rendered insolvent and to fire Castaneda and Grijalva (if they ever left Roadrunner to join T.G.S.). (*Id.*) Cox alleges that the purpose of these statements was to put Cox in a negative light and to prevent Castaneda and Grijalva from leaving Roadrunner to go to work for T.G.S. (*Id.*) Second, on or about July 7, 2017, Mark Avila, Roadrunner's terminal manager and agent, made statements to Castaneda that he had loaned Cox $50,000. (*Id.*) Cox alleges that these statements to Castaneda were intended to put Cox in a negative light by creating the false impression that he would not last long in his new position at T.G.S. (*Id.*)

/////

/////

24

### a. Incident #1

First, Roadrunner argues that it is entitled to summary judgment as to this slander claim because the statements identified by Cox are predictions of future events, which are not actionable as slander. (Doc. No. 175 at 21.) *See Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469 (2014) ("Statements or predictions regarding future events are mere opinions and therefore not actionable."). "The dispositive question . . . is whether a reasonable trier of fact could conclude that the published statements imply a provably false factual assertion." *Yelp Inc. v. Superior Court*, 17 Cal. App. 5th 1, 16 (2017), *review denied* (Feb. 14, 2018) (quoting *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 809 (2002)). Here, at least two of the statements made by Roadrunner's vice-president would appear to have been irrefutably true: 1) that Roadrunner was planning to initiate litigation against T.G.S. and Cox; and 2) that T.G.S. and Cox would have to spend "a lot of money" defending the lawsuit. The remaining two statements, that T.G.S. would become insolvent and have to fire Castaneda and Grijalva if they departed to go to work for T.G.S., are not provably false, because the litigation in question is still pending. The court concludes that these published statements do not imply provably false factual assertions and are therefore, not actionable as slander. Accordingly, summary judgment in favor of Roadrunner will be granted as to this slander claim.

### b. Incident #2

Roadrunner also argues that Cox's next alleged instance of slander, in which Avila allegedly told Castaneda that he loaned Cox money, does not constitute slander because the statements did not occur in the scope of Avila's employment. (Doc. No. 175 at 21.) "[A]n employee is acting in the course and scope of his employment when he is engaged in work he was employed to perform, or when the act is an incident to his duty and was performed for the benefit of his employer and not to serve his own purposes of convenience." *Mazzola v. Feinstein*, 154 Cal. App. 3d 305, 311 (1984). "Ordinarily, the determination [of] whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when the facts are undisputed and no conflicting inferences are possible." *Lisa M. v.*
/////

*Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 299 (1995) (citing *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 213 (1991)).

The material facts involved in this claim appear to be undisputed. Rather, what is at issue is the legal question of whether Avila's statements were made within the scope of his employment. In moving for summary judgment, Roadrunner points to the deposition testimony of Cox in which he described what Castaneda had told him about his conversation with Avila.[9] (*See* Doc. No. 181-1 at 42–43.) Cox's deposition testimony is void of any details that could lead the court to conclude that Avila's statements in this regard were made in the scope of his employment. Though the conversation occurred at work between two employees, that alone is insufficient to establish that the statements were made within the scope of employment. *See Farmers Ins. Grp. v. Cty. of Santa Clara*, 11 Cal. 4th 992, 1004 (1995) ("[T]he law is clear that an employer is not strictly liable for all actions of its employees during working hours."). There is no indication that Avila's statement that he had loaned Cox money was made on behalf of Roadrunner or in connection with his job at Roadrunner,[10] or that it was anything but a casual comment to a coworker.[11] The court concludes that Cox's second slander claim is based upon alleged statements that were not made in the scope of Avila's employment and are therefore unactionable.

Accordingly, the court grants summary judgment to Roadrunner regarding both of Cox's slander claims.

## D.    Failure to Pay Wages Due at Termination

Cox's sixth claim for relief is based on his allegation that he was not paid for his final day of work on May 31, 2017. (Doc. No. 98 at 24–25.) The following facts appear to be undisputed: Cox took time off on the morning of May 31, 2017 to attend his daughter's kindergarten

---

[9] Cox was not present during the conversation between Castaneda and Avila.

[10] Indeed, this would be an illogical inference to draw, as Cox was being sued by Roadrunner.

[11] Further, the court observes that Avila's alleged statement that he loaned Cox money cannot constitute slander because it does not reflect unfavorable characteristics or qualities about Cox. A reasonable person could also infer from any such statement that Avila either had a strong relationship with Cox, or that he believed strongly in Cox's case against Roadrunner.

graduation, which began at 8 a.m. and lasted about an hour.  Prior to attending the graduation ceremony, Cox answered emails in the morning between 5 a.m. and 8 a.m.  After the graduation ceremony, Cox arrived at work and was promptly terminated.  Cox argues that he was not compensated for his time on May 31, 2017, including the time that he spent answering emails in the morning before coming to the office and the time that he was subject to Roadrunner's control that day before being terminated.

California law provides that it is unlawful for an employer to willfully fail to pay wages owed to an employer who is either discharged or has quit.  Cal. Lab. Code § 203(a).  "A willful failure to pay wages within the meaning of [that section] occurs when an employer intentionally fails to pay wages to an employee when those wages are due.  However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203."  *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1133 (C.D. Cal. 2011) (citing Cal. Code Regs. tit. 8, § 13520).

Roadrunner argues that Cox was fully compensated in his last paycheck because he received payment for the balance of his remaining paid time off, which did not deduct the time that he took off on the morning of on May 31, 2017.  (Doc. No. 175 at 23.)  Roadrunner represents that the final check included payment for accrued but unused paid time off ("PTO").  (*See id.* at 23.)  Because Cox's final check was prepared before May 31, 2017, Roadrunner did not deduct the time that Cox took off that morning from his PTO.  Essentially, according to Roadrunner, Cox's final check compensated him for any work that he did on May 31, 2017, since that day was treated as PTO for compensation purposes.  Cox disputes this fact but does not substantively engage with Roadrunner's argument.  Rather, Cox merely contends in conclusory fashion that "the time [he] worked on May 31 exceeds any overpayment alleged by [Roadrunner] for paid time off."  (Doc. No. 181-3 at 12.)  Cox's argument is difficult to decipher and, in any event, unpersuasive.  It is simply not possible that any work that Cox did on the morning of May 31 (i.e., the time spent forwarding emails and that spent by Cox coming to the office and being terminated) exceeded an entire day of PTO.

/////

Because Cox was fully compensated in his last paycheck for any time he spent working on the morning of his termination, summary judgment will be granted in favor of Roadrunner as to Cox's sixth claim for relief.

**E.     Intentional Interference with Prospective Business Advantage**

Roadrunner also moves for summary judgment on Cox's seventh claim of intentional interference with a prospective business advantage.  (Doc. No. 175 at 23–24.)  "The tort of intentional or negligent interference with prospective economic advantage imposes liability for improper methods of disrupting or diverting the business relationship of another which fall outside the boundaries of fair competition."  *Settimo Assocs. v. Environ Sys., Inc.*, 14 Cal. App. 4th 842, 845 (1993) (*citing Baldwin v. Marina City Properties, Inc.*, 79 Cal. App. 3d 393, 406 (1978)).  "The elements of the tort include (1) the existence of a prospective business relationship containing the probability of future economic rewards for plaintiff; (2) knowledge by defendant of the existence of the relationship; (3) intentional acts by defendant designed to disrupt the relationship; (4) actual causation, and, (5) damages to plaintiff proximately caused by defendant's conduct."  *Id.* at 845 (*citing Buckaloo v. Johnson*, 14 Cal. 3d 815, 827 (1975)).

Cox alleges that Roadrunner intentionally and maliciously sent the Goodwin demand letter to disrupt Cox's economic relationship with T.G.S.  (*See* Doc. Nos. 98 at 25; 181 at 30.)  Cox argues that, because of that letter, he was forced to retain legal representation and delay the commencement of his employment with T.G.S.  (Doc. Nos. 98 at 26.)  However, on summary judgment Cox has failed to come forward with evidence establishing that the Goodwin demand letter was an intentional act designed to disrupt his economic relationship with T.G.S.  "[A] plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful by some measure beyond the fact of the interference itself."  *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392–93 (1995) (internal quotations omitted).  Here, the court has already concluded that the Goodwin demand letter is subject to the litigation privilege in the context of assessing Cox's libel claim.  Moreover, the court previously denied Cox's motion for partial summary

/////

judgment, finding that his actions in accepting employment with T.G.S. were in violation of a

legally enforceable term of the parties' non-competition agreement.  (*See* Doc. No. 199 at 20.)

In light of those determinations, there is no basis upon which Roadrunner could be found

to have acted wrongfully in sending the Goodwin demand letter.  Therefore, summary judgment

will be granted in favor of Roadrunner as to Cox's seventh claim for intentional interference with

a prospective business advantage.

**F.**     **Itemized Wage Statement**

Roadrunner also moves for summary judgment on Cox's eighth cause of action for a

violation of Cal. Labor Code § 226, arguing that any error in the final wage statement it issued to

Cox was unintentional and, in fact, overstated Cox's wages earned.  (Doc. No. 175 at 24–25.)

Under Labor Code § 226(a), all employers must provide employees with an accurate itemized

statement in writing, showing information such as:  the total hours worked, all applicable hourly

rates in effect during a pay period, the corresponding number of hours worked at each hourly rate,

and net wages earned.  Cal. Labor Code § 226(a).  "An employee suffering injury as a result of a

knowing and intentional failure by an employer to comply" with such requirements may recover

penalties from the employer.  Cal. Labor Code § 226(e)(1).

Here, Roadrunner presents evidence on summary judgment that the only inaccuracy on

Cox's wage statement was an alleged error in the number of hours that Cox worked.  The final

wage statement issued by Roadrunner indicates that Cox worked 72 hours for the pay period of

May 28, 2017 to June 10, 2017, rather than the eight hours that Roadrunner paid him for with

respect to that pay period.[12]  (*See* Doc. No. 175 at 25.)  The wage statement correctly reflects

Cox's hourly rate of pay ($96.16 per hour) and indicates that the amount of pay for this pay

period was for $769.28 (i.e., calculating Cox's wages for the pay period based on eight hours of

work).  (*See* Doc. No. 181-2 at 71.)

It is not clear to the court what Cox believes was inaccurate in this wage statement, since

he does not specify any inaccurate information in the allegations of his complaint.  (*See* Doc. No.

---

[12]  As noted above, it is undisputed that Cox was terminated when he came to the office on May 31, 2017.  It would therefore seem that Cox did not work 72 hours in that pay period.

98 at 27, ¶ 27.) Cox advances several vague arguments with respect to this claim in his opposition.  (*See* Doc. No. 181 at 31.)  To the extent that Cox argues that the wage statement incorrectly states that he worked 72 hours, it is clear to the court that this obvious error was an "isolated and unintentional payroll error due to a clerical or inadvertent mistake."  *See* Cal. Lab. Code § 226(e)(3) (describing what does not constitute a "knowing and intentional failure").  Indeed, at his own deposition, Cox testified that he knew when he received the wage statement that Roadrunner had made an unintentional mistake.[13]  *See Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1131 (N.D. Cal. 2014) (concluding that a "knowing and intentional" violation of § 226(a) requires knowing that a wage statement had certain omissions, but not that such omissions were unlawful).  To the extent that Cox argues that the wage statement should have reflected sixteen hours rather than eight hours (i.e., that he should have been entitled to a full day's salary for the day that he was terminated), the court has already granted summary judgment in favor of Roadrunner as to Cox's sixth cause of action for the reasons explained above.  The court has already concluded that based upon the evidence before the court on summary judgment, Cox was paid all of the wages that he was due at termination.  The court likewise concludes that based upon the evidence submitted on summary judgment, any error in the final wage statement issued to Cox by Roadrunner was unintentional.

Therefore, summary judgment in favor of Roadrunner as to Cox's eighth cause of action alleging a violation of Labor Code § 226 will be granted.

### CONCLUSION

Accordingly,

1. Roadrunner's motion for summary judgment (Doc. No. 175) is denied as to Cox's first two claims alleging retaliation;

2. Roadrunner's motion for summary judgment is denied as to Cox's third claim of wrongful termination in violation of public policy;

---

[13]  At his June 27, 2018 deposition, Cox testified as follows regarding inaccuracies in his wage statement that he perceived:  "[T]hey didn't pay me all of my wages for the day.  The paystub was inaccurate . . . [a]nd I said [to my attorney], 'Here's my termination letter and here's an issue with the paystub that I'm sure they're unaware of.'" (*See* Doc. No. 175-7 at 25.)

30

3.     Roadrunner's motion for summary judgment is granted as to on Cox's fourth claim for libel and fifth claim for slander; Cox's sixth claim of failure to pay all wages due at termination pursuant to Labor Code § 203; Cox's seventh claim for intentional interference with prospective economic advantage in violation; and Cox's eighth claim for an inaccurate wage statement in violation of Labor Code § 226.

IT IS SO ORDERED.

Dated:   **August 21, 2019**                             

UNITED STATES DISTRICT JUDGE